UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------x
JANE DOE,

                           Plaintiff,

                   -against-


NEW YORK CITY DEPARTMENT OF EDUCATION,
CITY OF NEW YORK, MARK WALTZER, DOUGLAS
MEINERS, MICHAEL EISENBERG AND JOHN
DOES #1 THROUGH #2

                           Defendants.
--------------------------------------------------------------------------x

**COMPLAINT AND JURY DEMAND**

**PRELIMINARY STATEMENT**

1.      This lawsuit challenges the systemic failure of the New York City Department of Education ("NYC DOE") to protect the safety and address the needs of New York City public schools students ("NYC Students") who have been sexually assaulted or sexually harassed by NYC DOE teachers and other NYC DOE staff and who have consequently experienced life-altering psychological and emotional trauma.[1] It also challenges the inadequacy of the responses of the NYC DOE's administration to complaints by NYC Students of having been sexually assaulted or harassed, or of having been placed in danger of being sexually assaulted or harassed. By responding to particularly vulnerable victims of sexual assault and/or sexual harassment with

---

[1] Plaintiff is a survivor of gender-based sexual abuse and harassment and was a minor at the time of the incidents complained of; therefore, this Complaint refers to her as "Jane Doe" to preserve her privacy, as is the legal and moral right of all victims of sexual child abuse.

indifference and inaction, the NYC DOE has deprived female NYC students, such as Plaintiff, of equal access to educational opportunity, including certain educational resources and special education resources, in violation of their rights as guaranteed by the Equal Protection Clause of the 14th Amendment of the United States Constitution ("Equal Protection Clause") and Title IX of the Educational Amendments of 1972 ("Title IX").

2.      Plaintiff Jane Doe suffered gender-based violence over a three-year period of adolescence while attending New York City public schools operated by Defendant NYC DOE.[2] The sexual abuse inflicted upon Plaintiff adversely impacted her academic performance and, as a result, post-academic occupational opportunities.

3.      During the 1998-1999 school year ("SY"), while Plaintiff was attending the Rachel Carson Intermediate School ("IS-237"), Defendant John Doe #1, an NYC DOE school custodian, sexually harassed Plaintiff. The harassment led to Plaintiff being physically assaulted on school grounds by a jealous classmate, while NYC DOE teachers and other NYC DOE personnel observed without intervening to end the assault or render aid to Plaintiff following the assault.

4.      During the 1999-2000 SY, while Plaintiff was attending Francis Lewis High School, Plaintiff was groomed for sexual assault by Defendant Mark Waltzer, an NYC DOE teacher and Plaintiff's Social Studies teacher at the time. Waltzer befriended Plaintiff to gain her trust. After Defendant Waltzer gained Plaintiff's trust, he lured Plaintiff to his private apartment and had sexual intercourse with Plaintiff, who was, at the time, fifteen (15) years of age and legally unable to consent to sexual activity of any kind with an adult. Defendant Waltzer continued the inappropriate sexual relationship with Plaintiff for several months, repeatedly committing the

---

[2] In this Complaint, the term "gender-based violence" will be used as an umbrella term to mean sexual assault and/or sexual harassment. Generally, it is a term that refers to a wide variety of harms inflicted on the basis of gender. See Series: What Does That Mean? Gender-based Violence (June 4, 2021) by Meghan Ott, available at https://www.womenforwomen.org/blogs/series-what-does-mean-gender-based-violence.

crime of statutory rape in the 3rd degree, a class E felony, as, upon information and belief, Defendant Waltzer was over twenty-one (21) years of age and Plaintiff was under seventeen (17) years of age, the legal age of consent.

5. During the 2000-2001 SY, Plaintiff reported the sexual assault she had suffered from her relationship with Defendant Waltzer to Defendant Douglas Meiners, then a NYC DOE school teacher. Rather than report the sexual abuse that was occurring, Defendant Meiners instead preyed upon Plaintiff's vulnerability *by sexually harassing her himself*. Plaintiff reported Defendant Meiners' sexual harassment of her to Defendant Eisenberg, another NYC DOE school teacher, *who then also began to sexually harass Plaintiff*.

6. During the same school year, Defendant John Doe #2 separately made unwanted sexual advances towards Plaintiff. Plaintiff is unaware of whether John Doe #2 knew of the sexual abuse and sexual harassment Defendants Waltzer, Meiners and Eisenberg had subjected Plaintiff to at the time Defendant John Doe #2 sexually harassed her.

7. Defendant John Doe # 1's sexual harassment of Plaintiff, the repeated statutory rape of the Plaintiff by Defendant Waltzer over the course of several months, the failure by Defendant Meiners to report that sexual abuse, Defendant Meiners' sexual harassment of Plaintiff, Defendant Eisenberg's failure to report that sexual harassment and the sexual harassment by Defendant Eisenberg and John Doe #2 triggered intense despair and anguish in the Plaintiff that has lasted to the present day.

8. All of the aforementioned tragic incidents of sexual assault, harassment and failure to protect Plaintiff occurred on or near school grounds and/or were perpetrated by then-employees of Defendants NYC DOE and the City of New York (collectively, "Municipal Defendants"). After Plaintiff, a victim of gender-based violence, reported the aforementioned sexual abuse to multiple

NYC DOE employees, school officials should have taken steps to protect Plaintiff's physical and emotional well-being, to evaluate Plaintiff to determine her physical and psychological needs and to provide the academic and mental health assistance necessary for Plaintiff to continue to receive an appropriate education.

9.     Instead, the Municipal Defendants' employees ignored Plaintiff's pleas for help. Having failed to make any report of Defendant Waltzer's inappropriate and criminal relationship with Plaintiff, the Municipal Defendants' employees failed to initiate any form of investigation and to document the sexual assault. Having identified Plaintiff as a victim of sexual assault and the prey of Defendant Waltzer, Defendant Meiners became an additional sexual predator, subjecting Plaintiff to further gender-based violence, just as Defendant Eisenberg did after learning of Defendant Meiners' preying upon Plaintiff. They failed to provide Plaintiff with any resources or information concerning formal complaint procedures, mental health support and services or educational assistance. As result of the sexual assault and the aforementioned failures in reporting and support, Plaintiff experienced and continues to experience trauma-related emotional conditions that have inhibited her life activities.

10.    The failure to adequately respond to the gender-based violence and resulting trauma Plaintiff suffered stemmed from the Municipal Defendants' inadequate personnel training on gender-based violence, the understaffing of the Title IX coordinator position, the inadequate notice to families of their rights under Title IX and the failure to employ trauma-sensitive evaluations and processes. Together, these deficiencies have caused a systemic culture of indifference to gender-based violence and the trauma it causes.

11.    Plaintiff's experiences with this culture of indifference, which enabled Defendant Waltzer to operate with impunity, are not an isolated anomaly. They are symptomatic of the Municipal

Defendants' pervasive and systemic failure to take appropriate and legally mandated actions to protect students from gender-based violence and to respond appropriately when students have been subjected to gender-based violence.

12. Plaintiff brings this action pursuant to the Equal Protection Clause, Title IX, the New York State Human Rights Law ("NYSHRL"), N.Y.S. Executive Law Article 15 § 290, *et seq.* and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101, *et seq.* to obtain redress for the violations of her rights under these laws and to ensure that current and future NYC DOE students receive the safety, protection and services they need to support their efforts to learn and to assist them in the healing process, in those instances where they have been subjected to the gender-based violence Plaintiff endured.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction of this case under 28 U.S.C. § 1331, in that the claims arise, *inter alia*, under federal law, under 28 U.S.C. § 1343(a), in that the claims arise under laws providing for the protection of civil rights and under 42 U.S.C. § 1983.

14. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 in that this case involves claims brought the laws of the City and State of New York.

15. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the Eastern District of New York in that Plaintiff's claims arose in this District, many of the Defendants' actions and omissions complained of occurred in this District and the Municipal Defendants administer public schools in this District.

16. If successful, Plaintiff is entitled to costs and attorneys' fees under 42 U.S.C. § 1988(b).

## PARTIES

17.   Plaintiff Jane Doe is a thirty-six year old woman who, as a child, attended IS-237 in Queens and Francis Lewis High School, which is also in Queens. Plaintiff suffered gender-based violence both at IS-237 and Francis Lewis High School, between the ages of thirteen (13) and sixteen (16).

18.   Defendant NYC DOE is a department within the New York City government that manages the New York City School District, which is the largest school district in the United States and maintains its principal place of business at 52 Chambers Street, New York, New York. NYC DOE is responsible for administering New York City's 1,866 public schools, which operate in all five (5) boroughs of New York City and are attended by approximately 1.1 million New York City schoolchildren.

19.   Defendant NYC DOE issues regulations called "Chancellor's Regulations," which concern a variety of school administration and operation matters, including sexual harassment and reporting policies. All NYC DOE schools are bound by these regulations.

20.   Defendant NYC DOE receives billions of dollars in federal funds each year, including $5.7 billion dollars for the 2020-2021 school year, making it a program in receipt of federal funds within the meaning of Title IX.[3]

21.   Defendant City of New York is a municipal entity within New York State that maintains, manages and operates NYC DOE as one of its municipal departments. The Mayor of the City of New York appoints the Chancellor of the NYC DOE.

22.   Defendant Mark Waltzer is a former NYC DOE public school teacher and, upon information and belief, former dean of students at Francis Lewis High School. Defendant Waltzer taught Social Studies to Plaintiff and her 10th grade classmates at Francis Lewis High School

---

[3] See "Funding Our Schools" at the NYC DOE website, https://www.schools.nyc.gov/about-us/funding/funding-our-schools.

during the 1999-2000 SY. Defendant Waltzer subjected Plaintiff to gender-based violence during that 1999-2000 SY, grooming her for the inappropriate sexual relationship he engaged in with Plaintiff in 2000 when she was fifteen (15) years of age. Upon information and belief, Defendant Waltzer resides in Queens.

23.     Defendant Douglas Meiners is a present or former NYC DOE public school teacher at Francis Lewis High School, where, upon information and belief, he teaches and/or taught physical education and fencing. Defendant Meiners subjected Plaintiff to gender-based violence during the 2000-2001 SY, at which time he learned of the inappropriate sexual relationship Defendant Waltzer engaged in with Plaintiff yet failed to report that information to NYC DOE authorities, instead using that information to make unwanted sexual advances towards Plaintiff, still then a teenage minor. Upon information and belief, Defendant Meiners resides in Queens.

24.     Defendant Michael Eisenberg is a present or former NYC DOE public school teacher at Francis Lewis High School, where, upon information and belief, he teaches and/or taught physical education. Defendant Eisenberg taught Plaintiff physical education for one semester. Defendant Eisenberg subjected Plaintiff to gender-based violence during the 2000-2001 SY, at which time he learned of Defendant Meiners' sexual harassment of Plaintiff yet failed to report that information to NYC DOE authorities, instead using that information to make unwanted sexual advances towards Plaintiff, still then a teenage minor. Upon information and belief, Defendant Eisenberg resides in Queens.

25.     Defendant John Doe #1 is a present or former NYC DOE school custodian at IS-237 in Queens, who subjected Plaintiff to gender-based violence when he sexually harassed her during the 1998-1999 SY when she was thirteen (13) and fourteen (14) years of age.

26.    Defendant John Doe #2 is a present or former NYC DOE public school teacher at Francis Lewis High School in Queens, who subjected Plaintiff to gender-based violence when he sexually harassed her while she attended the school.

## CONSTITUTIONAL, STATUTORY AND REGULATORY FRAMEWORK

### I.    Equal Protection Clause of the 14th Amendment to the U.S. Constitution

27.    The Equal Protection Clause provides, in pertinent part, that "[n]o state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; *nor deny to any person within its jurisdiction the equal protection of the laws."* U.S. Const. amend. XIV, § 1 (emphasis added).

28.    The Supreme Court of the United States ("SCOTUS") has held that gender is a protected class under the Equal Protection Clause and, as such, carries the protection of intermediate scrutiny (also called "heightened scrutiny") concerning challenged laws and government actions or omissions establishing gender-based discrepancies. See Craig v. Boren, 429 U.S. 190, 197 (1976) (finding that "classifications by gender must serve important governmental objectives and must be substantially related to achievement of those objectives.").

29.    For a challenged government action or omission to pass intermediate scrutiny concerning a gender-based discrepancy, it must: a. further an important government interest; and b. must do so by means that are substantially related to that interest. Id.

## II.    Title IX of the Education Amendments of 1972

30.    Title IX provides that "no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefit of, or be subject to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681, *et seq.*

31.    Under the requirements of Title IX, schools that receive federal funds have a legal obligation to protect students from gender-based violence, including sexual assault and sexual harassment.[4]

32.    Title IX is implemented by the United States Department of Education ("U.S. DOE"), which oversees enforcement of, and compliance with, Title IX through its Office for Civil Rights ("OCR").

33.    Information regarding sexual assault and sexual harassment must be reported to the Title IX coordinator, an individual tasked with responding to discrimination complaints, or an appropriate school official. The school must then conduct a prompt and thorough investigation of the allegations of the complaint and take appropriate steps to resolve the situation.

34.    Once a student complains, either formally or informally, to his or her school that a potential Title IX violation has occurred, the school may not retaliate against the student for their complaint or participation in the complaint process.

35.    Federal regulations require every school district receiving federal funds to designate at least one full-time Title IX coordinator ("Coordinator"). The Coordinator is responsible for training faculty, staff and students on rights and obligations under Title IX, and for receiving and evaluating complaints of discrimination and supervising a school's response to such complaints. The

---

[4] Title IX and Sex Discrimination, https://www2.ed.gov/about/offices/list/ocr/docs/tix_dis.html.

Coordinator is not allowed to have any other job responsibilities that may create a conflict of interest.

36.     New York City is the largest school district in the country yet only one Title IX coordinator serves the entire New York City school district of 1,866 schools and 1.1 million students.

### III.     New York Laws and Regulations

#### New York State Human Rights Law

37.     The NYSHRL prohibits, *inter alia*, discrimination in an educational context with respect to age, race, creed, color, national origin, sexual orientation, gender identity or expression, military status, sex, marital status, or disability.

38.     These prohibitions are based on the recognition that "the opportunity to obtain education, the use of places of public accommodation and the ownership, use and occupancy of housing accommodations and commercial space without discrimination because of age, race, creed, color, national origin, sexual orientation, gender identity or expression, military status, sex, marital status, or disability, as specified in section two hundred ninety six of this article, is hereby recognized as and declared to be a civil right." NYSHRL, N.Y.S. Executive Law Article 15 § 290, *et seq.*

#### New York City Human Rights Law

39.     The NYCHRL prohibits prejudice, intolerance, bigotry, discrimination, sexual harassment and bias-related violence. NYCHRL, N.Y.C. Admin. Code § 8-101, *et seq.*

40.     The NYCHRL also prohibits the withholding or denial of "the full and equal enjoyment, on equal terms and conditions, of any [public] accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation" based on "any person's actual or perceived race, creed, color, national origin, age, gender, disability, marital status, partnership

10

status, sexual orientation, uniformed service or immigration or citizenship status, directly or indirectly." NYCHRL, N.Y.C. Admin. Code § 8-107(4)(a).

## STATEMENT OF FACTS

41. Plaintiff Jane Doe is a thirty-six year old woman who attended NYC DOE public schools for junior high school and high school. Specifically, Plaintiff attended IS-237 for junior high school and Francis Lewis High School. Both schools are located in Queens.

### *Sexual Harassment of Plaintiff Jane Doe at IS-237 during the 1998-1999 SY*

42. During the 1998-1999 SY, while Plaintiff was attending IS-237, Defendant John Doe #1 ("Custodian"), then a custodian at the school, repeatedly sexually harassed Plaintiff throughout the school year. This gender-based violence culminated in an incident which many IS-237 students, faculty and staff witnessed firsthand.

43. As Plaintiff was walking from her home to IS-237 one school day morning, the Custodian pulled alongside Plaintiff in a Black Mustang sedan and offered to give her a ride to school. Plaintiff, who had recently turned fourteen (14) years of age, accepted the offer. Rather than driving directly to IS-237, the Custodian took a detour to a motel, engaging Plaintiff in conversation along the way in an attempt to gain her trust. After arriving at the motel and entering a motel room, the Custodian made sexual advances towards Plaintiff but eventually relented when Plaintiff repeatedly refused to take her clothes off. Thereafter, the Custodian finally dropped Plaintiff off at the school, at which time, upon information and belief, several of Plaintiff's classmates observed her exiting his vehicle. One of Plaintiff's classmates expressed anger and jealousy and stated that she intended to fight Plaintiff after school for stealing her "boyfriend."

44.    News of the fight, which was planned by the classmate only and which Plaintiff had hoped to avoid, spread quickly throughout the school, amongst teachers as well as students. Despite this, no IS-237 teacher or school official sought to preclude the fight from happening.

45.    Instead, Plaintiff's classmate, whose sisters were members of the gang "Mara Salvatrucha," found Plaintiff after school that day and, alongside her sisters, physically assaulted Plaintiff on or near school grounds in full view of IS-237 teachers and other NYC DOE personnel from the school.

46.    Notwithstanding this gang assault against Plaintiff, none of the IS-237 teachers or staff intervened to protect Plaintiff from harm, to end the assault or even to render aid to Plaintiff following the assault. Plaintiff's older brother, Sean Guterman, observed the assault while it was still in progress, immediately removed Plaintiff from it and then assisted her in getting home.

47.    Having been badly beaten and humiliated, Plaintiff did not return to school for the rest of the semester, declined to attend her junior high school graduation and received a diploma by mail.

### *Sexual Abuse of Plaintiff at the hands of Defendant Mark Waltzer*

48.    During the 1999-2000 SY, while Plaintiff was attending Francis Lewis High School ("Francis Lewis HS"), Plaintiff's Social Studies teacher was Defendant Mark Waltzer. Throughout the school year, Defendant Waltzer paid a lot of attention to Plaintiff and would often engage her in conversation outside of the classroom in common areas around the school.

49.    Plaintiff found Defendant Waltzer to be very nice, friendly and warm, which was especially appealing to Plaintiff, as she was growing up without a father in the home.

50.    By the spring of 2000, Plaintiff was under the impression that she and Defendant Waltzer had developed a special rapport. Plaintiff viewed Defendant Waltzer as a trusted friend and father figure.

51.     Notwithstanding the fact that Defendant Waltzer knew or should have known that developing a friendship with a student that went beyond teacher-student was wildly inappropriate, towards the end of that school year, Defendant Waltzer approached Plaintiff and gave her his *personal phone number and personal address*, urging her to contact him anytime. Because Plaintiff considered Defendant Waltzer to be her friend, she took his contact information.

52.     A couple of weeks later, shortly after the end of the 1999-2000 SY, Plaintiff experienced trouble at home when she and her mother got into an argument, prompting Plaintiff to leave the home and not return for several weeks. During that time, Plaintiff initially went to live at the home of a friend from school. After temporarily moving in with her school friend, Plaintiff called Defendant Waltzer to try to talk to him about the difficulty she was having with her mother but Defendant Waltzer did not answer the phone at that time. As Defendant Waltzer had given Plaintiff the address of the apartment building where he lived, 188-04 64th Avenue, Fresh Meadows, N.Y. 11365, Plaintiff walked to that address and used the intercom system to alert Defendant Waltzer of her presence. Defendant Waltzer told Plaintiff to meet him at Starbucks across the street.

53.     At Starbucks, Plaintiff and Defendant Waltzer discussed Plaintiff's home life over coffee, and he later invited her to his apartment for dinner. Plaintiff accepted the invitation.

54.     The moment Plaintiff entered Defendant Waltzer's apartment, he made sexual advances towards her physically, kissing Plaintiff and then consummating the statutory rape through sexual intercourse. Immediately prior to this encounter, Plaintiff had been a fifteen (15) year-old virgin.

55.     Plaintiff spent that night at Defendant Waltzer's apartment.

56.     Thereafter, Defendant Waltzer maintained this inappropriate and criminal sexual relationship with Plaintiff throughout the summer of 2000, even going so far to as introduce

13

Plaintiff to his daughters Rachel and Cayla, who, upon information and belief, are currently approximately twenty-six (26) and twenty-three (23) years of age, respectively.

57.    Defendant Waltzer never bothered to use any form of protection against pregnancy and sexually transmitted diseases while having sex with Plaintiff. Accordingly, towards the end of that summer, Plaintiff learned that she had become pregnant.

58.    After Plaintiff informed Defendant Waltzer of her pregnancy, Defendant Waltzer insisted that Plaintiff have an abortion, forcefully and consistently urging Plaintiff to let him take her to an abortion clinic. Scared and unsure of how she would be able to raise a child, being one herself, Plaintiff agreed to the abortion.

59.    Soon thereafter, upon information and belief, Defendant Waltzer took Plaintiff to Garden OB/GYN in Queens, where she obtained an abortion for which Defendant Waltzer paid.

60.    Following the abortion, Defendant Waltzer stopped sexually assaulting Plaintiff but had already inflicted indelible and permanent damage on Plaintiff's psyche, due not only to the sexual abuse itself but also the abortion he coerced her into getting. Plaintiff felt used and worthless. Defendant Waltzer's callous treatment of Plaintiff was particularly outrageous and galling as Defendant Waltzer was the dean of students at Francis Lewis HS and knew or should have known about the psychological damage a sexual relationship between an NYC DOE teacher and his or her student could inflict on the student and how his relationship with Plaintiff would violate, *inter alia*, her rights under Title IX.

61.    Defendant Waltzer's abrupt termination of their seemingly romantic relationship, immediately after the abortion, only heightened and exacerbated Plaintiff's feelings of low self-esteem.

62.    Shockingly, Defendant Waltzer remained in contact with Plaintiff during the following two school years and beyond, maintaining such contact well into Plaintiff's adulthood and culminating in his visit to Plaintiff in Hawaii, where Plaintiff had moved to start a new life far away from the trauma she had suffered due to her experiences while attending NYC DOE schools. This visit occurred in *late 2020*.

### *Sexual Harassment of Plaintiff by Defendants Meiners, Eisenberg and John Doe #2*

63.    During the 2000-2001 SY, Plaintiff confided in Defendant Douglas Meiners concerning the sexual abuse Defendant Waltzer had subjected her to. Yet, instead of reporting that gender-based violence, as was his mandated duty under the Chancellor's Regulations, Defendant Meiners sought to further the sexual abuse by making unwanted sexual advances towards Plaintiff.

64.    When Plaintiff turned to yet another NYC DOE teacher for assistance, Defendant Eisenberg, he also sexually harassed Plaintiff. Specifically, Plaintiff informed Defendant Eisenberg about Defendant Meiners' unwanted sexual advances towards her. Defendant Eisenberg did not report that gender-based violence. Instead, he subjected Plaintiff to more gender-based violence by seeking to have a romantic relationship with her, who was still only fifteen (15) years old.

65.    During the same school year, Defendant John Doe #2, another Francis Lewis HS teacher, made additional unwanted sexual advances towards Plaintiff.

66.    None of the teachers who sexually abused or harassed Plaintiff received any form of discipline.

### *The Aftermath of the Gender-Based Violence*

67.    Plaintiff did not graduate from Francis Lewis HS.

68.     Plaintiff left the school at the end of the 2001-2002 SY and never returned. Before Plaintiff left Francis Lewis HS, the gender-based violence defendants Waltzer, Meiners, Eisenberg and John Does #1 and #2 subjected here to caused Plaintiff's grades to deteriorate.

69.     Because of the horrendous trauma, abuse and betrayal of trust Plaintiff endured during her time at IS-237 and Francis Lewis HS, Plaintiff experienced an emotional downward spiral in her late teens that has never ceased, as it continues to date.

70.     Ever since leaving Francis Lewis HS, Plaintiff has had tremendous difficulty in relationships with men. She suffered through a failed marriage. She has been unable to trust those in positions of authority. She has had problems with physical and emotional intimacy. She has been very promiscuous at times while maintaining a detached and emotionless connection to sex. She has found great difficulty in trying to trust people in her life, even those who are closest to her such as her siblings and former husband during the course of their marriage.

71.     Plaintiff has tried to run away from the emotional pain caused by her traumatic experiences at NYC DOE schools, including getting married at age nineteen (19) and moving to Hawaii soon thereafter.

72.     Unfortunately, because the emotional pain Plaintiff sought to run away from was internal, she carried it with her to Hawaii, where her marriage produced a daughter but was otherwise a failure, as Plaintiff had erected an emotional wall her husband was unable to penetrate. The wall was created by the emotional trauma defendants Waltzer, Meiners, Eisenberg and John Does #1 and #2 inflicted upon Plaintiff. That emotional trauma caused Plaintiff's low self-esteem and anger towards men.

73.     Further, Plaintiff experienced tremendous guilt over the abortion Defendant Waltzer convinced her to have, believing that she did not deserve to be happy.

*Underreporting of Gender-Based Violence Incidents*

74.     New York State requires all schools to report violent or disruptive incidents as well as incidents of discrimination and harassment under the School Safety and the Educational Climate ("SSEC") data collection program. Certain forcible sex offenses are included within the reporting. For example, during the 2017-2018 school year, NYC schools reported nearly 3,400 sexual assaults, or 18.9 per day.[5]

75.     The NYC DOE also collects and reports information from each school district on the number of sexual harassment incidents that were investigated and verified by the school district.[6] Disparities between NYC DOE reports and reporting from the rest of the state suggest that NYC DOE's numbers do not capture the full extent of gender-based violence occurring in NYC DOE schools.

76.     There are approximately 1.1 million students enrolled in NYC DOE schools, and approximately 1.6 million enrolled in New York state schools outside of New York City.[7] During the 2016-2017 school year, the NYC DOE reported only 590 material incidents of sexual and gender harassment while the rest of New York State reported 1,739 material incidents of sexual and gender harassment.[8] Similarly, during the 2015-2016 school year, NYC DOE reported 503

---

[5] To access SSEC data cited here, see School Safety and the Educational Climate: Data Reporting, NYSED Information and Reporting Services (Feb. 23, 2018): http://www.p12.nysed.gov/irs/school_safoty/school_safety_data_reporting.html (hereinafter "SSEC Data Reporting").

[6] Upon information and belief, the NYC DOE does not collect information concerning the number of sexual harassment incidents that were reported but never investigated by the school.

[7] See DOE Data at a Glance, NYC Dep't of Educ. (2018), https://www.schools.nyc.gov/about-us/reports/doe-data-at-a-glance; Public School Enrolllment, NYSED (April 4, 2019),http://www.p12.nysed.gov/irslstatistics/enroll-n- staff/home.html.

[8] SSEC Data Reporting, supra, note 74.

incidents of sexual and gender harassment in the NYC DOE schools, while the state reported 1,664 such incidents.[9]

77.     This disparity is startling: New York City's population is roughly 43.44% of the state's overall population, but accounted for only 25.33% of the state's gender and sexual discrimination and harassment reports during the 2016-2017 school year and 23.21% during the 2015-2016 school year.[10] These numbers suggest rampant underreporting indicative of a systemic failure to recognize, respond to, and prevent sexual harassment and assault.

78.     These disparities caught the attention of the New York Attorney General. The Attorney General's Office launched an investigation in response to reporting from the 2013- 2014 school year, during which seventy percent of NYC DOE schools reported *zero* instances in which a student was bullied, harassed, or discriminated against and ninety-eight percent of schools reported fewer than ten incidents within the year.[11]

79.     In August 2016, the Attorney General's Office released a report, in the form of a letter, documenting its investigation and resulting concerns.[12] The letter observed that reporting levels "suggest both significant underreporting of material incidents of harassment and discrimination by schools in New York City, along with some confusion or uncertainty as to how to classify those incidents that are reported."[13]

---

[9] Id.

[10] See QuickFacts: New York: New York City, New York, U.S. Census Bureau (July l, 2018), https://www.ccnsus.gov/quickfacts/fact/table/ny,newyorkcitynewyork,US/PST045218.

[11] New York State Educ. Dep't and New York Office of the Att'y General, Letter to District Superintendents on Dignity for All Students Act: Results of Statewide School District Survey and Guidance on Implementation 3 (Aug. 31, 2016), available http://www.p I 2.nysed.gov/dignityact/documents/SED-AGLttrandGuidance8-3 l- l 6.pdf (hereinafter "New York Att'y General Letter on DASA").

[12] See, generally, id.

[13] Id., at 4.

*NYC DOE's Culture of Indifference to Gender-Based Violence*

80.	This underreporting is part of a broader NYC DOE school culture of indifference to gender-based violence that affects both staff and students.

81.	Girls for Gender Equity ("GGE"), a community-based research and advocacy organization, conducted two research studies involving a total of over 1,300 NYC DOE students.[14] The study found that NYC DOE schools have a culture that has normalized sexual harassment and gender-based violence.[15]

82.	One in three students interviewed by GGE reported experiencing some form of sexual harassment in school.[16] Sixty-four percent of students said that sexual harassment occurred at their schools, over thirty percent reported that pressure to participate in sexual activity occurred at their school, and approximately ten percent reported that forced sexual activity occurred at their school.[17]

83.	The study also found that students who report their harassment to NYC DOE officials do not receive adequate support.[18]

*NYC DOE's Unlawful Policies, Patterns and Practices*

84.	Every school district receiving federal funding is required to designate at least one Title IX coordinator who is responsible for training faculty, staff, and students on rights and obligations under Title IX. The Office for Civil Rights has stated that "it may be good practice"

---

[14] Participatory Action Research, Girls for Gender Equity (2018), https://www.ggenyc.org/programs/community-organizing/participatory-action-research/(hereinafter "Participatory Action Research").

[15]  The Schools Girls Deserve 23 (2017), Girls for Gender Equity, available at https://www.ggenyc.org/wp-content/uploads/2017/11/GGE_school_girls_deserveDRAFT6FINALWEB.pdf.

[16] Id., at 23.

[17] Participatory Action Research, supra, note 89.

[18] Id.

for larger school districts to designate multiple Title IX coordinators, such as one for each school or school campus.[19]

85.    The NYC DOE has only one Title IX Coordinator for the *entire* school district of 1.1 million students and 300,000 staff. This *one* individual is responsible for responding to and investigating NYC public schools' reported 2,600 sexual harassment incidents per year, or 14.4 sexual harassment incidents per school day.

86.    By way of comparison, other cities with smaller school districts have more than one Title IX coordinator. The Los Angeles Unified School District has one Title IX Coordinator for 694,096 students as well as one Title IX manager at each school.[20] The Chicago Public Schools District has two Title IX Coordinators for 361,314 students.[21]

87.    In stark contrast to the NYC DOE's staffing of the Title IX coordinator position, Harvard University employs 50 Title IX Coordinators for its 36,000 students and more than 12,000 staff.[22]

88.    According to federal regulations, the Title IX coordinator should be a full-time position and must not have any other job responsibilities that may create a conflict of interest.[23] Nevertheless, the Title IX Coordinator is serving as the Diversity Unit Chief, a position in the NYC DOE's Office of General Counsel. With multiple roles, the Title IX Coordinator has less time to devote to training and support in the Title IX capacity. This position creates a conflict of interest by placing the Title

---

[19] 2015 Guidance on Title IX Coordinators, supra, note 5, at 1, 3.

[20] See Title IX – Sex Based Nondiscrimination Statute, L.A. Unified School District, https://achieve.lausd.net/Page/3654; L.A. Unified Fingertip Facts 2018-2019, L.A. Unified School District (2018); Title IX Policy/Complaint Procedures, L.A. Unified School District Policy Bulletin 7 (Feb. 14, 2018).

[21] State & Large School District Title IX Gender Equity Coordinators, Methods of Administration Coordinators & Other State & District Level Gender Equity Experts 13, Feminist Majority Foundation, Education Equality Program, (Feb. 6, 2019), available at http://www.feminist.org/educationlpdfs/State-TitleIX-Coordinators.pdf; CPS Stats and Facts, Chicago Public Schools (Apr. 1, 2019), https://cps.edu/Abont_CPS/At-a-glance/Pages/Stats_and_facts.aspx.

[22] See FY18 Annual Report 4 (2018), Harvard Office for Dispute Resolution, Title IX Office, available at https:1/titleix.harvard.edu/files/titleix/filesltitle_ix_odr_2018_annual_report_final_12 l 2l 8_for_web.pdf; Harvard at a Glance, Harvard University, https://www.harvard.edu/about-harvard/harvard-glance.

[23] 2015 Guidance on Title IX Coordinators, supra, note 5, at 3.

IX Coordinator in a position to *both investigate* Title IX complaints against the NYC DOE *and defend* the NYC DOE against Title IX claims.

89.     The Dignity for All Students Act ("DASA") requires every school in New York to designate a DASA coordinator to respond to, *inter alia*, incidents of bias-based harassment or discrimination.[24] In accordance with its DASA obligations, the NYC DOE designates one DASA Liaison in each school to handle student reports of harassment and discrimination.[25]

90.     However, DASA Liaisons lack the qualifications, training, and authority required of Title IX Coordinators.

91.     The Municipal Defendants do not provide clear notice to students and families of the role of the DASA Liaison in reporting and responding to harassment and discrimination. As a result, according to the NYC Comptroller, "many students were unable to identify their school's DASA coordinator when surveyed."[26] In addition, according to the Comptroller's Office, "numerous accounts from schools and advocates" indicated that the "DASA coordinator is not consistently implemented in all schools."[27]

### *Failure to Provide Notice to Students and Families*

92.     Defendants fail to provide students and employees within NYC DOE with sufficient information regarding the school district's Title IX Coordinator in violation of Title IX and its regulations.

93.     Girls for Gender Equity, in conjunction with other organizations, conducted a study during the 2010-2011 school year to determine how many NYC public schools were able to

---

[24] N.Y. Educ. L. Art. 2 § 13.
[25] Respect for All: Fostering Anti-Bullying Practices, NYC Dep't of Educ. (2019), https://www.schools.nyc.gov/school-life/policies-for-all/respect-for-all (last visited Apr. 22, 2019).
[26] New York City Comptroller, supra, note 84, at 10.
[27] Id.

name the NYC DOE's Title IX Coordinator. When asked if there was a staff person designated to receive sexual harassment complaints, the study found that only 5% of contacted schools were able to identify the coordinator and provide the caller with contact information.[28]

94.     The Municipal Defendants also do not provide access to Title IX resources to parents or students through their NYC DOE website. NYC DOE's homepage contains no links to its Title IX or anti-discrimination policies.[29] The NYC DOE homepage does not provide  notice of the NYC DOE's obligations under Title IX, does not describe how families or students can identify in-school resources, and does not describe supports or interventions for students who have experienced gender-based violence.

95.     The Municipal Defendants  also fail to provide students and employees with adequate information about Title IX policies, adequate notice of students' rights and protections under Title IX, and adequate notice of schools' obligations under Title IX - in violation of Title IX and its regulations.

96.     A June 2018 report by the New York City Comptroller's Office found that NYCDOE did not provide students and families with information about resources available  in the event of sexual harassment or assault.[30]

97.     Because of these failures on the part of the NYC DOE to properly disseminate information, Plaintiff did  not  know  how  to  appropriately  report  the  sexual  assault  and  harassment  she experienced at IS-237 and Francis Lewis HS to the Title IX Coordinator.

---

[28] Participatory Action Research, supra, note 89.
[29] NYC Dep't of Educ., https://www.schools.nyc.gov/.
[30] New York City Comptroller, supra, note 84, at 10-11.

*The Failure to Train NYC DOE Personnel*

98.    Defendants do not provide adequate training, resources or support for their employees on how to identify gender-based violence, how to properly investigate complaints, how to properly document and report incidents, how to devise interim measures to protect victims of gender-based violence, and how to prevent further incidents of gender-based violence.

99.    School personnel also do not receive adequate training on the impact of gender-based violence, or its effect on a student's ability to learn.

100.    Upon information and belief, NYC DOE teachers are required to participate in mandatory sexual harassment training, but that training is limited to preventing sexual harassment amongst co-workers. A separate training includes a module on intervening in peer-to-peer sexual harassment, but not teacher-student sexual harassment.

101.    DASA liaisons at each school receive training on harassment and discrimination, but trainings are typically limited to newsletters or optional webinars.[31]

102.    The 2016 Attorney General report has characterized NYC DOE staff training on harassment and discrimination as "sparse and inadequate."[32]

103.    The 2018 New York City Comptroller's report found that the underreporting likely signifies "a lack of adequate training about the reporting process and the relevance of documenting the types of problems most common in particular school communities."[33]

104.    The NYC Comptroller's Report found that the NYC DOE does not provide schools with funding to support training, materials, or resources for the DASA liaison.[34]

---

[31] Id.
[32] New York Att'y General Letter on DASA, supra, note 81, at 7.
[33] New York City Comptroller, supra, note 84, at 11.
[34] Id., at 11-12.

23

105.   As a result of the Municipal Defendants' failure to train, support, and supervise its employees, Plaintiff's complaints of sexual harassment and sexual assault were ignored and went unreported, in violation of Title IX.

## CAUSES OF ACTION

## VIOLATION OF TITLE IX (42 U.S.C. § 1983 LIABILITY)

106.   Plaintiff incorporates and reiterates each and every paragraph above as though fully set forth herein.

107.   The Municipal Defendants operate programs in receipt of federal funds and are thus covered by Title IX's prohibition on sexual discrimination.

108.   Plaintiff was a victim of sexual assault and repeated assault harassment because of her female gender.

109.   The Municipal Defendants possessed actual and/or constructive knowledge of the numerous acts of sexual assault and harassment directed towards Plaintiff. Those acts occurred while she was on school property and/or because of the intentional conduct of Plaintiff's social studies teacher, Defendant Waltzer, while Plaintiff was off of school property.

110.   At all relevant times, The Municipal Defendants exercised substantial control over the sexual harassers and the sexual assailant who, at all relevant times, were employees of NYC DOE schools.

111.   The harassment and assaults suffered by Plaintiff were so severe, pervasive, and objectively offensive that they effectively denied Plaintiffs equal access to educational opportunities or benefits.

112.    The Municipal Defendants acted  with deliberate indifference  to the acts of abuse and harassment against Plaintiff  by failing to take any action to prevent them, to deter the NYC DOE employees responsible or to protect Plaintiff from sexual abuse and sexual harassment, while she attended IS-237 and Francis Lewis HS.

113.    The Municipal Defendants failed to conduct any investigation into Plaintiff's allegations of gender-based violence and failed to prepare written reports as to whether the allegations were substantiated.

114.    The Municipal Defendants failed to provide interim or permanent measures to ensure that Plaintiff could continue to enjoy access to educational opportunities and benefits.

115.    These failures arose from the Municipal Defendants' systemic failure to provide sufficient training to educators and administrators at IS-237 and Francis Lewis HS regarding their obligations under Title IX, including how to identify and address sexual assault and sexual harassment being perpetrated by teachers and other staff and  how to respond to a report of harassment or assault.

116.    The Municipal Defendants failed to adequately staff the Title IX Coordinator position.

117.    The Municipal Defendants failed to promulgate and/or implement a policy that affirmatively provides notice of Title IX obligations and responsibilities to educators and administrators at NYC DOE Schools. The Municipal Defendants also failed to provide notice to students and parents about how to report a Title IX violation when there is an allegation of gender-based violence.

118.    As a result of the acts and omissions of the Municipal Defendants, Plaintiff experienced and continued to experience harassment and assault over multiple school years.

119.   By virtue of the above, the Municipal Defendants acted intentionally and with deliberate indifference to the systemic denial of Plaintiff's access to educational opportunity or benefit. The Municipal Defendants' violation of their duty to Plaintiff arises from their systemic failure to properly implement Title IX.

120.   The acts, conduct and behavior of the Defendants, individually and collectively, caused Plaintiff to suffer actual damages including, but not limited to, emotional pain and suffering, sexual assault, humiliation, embarrassment, anxiety, mental distress, inconvenience, insult, a denial of equal access to educational benefit, medical expenses associated with mental health treatment, and other economic and non-economic damages.

121.   Plaintiff is entitled to recover the aforementioned damages under Title IX and 42 U.S.C. § 1983.

## VIOLATION OF EQUAL PROTECTION CLAUSE (42 U.S.C. § 1983 LIABILITY)

122.   Plaintiff incorporates and reiterates each and every paragraph above as though fully set forth herein.

123.   The Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution prohibits governments from applying or passing laws that target or otherwise treat similarly situated individuals differently on the basis of certain protected classes including, but not limited to, an individual's gender. Specifically, the equal protection clause states that: "No State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

124.   Defendants Waltzer, Meiners, Eisenberg and John Doe #1 and John Doe #2 made Plaintiff a victim of repeated instances of sexual assault and sexual harassment because of her female gender.

26

125.   The Municipal Defendants possessed actual and/or constructive knowledge of the numerous acts of sexual assault and harassment directed towards Plaintiff.

126.   At all relevant times, The Municipal Defendants exercised substantial control over Defendants Waltzer, Meiners, Eisenberg and John Doe #1 and John Doe #2 who, at all relevant times, were employees of NYC DOE schools.

127.   The Municipal Defendants acted  with deliberate indifference  to the acts of abuse and harassment against Plaintiff  by failing to take any action to prevent them, to deter the NYC DOE employees responsible or to protect Plaintiff from further sexual abuse and sexual harassment.

128.   Plaintiff was similarly situated to her male classmates while she attended IS-237 and Francis Lewis HS.

129.   Through the harassment and assaults suffered by Plaintiff, Defendants denied her equal protection of the laws in violation of Fourteenth Amendment rights under the U.S. Constitution.

130.   As a result of the acts and omissions of the Defendants, Plaintiff experienced and continued to experience harassment and assault over multiple school years because of her gender.

131.   By virtue of the above, Plaintiff has  suffered actual damages including, but not limited to, medical expenses associated with mental health treatment, inconvenience, insult, mental distress, embarrassment, humiliation, physical assault, anxiety, emotional pain and suffering, a denial of access to educational benefit, and other economic or non-economic damages

132.   Plaintiff is entitled to recover the aforementioned damages under the Equal Protection Clause and 42 U.S.C. § 1983.

## RESPONDEAT SUPERIOR LIABILITY

133. Plaintiff incorporates and reiterates each and every paragraph above as thoughfully set forth herein.

134. At all relevant times, Defendants Waltzer, Meiners, Eisenberg and John Doe #1 and John Doe #2 were employees of the Municipal Defendants.

135. At all relevant times, Defendants Waltzer, Meiners, Eisenberg and John Doe #1 and John Doe #2 were acting within the scope of their employment through their actions and omissions directed at the Plaintiff, a then active NYC DOE student.

136. The Municipal Defendants are liable to Plaintiff for the aforementioned acts and omissions of Defendants Waltzer, Meiners, Eisenberg and John Doe #1 and John Doe #2 under the doctrine of *respondeat superior*.

137. By virtue of the above, Plaintiff has suffered actual damages including, but not limited to, medical expenses associated with mental health treatment, inconvenience, insult, mental distress, embarrassment, humiliation, physical assault, anxiety, emotional pain and suffering, a denial of access to educational benefit, and other economic or non-economic damages.

## SEXUAL ASSAULT

138. Plaintiff incorporates and reiterates each and every paragraph above as thoughfully set forth herein.

139. Defendant Waltzer's conduct towards Plaintiff constitutes, *inter alia*, rape in the third degree.

140. Defendant Waltzer's intentional acts and omissions resulted in the conduct of his towards Plaintiff that constitutes, *inter alia*, rape in the third degree.

141. The negligent acts and omissions of the Municipal Defendants resulted in the conduct of Defendant Waltzer towards Plaintiff that constitutes, *inter alia*, rape in the third degree.

28

142. By virtue of the above, Defendant Waltzer and the Municipal Defendants violated Plaintiff's right to be free of sexual assault under CPLR 213-C.

143. By virtue of the above, Plaintiff has suffered actual damages including, but not limited to, medical expenses associated with mental health treatment, inconvenience, insult, mental distress, embarrassment, humiliation, physical assault, anxiety, emotional pain and suffering, a denial of access to educational benefit, and other economic or non-economic damages.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

144. Plaintiff incorporates and reiterates each and every paragraph above as thoughfully set forth herein.

145. Defendants Waltzer, Meiners, Eisenberg and John Doe #1 and John Doe #2 engaged in extreme and outrageous conduct towards Plaintiff to her detriment.

146. Defendants Waltzer, Meiners, Eisenberg and John Doe #1 and John Doe #2, through their extreme and outrageous conduct towards Plaintiff, each demonstrated an intent to cause, or disregard of a substantial probability of causing, severe emotional distress in the Plaintiff.

147. The extreme and outrageous conduct of Defendants Waltzer, Meiners, Eisenberg and John Doe #1 and John Doe #2 towards Plaintiff directly caused her severe emotional distress.

148. By virtue of the above, Plaintiff has suffered actual damages including, but not limited to, medical expenses associated with mental health treatment, inconvenience, insult, mental distress, embarrassment, humiliation, physical assault, anxiety, emotional pain and suffering, a denial of access to educational benefit, and other economic or non-economic damages.

## VIOLATION OF NEW YORK STATE HUMAN RIGHTS LAW

149. Plaintiff incorporates and reiterates each and every paragraph above as though fully set forth herein.

150.   The schools Plaintiff attended, IS-237 and Francis Lewis HS, constitute "places of public accommodation" within the meaning of the New York State Human Rights Law. NYSHRL, N.Y.S. Executive Law Article 15 § 291(2).

151.   The Municipal Defendants failed to take reasonable steps to provide appropriate notice and training on, investigation of and response to reported sexual harassment and sexual assault.

152.   That failure constitutes a breach of the Municipal Defendants' duty to Plaintiff, under the NYSHRL, to provide Plaintiff with the "the opportunity to obtain education [and] the use of places of public accommodation without discrimination because of…..gender identity." Id.

153.   The Municipal Defendants' breach of their duty to Plaintiff constitutes a violation of Plaintiff's rights under the NYSHRL.

154.   Defendants Waltzer, Meiners, Eisenberg and John Doe #1 and John Doe #2 subjected Plaintiff to sexual assault and/or sexual harassment, respectively.

155.    The abuse Plaintiff suffered at the hands of Defendants Waltzer, Meiners, Eisenberg and John Doe #1 and John Doe #2 constitutes a deprivation of Plaintiff's right, under the NYSHRL, to have the opportunity to obtain education and the use of places of public accommodation without discrimination because of gender identity.

156.    The acts, conduct and behavior of the Defendants, individually and collectively, caused Plaintiff to suffer actual damages including, but not limited to, emotional pain and suffering, sexual assault, humiliation, embarrassment, anxiety, mental distress, inconvenience, insult, a denial of equal access to educational benefit, medical expenses associated with mental health treatment, and other economic and non-economic damages.

## VIOLATION OF NEW YORK CITY HUMAN RIGHTS LAW

157.    Plaintiff incorporates and reiterates each and every paragraph above as though fully set forth herein.

158.    The schools Plaintiff attended, IS-237 and Francis Lewis HS, constitute "place or provider of public accommodation" within the meaning of the New York City Human Rights Law. NYCHRL, N.Y.C. Admin. Code § 8-101.

159.    The Municipal Defendants failed to take reasonable steps to provide appropriate notice and training on, investigation of and response to reported sexual harassment and sexual assault.

160.    The Municipal Defendants failed to take appropriate measures to safeguard the health and well-being of Plaintiff in school.

161.    Defendants Waltzer, Meiners, Eisenberg and John Doe #1 and John Doe #2 subjected Plaintiff to sexual assault and/or sexual harassment, respectively.

162.    These failures by the Municipal Defendants and the abuse Plaintiff suffered at the hands of Defendants Waltzer, Meiners, Eisenberg and John Doe #1 and John Doe #2 constitute a deprivation of Plaintiff's right, under the NYCHRL, to be free from discrimination because of her gender and to have "the full and equal enjoyment, on equal terms and conditions, of any [public] accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation." NYCHRL, N.Y.C. Admin. Code § 8-107(4)(a).

163.    The acts, conduct and behavior of the Defendants, individually and collectively, caused Plaintiff to suffer actual damages including, but not limited to, emotional pain and suffering, sexual assault, humiliation, embarrassment, anxiety, mental distress, inconvenience, insult, a denial of equal access to educational benefit, medical expenses associated with mental health treatment, and other economic and non-economic damages.

## MUNICIPAL LIABILITY (42 U.S.C. § 1983 LIABILITY)

164. Plaintiff incorporates and reiterates each and every paragraph above as though fully set forth herein.

165. At all relevant times, and based on the allegations set forth above, it was the custom and/or practice of the Municipal Defendants to enable and/or allow Defendants Waltzer, Meiners, Eisenberg and John Doe #1 and John Doe #2 and other NYC DOE employees to violate the rights of Plaintiff and other NYC DOE students under Title IX, the Equal Protection Clause, the New York State Human Rights Law, the New York City Human Rights Law and CPLR § 213-C and to violate the common law rights of Plaintiff and other NYC DOE students to be free of the intentional infliction of emotional distress.

166. At all relevant times, the aforementioned custom and/or practice of the Municipal Defendants was not written or formally adopted, but was a pervasive, longstanding practice that had the force of law.

167. At all relevant times, the Municipal Defendants failed to properly train, supervise, discipline and adequately screen Defendants Waltzer, Meiners, Eisenberg and John Doe #1 and John Doe #2 and other NYC DOE employees concerning their employment with the Municipal Defendants and interactions with Plaintiff and other NYC DOE students, including, but not limited to, the gender-based violence Defendants Waltzer, Meiners, Eisenberg and John Doe #1 and John Doe #2 and other NYC DOE employees have inflicted on Plaintiff and other NYC DOE students.

168. The aforementioned custom and/or practice of the Municipal Defendants and the Municipal Defendants' failure to properly train, supervise, discipline and adequately screen Defendants Waltzer, Meiners, Eisenberg and John Doe #1 and John Doe #2 caused Plaintiff to suffer actual damages including, but not limited to, emotional pain and suffering, sexual

assault, humiliation, embarrassment, anxiety, mental distress, inconvenience, insult, a denial of equal access to educational benefit, medical expenses associated with mental health treatment, and other economic and non-economic damages.

## NEGLIGENT HIRING, TRAINING, SUPERVISION AND RETENTION

169.    Plaintiff incorporates and reiterates each and every paragraph above as though fully set forth herein.

170.    At all relevant times, Defendants Waltzer, Meiners, Eisenberg and John Doe #1 and John Doe #2 were employees of the Municipal Defendants.

171.    Defendants Waltzer, Meiners, Eisenberg and John Doe #1 and John Doe #2 committed both intentional and negligent acts towards Plaintiff outside the scope of their employment.

172.    The Municipal Defendants was aware of, or reasonably should have foreseen, the propensity of Defendants Waltzer, Meiners, Eisenberg and John Doe #1 and John Doe #2 to commit the aforementioned acts towards Plaintiff.

173.    At all relevant times, the Municipal Defendants owed a duty of care to Plaintiff, a then NYC DOE student, to provide for her welfare, safety and well-being and to protect her from harm.

174.    The acts and omissions of the Municipal Defendants concerning the hiring, retention, training and supervision of Defendants Waltzer, Meiners, Eisenberg and John Doe #1 and John Doe #2 constitute a breach of the duty of care the Municipal Defendants owed to Plaintiff.

175.    The aforementioned acts and omissions of the Municipal Defendants caused Plaintiff to suffer actual damages including, but not limited to, emotional pain and suffering, sexual assault, humiliation, embarrassment, anxiety, mental distress, inconvenience, insult, a denial

of equal access to educational benefit, medical expenses associated with mental health treatment, and other economic and non-economic damages.

## JURY DEMAND

176.   Plaintiff hereby demands a trial by jury on all issues pursuant to the Seventh Amendment to the U.S. Constitution and CPLR § 4102(a).

## REQUEST FOR RELIEF

WHEREOF, Plaintiff respectfully requests that this Court:

1.   Declare Defendants' acts and omissions, as complained of herein, to be unlawful and in violation of Plaintiff's rights under Title IX, the Equal Protection Clause, the New York State Human Rights Law, the New York City Human Rights Law and CPLR § 213-C.

2.   Declare the acts and omissions of Defendants Waltzer, Meiners, Eisenberg and John Doe #1 and John Doe #2, as complained of herein, to have violated Plaintiff's common law right to be free of the intentional infliction of emotional distress.

3.   Declare the Municipal Defendants to have negligently hired, trained and retained Defendants Waltzer, Meiners, Eisenberg and John Doe #1 and John Doe #2 in a manner that caused Plaintiff to suffer actual damages.

4.   Declare the Municipal Defendants to have municipal liability which caused Plaintiff to suffer actual damages.

5.   Enter a permanent injunction barring Defendants from continuing to engage in the unlawful, discriminatory violation of Title IX and ordering Defendants to:

a. Implement policies, practices, and training programs requiring all NYC DOE schools to provide clear notice of reporting procedures for sexual harassment and sexual assault;

b. Implement policies, practices, and trainings programs for all NYC DOE teachers, staff and school officials on how to respond to reports of sexual harassment and sexual assault;

c. Implement policies, practices, and training programs for all NYC DOE teachers, staff and school officials on how to provide interim and permanent safety measures for students who have experienced sexual harassment and/or sexual assault; and

d. Staff an adequate number of NYC DOE Title IX Coordinators who are employed full-time and without conflict of interest.

6. Award Plaintiff damages in an amount to be determined at trial.

7. Award Plaintiffs reasonable attorneys' fees and costs.

8. Grant any other and further relief that this Court may deem just, equitable and proper.

9. Retain jurisdiction over this matter until Defendants demonstrate full compliance with the Court's order.

Dated: August 2, 2021                    Respectfully submitted,

Karl J. Ashanti, Esq.
*Attorneys for Plaintiff*
Musa-Obregon Law, P.C.
55-21 69th St., 2nd Fl.
Maspeth, NY 11378
T. (718) 803-1000

35