UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------------------x

JANE DOE,

                        Plaintiff,

       -against-

                                                21 CV 4332 (FB)(RML)

NEW YORK CITY DEPARTMENT OF EDUCATION,
MARK WALTZER, DOUGLAS MEINERS, MICHAEL
EISENBERG AND JOHN DOES #1 THROUGH #2

                        Defendants.

---------------------------------------------------------------------------x

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO PARTIALLY DISMISS THE SECOND AMENDED COMPLAINT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................ii

PRELIMINARY STATEMENT.............................................................................1

FACTUAL BACKGROUND..................................................................................7

ARGUMENT.......................................................................................................7

I.    UNDER THE CVA, PLAINTIFF'S SECTION 1983 AND TITLE IX CLAIMS
      ARE TIMELY IN ACCORDANCE WITH THE PLAIN LANGUAGE OF THE
      CVA AND THE INTENT OF THE NEW YORK STATE LEGISLATURE.........7

        A. Plaintiff's Section 1983 and Title IX Claims Are Timely Because
           CPLR 214-g Has Revived Them.............................................8

        B. Plaintiff's Section 1983 and Title IX Claims Are Timely, Pursuant
           to CPLR 208(b), Because Plaintiff Has Not Reached The Age of
           Fifty-Five.............................................................................12

        C. Alternatively, If This Court Finds That Plaintiff's Section 1983 and
           Title IX Claims Are Time-Barred, The Court Should Apply Equitable
           Tolling Or Grant Leave To Amend The Complaint To Add Claims
           Sounding In Common-Law And Statutory Duty to Report...............13

II.   NYC DOE IS LIABLE FOR ITS OWN NEGLIGENT ACTS AND OMISSIONS
      AND, UNDER A THEORY OF RESPONDEAT SUPERIOR, IS LIABLE FOR
      THE NON-CRIMINAL ACTS AND OMISSIONS OF THE NON-WALTZER
      INDIVIDUAL DEFENDANTS.........................................................15

III.  DEFENDANT MEINERS IS LIABLE TO PLAINTIFF BASED ON HIS OWN
      WRONGFUL ACTS AND OMISSIONS...............................................17

IV.   PLAINTIFF'S NEGLIGENT HIRING, TRAINING, SUPERVISION AND
      RETENTION CLAIMS SURVIVE DEFENDANTS' MOTION AS PLAINTIFF
      IS ENTITLED TO DISCOVERY.......................................................19

V.    PLAINTIFF'S CLAIM FOR INTENTIAL INFLICTION OF EMOTIONAL
      DISTRESS AGAINST THE NON-WALTZER DEFENDANTS IS VIABLE
      AND SURVIVES DEFENDANTS' MOTION TO DISMISS.......................21

VI.   PLAINTIFF HAS STANDING TO SEEK DECLARATORY AND INJUNCTIVE
      RELIEF...................................................................................22

CONCLUSION...................................................................................................23

# TABLE OF AUTHORITIES

## Cases

*Bd. of Tomasino*, 446 U.S. 478, 485-86, 100 S. Ct. 1790, 64 L. Ed 2d 440 (1980)......................................9

*Burlington Indus., Inc., v. Ellerth*, 524 U.S. 742, 118 S. Ct. 2257, 2270, 141 L. Ed. 2d 633 (1998) .........13

*C.Q. v. Estate of Rockefeller*, No. 20-CV-2205 (VSB), 2021 U.S. Dist. LEXIS 203563, at *24-25
(S.D.N.Y. Oct. 21, 2021)....................................................................................................................16, 17

*Chao v. Russell P. Le Frois Builder, Inc.*, 291 F.3d 219, 223 (2d Cir. 2002)............................................11

*Doe v. Female Acad. of the Sacred Heart*, 2020 N.Y. Misc. LEXIS 18220, *9; 2020 N.Y. Slip. Op
34558(U), **7 (Sup. Ct., Monroe Cty., August 11, 2020)....................................................5, 8, 9, 11, 12

*Faragher v. City of Boca Raton*, 524 U.S. 997, 118 S. Ct. 2275, 2292-93, 141 L. Ed. 2d 662 (1998).......13

*Gardner v. St. Bonaventure Univ.*, 171 F. Supp. 2d 118, 128 (W.D.N.Y. 2001)........................................8

*Hammondsport Cent. Sch. Dist.*, 527 F. Supp. 3d 501, 509 (W.D.N.Y. 2021)..........................................15

*Hollis v. City of Buffalo*, 28 F. Supp. 2d 812, 820 (W.D.N.Y. 1998) ........................................................13

*Howell v. New York Post Co.*, 81 N.Y.2d 115 (1993)...............................................................................19

*In re United States Lines, Inc.*, 318 F.3d 432, 436 (2d Cir. 2003) .......................................................10, 11

*Knaust v. City of Kingston*, 157 F.3d 86, 88 (2d Cir. 1998)......................................................................19

*Kuzmich v. 50 Murray St. Acquisition LLC*, 34 NY3d 84, 91, 108 N.Y.S.3d 431, 132 N.E.3d 624 (2019).6

*LG 67 Doe v. Resurrection Lutheran Church*, 164 N.Y.S.3d 803 (Sup. Ct., Erie Cty., March 28, 2022)...7,
8, 9, 10

*Matter of Peyton v. N.Y.C. Bd. of Standards & Appeals*, 36 NY3d 271, 279, 140 N.Y.S.3d 447, 164
N.E.3d 253 (2020)..................................................................................................................................6

*Matter of Rizzo v. New York State Div. of Hous. & Community Renewal*, 6 NY3d 104, 114, 843 N.E.2d
739, 810 N.Y.S.2d 112 (2005) ...............................................................................................................6

*SB v. Newark Cent. Sch. Dist.*, No. 6:21-CV-06138 EAW, 2022 U.S. Dist. LEXIS 32033, at *3-4
(W.D.N.Y. Feb. 23, 2022).....................................................................................................................18

## Statutes

42 U.S.C. § 1983................................................................................................ 1, 2, 4, 5, 7, 9, 10, 11, 12

CPLR 208(b) .......................................................................................................................6, 9, 10

CPLR 214-g.........................................................................................................5, 6, 7, 8, 9, 14, 15

Fed. R. Civ. P. 8(a)(2)...........................................................................................................................1

Title IX.................................................................................................... 1, 2, 4, 5, 7, 8, 9, 10, 11, 12, 19

## Secondary Sources

Article 130 of the Penal Law.................................................................................................14

Legislative Mem, L 2019, ch 11, McKinney's Session Laws of NY Advance Sheets at A-39.....6

New York Senate Bill No. 2440, N.Y. 242nd Leg. Sess. (2019).................................................6

## PRELIMINARY STATEMENT

Defendants' motion (hereinafter, "Defendants' Motion" or "the motion") to partially dismiss the Second Amended Complaint (hereinafter, "SAC") should be denied in its entirety, as it is rife with suppositions and assumptions but short on merit. For instance, in seeking a dismissal of Plaintiff's claims for negligent hiring, retention and supervision (hereinafter, "NHRS claims") against defendant New York City Department of Education ("NYC DOE"), Defendants argue that the allegations relevant to those claims are "conclusory," and, therefore, according to Defendants' faulty logic, the NHRS claims are subject to dismissal. Nothing could be further from the truth.

As Plaintiff's allegations in support of the NHRS claims satisfy the *Iqbal/Twombly* notice pleading requirement, they easily survive the challenge mounted by Defendants' Motion. *See* Fed. R. Civ. P. 8(a)(2). It must be noted that, in addition to failing on the merits, Defendants' Motion is premature and should be denied as such, at least as it pertains to the NHRS claims, because Plaintiff is entitled to discovery on the subject of, *inter alia*, NYC DOE's collective knowledge of Waltzer's propensity for sexual assault prior to his hiring. Plaintiff's entitlement to develop the record before this Court through discovery signifies that a dismissal on the pleadings of the NHRS claims is not warranted.

Defendants also miss the mark in arguing that Plaintiff's claims pursuant to 42 U.S.C. § 1983 ("Section 1983") and Title IX are both time-barred by a three-year statute of limitations. *See* Opposition Brief, p. 1. Specifically, Defendants claim that these claims were not revived by the Child Victims Act (hereinafter, "CVA") for statute of limitations purposes. *Id.* Defendants' argument fails because the CVA does revive claims brought pursuant to Section 1983 and Title IX, as that was the *intent of the New York state legislature* that passed the CVA bill into law. Moreover, the legal authorities cited by Defendants in support of their argument failed to apply

1

the well-established principle that, where there is no federal statute of limitations passed by Congress concerning a particular federal cause of action, federal courts must borrow the relevant state statute of limitations (hereinafter, "SSOL") <u>and</u> the rules governing that SSOL, including rules pertaining to tolling and **<u>revival</u>**.

Because the CVA is the governing revival statute, courts adjudicating Section 1983 and Title IX claims must borrow and adopt the CVA with respect to what rules should apply concerning the revival of those claims. Accordingly, because the CVA revived, until August 14, 2021, pendent state law claims that can be used to seek accountability for child sex abuse, the courts must similarly find that federal claims that can be used to seek accountability for child sex abuse, such as Section 1983 and Title IX, were revived until the same deadline.[1] Thus, the legal reasoning applied in the cases cited by Defendants is faulty, and this Court should instead find that Plaintiff's Section 1983 and Title IX claims are timely.

While Defendants seek to characterize and criticize certain of Plaintiff's allegations as "conclusory," Defendants heavily rely on conclusory statements themselves. For example, Defendants argue that Plaintiff's claims for intentional infliction of emotional distress (IIED) "must be dismissed against the Non-Waltzer Defendants because failure of a school or employee to sufficiently address sexual assault does not constitute an IIED claim." Defendants' Memorandum of Law in Support of Their Motion to Partially Dismiss the Second Amended Complaint ("Defendants' Brief"), p. 2. In addition to being conclusory, that argument obscures the fact that the conduct of the Non-Waltzer Defendants who are individuals easily satisfies the standard of being extreme and outrageous, as they used Plaintiff's reporting of Waltzer's sexual

---

[1] https://www.nycbar.org/get-legal-help/article/personal-injury-and-accidents/new-york-child-victims-act/

assault against her *by making sexual advances on her themselves. See, e.g.,* SAC, ¶¶5-8. At the very least, that is an issue properly reserved for a jury's determination.

Also, Defendants erroneously conflate Plaintiff's claims against the Non-Waltzer Defendants, particularly defendant Meiners, with Plaintiff's sexual assault claim against defendant Waltzer. Contrary to that conflation, Plaintiff is alleging that Meiners and the other Non-Waltzer Defendants are liable for *their own conduct,* such as their failure to report Waltzer's sexual assault and *their own* aforementioned unwanted sexual advances, not for Waltzer's sexual assault of Plaintiff.

Moreover, specifically with respect to NYC DOE, Plaintiff's common law claim against NYC DOE is not grounded in respondeat superior liability. Instead, it is based on the NYC DOE's *own negligent failure* to protect Plaintiff from the sexual assault Waltzer perpetrated against her. Thus, Defendants' motion should be denied with respect to those claims against the Non-Waltzer Defendants.

Furthermore, Defendants seek to obfuscate the issues relating to Plaintiff's respondeat superior liability claim in a more general sense. Defendants argue that "DOE is not liable under respondeat superior for sexual assaults committed by employees." Defendants' Brief, p. 2. However, even assuming, *arguendo,* that that argument is true, Plaintiff's respondeat superior liability claim against NYC DOE still survives Defendants' motion because, leaving Waltzer's sexual assault against Plaintiff aside, NYC DOE bears respondeat superior liability for the completely separate conduct of the *other* NYC DOE employees (Meiners, Eisenberg, John Doe #1 and John Doe #2) in failing to report that sexual assault and in sexually harassing Plaintiff. *See* SAC, ¶¶5-8.

3

Finally, Defendants argue that Plaintiff's claims for declaratory and injunctive relief are essentially moot because Plaintiff is no longer an NYC DOE student. *See* Defendants' Brief, p. 2. Yet, to the contrary, an exception to the mootness doctrine applies herein, as the issues Plaintiff has raised in the SAC, issues of sexual harassment, violations of Title IX, violations of the Equal Protection Clause and violations of City and State human rights laws, are capable of repetition yet will continue to evade this Court's review, if the Court determines them to be moot. Unfortunately, the result Defendants seek is one where NYC DOE and its employees continue to support a school environment festering with sexual harassment of female students, where NYC DOE employees can engage in such harassment – with impunity. Fortunately, that result is not in accordance with applicable law, and Defendants' mootness argument fails.

## FACTUAL BACKGROUND

Plaintiff relies on the allegations as set forth in the SAC and incorporates them by reference as necessary herein.

## ARGUMENT

## POINT I

## UNDER THE CVA, PLAINTIFF'S SECTION 1983 AND TITLE IX CLAIMS ARE TIMELY IN ACCORDANCE WITH THE PLAIN LANGUAGE OF THE CVA AND THE INTENT OF THE NEW YORK STATE LEGISLATURE

In Defendants' Motion, Defendants argue that Plaintiff's claims pursuant to Section 1983 and Title IX are time-barred because, according to Defendants, they were not revived by the CVA for purposes of their statute of limitations. *See* Opposition Brief, pp. 4-6. Specifically, Defendants assert that a three-year statute of limitations generally applies to both Section 1983 claims and Title IX claims and that the CVA does not alter that landscape. *Id.* In support of this argument,

4

Defendants cite to certain persuasive, but not mandatory, authorities, including cases stemming from both the Eastern and Southern Districts of New York.

However, concerning this argument, what Defendants miss is exactly what the courts in the cases they have cited have missed: namely, the fact that the New York state legislature was crystal clear in expressing its intent that all relevant claims concerning child sex abuse be revived for the statutory period that ended on August 14, 2021. *See, e.g., Doe v. Female Acad. of the Sacred Heart*, 2020 N.Y. Misc. LEXIS 18220, \*9; 2020 N.Y. Slip. Op 34558(U), \*\*7 (Sup. Ct., Monroe Cty., August 11, 2020) (holding that, when borrowing state statute of limitations, courts must apply rules governing revival under state law, and, therefore, the revival of state law claims as set forth in CPLR § 214-g also signifies the revival of Section 1983 claims and Title IX claims); *see also* CPLR § 214-g. The reasoning of the court in *LG 67 Doe v. Resurrection Lutheran Church*, 164 N.Y.S.3d 803 (Sup. Ct., Erie Cty., March 28, 2022) is particularly instructive here.

### A. Plaintiff's Section 1983 And Title IX Claims Are Timely Because CPLR 214-g Has Revived Them

In that case, a sixty-nine (69) year old man sued a church and others over sexual abuse he suffered at the hands of two individuals associated with his Boy Scout troop. The abuse allegedly occurred from 1960 until 1964. The Defendants moved to dismiss the action, claiming that the suit was time-barred by the applicable statute of limitations. *Id.*, at 804. The court found in favor of the plaintiff, denying the defendants' motions on the basis that, because the CVA had revived plaintiff's claims, his claims were timely when he filed them on August 12, 2021 – two (2) days prior to the deadline of the revival period established under the CVA. *Id.*, at 805.

The court reached its conclusion by examining the scope, purpose and intent of the CVA. Most significantly, the court focused on the legislative intent behind the CVA for purposes of interpreting its language as it pertains to the revival of otherwise time-barred claims. Its guiding

5

principles were two-fold: 1) "In the matters of statutory interpretation, 'legislative intent is the great and controlling principle...Because 'the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof." *Id.*, at 804 (quoting *Matter of Peyton v. N.Y.C. Bd. of Standards & Appeals*, 36 NY3d 271, 279, 140 N.Y.S.3d 447, 164 N.E.3d 253 (2020) (citing *Matter of Rizzo v. New York State Div. of Hous. & Community Renewal*, 6 NY3d 104, 114, 843 N.E.2d 739, 810 N.Y.S.2d 112 (2005) and *Kuzmich v. 50 Murray St. Acquisition LLC*, 34 NY3d 84, 91, 108 N.Y.S.3d 431, 132 N.E.3d 624 (2019))); and 2) "A statute 'must be construed as a whole,' and 'its various sections must be considered together and with reference to each other...' Further, the court may 'inquire into the...purpose of the legislation, which requires examination of the statutory context of the provision as well as its legislative history.'" *Id.* (quoting *Town of Aurora v. Village of E. Aurora*, 32 NY3d 366, 372, 91 N.Y.S.3d 773, 116 N.E.3d 64 (2018)).

Applying these principles to the facts of the case, the court pored over the Legislative Memorandum for the Bill, later passed into law as the CVA, and determined that the explicit legislative intent of the CVA, which includes both CPLR 214-g and CPLR 208(b), was to "finally allow justice for past and future survivors of child sexual abuse." *Id.* (citing *Legislative Mem*, L 2019, ch 11, McKinney's Session Laws of NY Advance Sheets at A-39).[2] The court then reached the conclusion that CPLR 208(b) prospectively extended the statute of limitations to age 55 for

---

[2] The publicly stated justification of the CVA could not be more clear in its purpose of reviving <u>all</u> child sex abuse claims that would otherwise be time-barred: "Because of [] restrictive statutes of limitations, thousands of survivors are unable to sue or press charges against their abusers, who remain hidden from law enforcement and pose a persistent threat to public safety. This legislation would open the doors of justice to the thousands of survivors of child sexual abuse in New York State by prospectively extending the statute of limitations to age 28 for charging felony sexual offenses, age 25 for charging misdemeanor sexual offenses, and age 55 for bringing civil actions for physical, psychological or other injury suffered as a result of child sexual abuse against any party whose intentional or negligent acts or omissions are alleged to have resulted in the abuse." CVA, New York Senate Bill No. 2440, N.Y. 242ᵉᵈ Leg. Sess. (2019).

bringing civil actions for physical, psychological or other injury suffered as a result of child sexual abuse against any party whose intentional or negligent acts or omissions are alleged to have resulted in the abuse. *Id.*, at 805. With respect to CPLR 214-g, the court crucially found that, through that provision, the CVA had revived ***all*** claims that would otherwise have been barred based on traditional applications of relevant statutes of limitations. *Id.*

Thus, while the claims of the plaintiff in that case remained time-barred by statutes of limitations under CPLR 208(b), because the plaintiff had already reached the age of fifty-five as of the effective date of the statute, February 14, 2019, his claims were not time-barred pursuant to CPLR 214-g, as "CPLR 214-g does not contain an age limitation or refer to CPLR 208(b)." *Id.*, at 804. In short, the court held that CPLR 214-g created a revival window for all time-barred child sexual abuse claims until August 14, 2021, and, because the plaintiff had filed his claims on August 12, 2021, the court found that his claims were timely. *Id.*, at 805.

Here, in applying the *LG 67 Doe* court's sound reasoning, it is evident that Defendant's argument that Plaintiff's Section 1983 and Title IX claims are time-barred by a three-year statute of limitations lacks merit and is simply incorrect. Specifically, while Defendants try to draw a distinction between the CVA's applicability to state law claims versus federal claims (such as Section 1983 claims and Title IX claims), arguing that the CVA does revive the former but does not revive the latter, the plain language of CPLR 214-g directly contradicts Defendants' interpretation of the CVA:

> "Notwithstanding any provision of law which imposes a period of limitation to the contrary, ***every* civil claim or cause of action** brought against any party alleging intentional or negligent acts or omissions by a person for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense which conduct was committed against a child less than eighteen years of age, which is barred as of the effective date of this section because the applicable period of

7

limitation has expired…is hereby revived." *Id.* (quoting Child Victims Act, CPLR 214-g) (emphasis added).

Thus, even without consulting the crucially significant legislative intent, the plain language of CPLR 214-g within the CVA unequivocally establishes that the effect of its revival power reaches **every** claim and cause of action, regardless of whether that claim or cause of action is of state or federal origin. *See* CPLR 214-g. Moreover, when the New York state legislature's intent is examined, one inevitably finds that the CVA's purpose is enable all child sexual abuse claims to be revived, just as the *LG 67 Doe* court determined, and the validity of Plaintiff's interpretation of the CVA is further cemented. *See LG 67 Doe, supra*, 164 N.Y.S.3d at 805. Accordingly, while Defendants cite to several district court cases in support of their argument, this Court should disregard all of those cases, as they incorrectly ignore both the plain language of CPLR 214-g, as set forth above, and the legislative intent of the CVA, each of which favors a finding that Plaintiff's Section 1983 and Title IX claims are timely.

Additionally, when borrowing relevant state statute of limitations in order to apply them to federal claims, courts must follow the state statute of limitation's "rules of applications, tolling and **revival**, absent a conflicting federal policy underlying the cause of action." *See Doe v. Female Acad. of the Sacred Heart, supra*, 2020 N.Y. Misc. LEXIS 18220, at \*9 (quoting *Gardner v. St. Bonaventure Univ.*, 171 F. Supp. 2d 118, 128 (W.D.N.Y. 2001) (emphasis added). Applying this well-established principle, the *Sacred Heart* court determined that, when evaluating whether the Title IX claim of the plaintiff in that case was timely, it was compelled to borrow New York's statute of limitations concerning the rules of the revival of claims. *Id.* The court held further that, in so doing, it was required to apply the rules of revival as set forth under the CVA. *Id.* Finding that the CVA encompassed all civil claims pertaining to child sexual abuse under its umbrella for

8

purposes of revival, the court held that "CPLR 214-g applies to plaintiff's claims for violation of Title IX and that plaintiff's Title IX claim has been revived." *Id.*

The court extended the same rationale to its evaluation of the timeliness of the plaintiff's Section 1983 claim. *Id.*, at \*9-\*10 ("The same analysis applies to the claim plaintiff brought under 42 U.S.C. § 1983.") (citing *Bd. of Tomasino*, 446 U.S. 478, 485-86, 100 S. Ct. 1790, 64 L. Ed 2d 440 (1980)). Thus, the *Sacred Heart* court held that, because it was obligated to borrow and then to apply the rules of revival as set forth by the CVA, the "[p]laintiff's § 1983 claims have also been revived by the Child Victims Act." *Id.*, at \*10.

In light of the foregoing, this Court should deny Defendants' motion in its entirety.

### B. Plaintiff's Section 1983 And Title IX Claims Are Timely, Pursuant To CPLR 208(b), Because Plaintiff Has Not Reached The Age Of Fifty-Five

Similar to CPLR 214-g, CPLR 208(b) establishes the timeliness of Plaintiff's Section 1983 and Title IX claims, contrary to the argument set forth by Defendants. In examining the plain language of CPLR 208(b), the *LG 67 Doe* court quoted that passage as follows:

> "Notwithstanding any provision of law which imposes a period of limitation to the contrary…with respect to *all* **civil claims or causes of action** brought by any person for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense against such person who was less than eighteen years of age…such action may be commenced, against any party whose intentional or negligent acts or omissions are alleged to have resulted in the commission of said conduct, on or before the plaintiff or infant plaintiff reaches the age of fifty-five years." *See LG 67 Doe, supra*, 164 N.Y.S.3d at 804 (quoting Child Victims Act, CPLR 208(b)) (emphasis added).
> CPLR 214-g) (emphasis added).

Just as it had with respect to CPLR 214-g, the New York state legislature is announcing that **all** civil claims and causes of action related to child sexual abuse are timely, regardless of state or federal origin, as long as they are brought before the plaintiff has reached the age of fifty-five.

While Defendants would prefer that this Court not consider federal claims such as Plaintiff's Section 1983 claims and Title IX claims as falling within CPLR 208(b)'s scope of "all civil claims or causes of action," it would require a great deal of disingenuity to ignore, contradict, deny this powerful plain language within the CVA. CPLR 208(b).

Here, it is undisputed and indisputable that Plaintiff, whose birthdate is January 19, 1985, is thirty-seven (37) years of age. Accordingly, Plaintiff's Section 1983 and Title IX claims are timely pursuant to the plain language of CPLR 208(b). *Id.*; *see also* CPLR 208(b). The CVA's legislative intent, which unequivocally supports a liberal interpretation of the timeliness of child sexual abuse claims, offers further, compelling support for this conclusion. *See LG 67 Doe, supra,* 164 N.Y.S.3d at 805.

Moreover, as the application of CPLR 208(b) does not depend on any argument concerning a revival of Plaintiff's claims, because its age fifty-five (55) threshold signifies that Plaintiff's claims *can no longer be considered untimely in the first instance*, all of Defendant's arguments against the revival of Plaintiff's claims are irrelevant in the context of CPLR 208(b) and, as such, fail.

Accordingly, Defendants' motion to dismiss Plaintiff's Section 1983 and Title IX claims should be denied in its entirety.

### C. Alternatively, If This Court Finds That Plaintiff's Section 1983 And Title IX Claims Are Time-Barred, The Court Should Apply Equitable Tolling Or Grant Leave To Amend The Complaint To Add Claims Sounding In The Common-Law And Statutory Duty To Report

If this Court finds that Plaintiff's Section 1983 and Title IX claims are time-barred, Plaintiff requests that the Court either apply equitable tolling or grant Plaintiff leave to amend the Complaint to add causes of action sounding in the common-law and statutory duties of a school official to report abuse of a student. *See, e.g., In re United States Lines, Inc.*, 318 F.3d 432, 436

10

(2d Cir. 2003); *Sacred Heart, supra*, 2020 N.Y. Misc. LEXIS 18220, at *6-*7; *see also* Social Services Law §§ 413, 415-420.

If this Court were to dismiss Plaintiff's Section 1983 and Title IX claims as time-barred, Defendants would potentially be able to evade all accountability for having had actual knowledge of Waltzer's sexual abuse against Plaintiff when she was a minor, for displaying gross deliberate indifference to that abuse and for causing Plaintiff to effectively be deprived of access to the education provided by Francis Lewis High School as a result. Taking the allegations in the SAC as true, the Non-Waltzer Defendants knew of the sexual abuse Waltzer had perpetrated against Plaintiff, failed to report that sexual abuse, and Plaintiff, whose grades deteriorated due to the situation, eventually dropped out of Francis Lewis High School. *See* SAC, ¶¶5-7, 67-70. Thus, allowing the Non-Waltzer Defendants to escape all accountability for failing in their collective duty to Plaintiff in this disastrous way would be unjust and inequitable. However, it is within the inherent equitable discretion of the Court to rectify this undesirable outcome - if the Court were compelled to reach it.

"Under the doctrine of equitable tolling, a court may, under compelling circumstances, make narrow exceptions to the statute of limitations in order to prevent inequity." *In re United States Lines, Inc.*, 318 F.3d at 436 (citing *Chao v. Russell P. Le Frois Builder, Inc.*, 291 F.3d 219, 223 (2d Cir. 2002))(internal quotations omitted). Here, if the Court were to find that Plaintiff's Section 1983 and Title IX claims are time-barred, such compelling circumstances would be present. *Id.* In other words, it would be appropriate for the Court to invoke the doctrine of equitable tolling in order to prevent the inequity of the Non-Waltzer Defendants evading accountability for failing in their duty to Plaintiff, as described above. *Id.* Alternatively, in that scenario, the Court should grant Plaintiff leave to amend the Complaint to advance a similar theory of liability

sounding in the common-law and statutory duties of a school official to report abuse against a student. *See Sacred Heart*, *supra*, 2020 N.Y. Misc. LEXIS 18220, at *6-*7; Social Services Law §§ 413, 415-420.

In short, while Plaintiff strongly maintains that her Section 1983 and Title IX claims are both timely, for the reasons set forth above, if this Court finds otherwise, Plaintiff respectfully requests that the Court either apply equitable tolling or grant Plaintiff leave to amend the Complaint to establish accountability for the failure of the Non-Waltzer Defendants to report Waltzer's sexual assault against Plaintiff.

## POINT II

### NYC DOE IS LIABLE FOR ITS OWN NEGLIGENT ACTS AND OMISSIONS AND, UNDER A THEORY OF RESPONDEAT SUPERIOR, IS LIABLE FOR THE NON-CRIMINAL ACTS AND OMISSIONS OF THE NON-WALTZER INDIVIDUAL DEFENDANTS

In Defendants' Motion, Defendants argue that NYC DOE is not liable under a theory of respondeat superior. *See* Defendants' Brief, pp. 6-7. However, Defendants arrive at this incorrect conclusion by purposely misconstruing and misrepresenting the nature of Plaintiff's respondeat superior claim. *See* SAC, ¶¶133-137. Defendants' argument is premised upon the false idea that the only allegations which are relevant to Plaintiff's respondeat superior claim are those concerning defendant Waltzer's sexual assault of Plaintiff. *See* Defendants' Brief, pp. 6-7. That is patently untrue.

Plaintiff's respondeat superior claim is <u>not</u> limited to holding NYC DOE accountable for the physical acts of sexual abuse Waltzer perpetrated against Plaintiff, as Plaintiff also seeks to hold NYC DOE accountable for the acts and omissions of other defendants <u>besides Waltzer</u>. *See* SAC, ¶¶133-137. As such, even assuming, *arguendo*, that the sexual abuse to which Defendant Waltzer subjected Plaintiff does not trigger respondeat superior liability, which Plaintiff does not

12

concede, Defendants' argument still falls short - as it does not apply to the portion of Plaintiff's respondeat superior claim that is based on *non-rape misconduct*, such as the Non-Waltzer Defendants' failure to report Waltzer's sexual abuse of Plaintiff. Thus, notwithstanding Defendants' mischaracterization of the claim, NYC DOE remains liable to Plaintiff under the doctrine of respondeat superior.

In other words, Defendants' argument is essentially that NYC DOE cannot be held liable for Waltzer's sexual assault of Plaintiff under a theory of respondeat superior because sexual assault is intentional criminal conduct that does not fall within Waltzer's scope of employment with NYC DOE. *See* Defendants' Brief, pp. 6-7. The fatal flaw in this argument is that Plaintiff's respondeat superior claim goes beyond Waltzer's sexual assault of Plaintiff and is also based on the *non-criminal* acts and omissions of the non-Waltzer individual defendants, Meiners, Eisenberg, John Doe #1 and John Doe #2, that <u>do</u> fall within the scope of their employment, such as the reporting of Waltzer's sexual assault and, more to the point, the failure of those defendants to report it. Under the doctrine of respondeat superior, NYC DOE is also liable for the non-Waltzer individual defendants' sexual harassment of Plaintiff because employers are subject to vicarious liability for the sexual harassment of an employee. *See, e.g., Faragher v. City of Boca Raton*, 524 U.S. 997, 118 S. Ct. 2275, 2292-93, 141 L. Ed. 2d 662 (1998); *Burlington Indus., Inc., v. Ellerth*, 524 U.S. 742, 118 S. Ct. 2257, 2270, 141 L. Ed. 2d 633 (1998); *Hollis v. City of Buffalo*, 28 F. Supp. 2d 812, 820 (W.D.N.Y. 1998). Thus, Defendants' argument fails.

Finally, Defendants argue that NYC DOE cannot be held liable for defendant Waltzer's sexual assault against Plaintiff. *See* Defendant's Brief, p. 7. Defendants' strategy to support this argument is to seek to reframe the claim as "duplicative of Plaintiff's claim against DOE based on respondeat superior." *Id.; see also* SAC, ¶¶141-143. This strategy fails, however, as the Plaintiff's

13

allegation that NYC DOE bears responsibility for Waltzer's sexual assault against Plaintiff stems from DOE's *own negligent acts and omissions*, and not from a theory of respondeat superior. *See* SAC, ¶¶141-143. In short, it is the NYC DOE's *own negligent failure* to protect Plaintiff from the sexual assault Waltzer perpetrated against her that is the basis of Plaintiff's claim against NYC DOE.

Thus, Defendants' arguments fail, and Defendants' motion should be denied in its entirety.

## POINT III

### DEFENDANT MEINERS IS LIABLE TO PLAINTIFF BASED ON HIS OWN WRONGFUL ACTS AND OMISSIONS

In Defendants' Motion, Defendants argue that Plaintiff's claims against defendant Meiners should be dismissed because, according to Defendants, Plaintiff's claims against are not subject to revival under the CVA. *See* Defendants' Brief, p. 8. Because that argument is incorrect as a matter of law, it fails, and Plaintiff's claims against defendant Meiners remain intact.

The crux of Defendants' argument is that the CVA revives only claims against the perpetrators of certain crimes enumerated under, *inter alia*, Article 130 of the Penal Law. *Id.* However, the scope of the CVA is broader than the scope Defendants attribute to it.

The CVA extends the applicable statute of limitations period for "every civil claim…brought against **any** party alleging intentional or **negligent acts or omissions** by a person for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense…" CVA, CPLR 214-g (emphasis added). Notably, while the CVA specifies that the injury or condition suffered by the child victim must be as a result of conduct that falls under a certain subset of sexual offenses, it does not specify that the "party" being sued must be the one who engaged in the "conduct which would constitute a sexual offense," i.e. the

14

CVA does not require that every defendant whom the victim seeks to hold accountable be the *actual perpetrator* of the sexual offense or offenses. *Id.*

In fact, the CVA specifically states that the defendant can be "any party," not only perpetrators of crimes, highlighting the inclusion of those who may not bear criminal liability but who do bear civil liability to the victim. *Id.* The fact that the CVA specifies not only intentional conduct but also "negligent acts or omissions" confirms that Defendants' narrow interpretation of its scope is simply wrong, as it contradicts both the plain language and the legislative intent of the CVA. *Id.*

In other words, the intent of the New York state legislature, through the plain language of the statute, was to revive claims against the *enablers* of child sex abuse, such as priests who cover up sexual abuse by other priests or, as in the instant case, teachers who fail to report misconduct and/or abuse by other teachers. *See* CVA, CPLR 214-g; *see also* SAC, ¶23. Thus, the broad scope the New York state legislature bestowed upon the CVA, by encompassing <u>negligent</u> acts and omissions, as well as intentional ones, has allowed victims to hold sexual abuse enablers accountable for their roles in causing child sex abuse and/or in allowing it to continue.

Moreover, while Defendants argue that Plaintiff does not base her claims against defendant Meiners on his sexual harassment of her, Defendants are simply incorrect. *See* Defendants' Brief, p. 9. To the contrary, Plaintiff does allege sexual harassment against defendant Meiners. See SAC, *See* SAC, ¶¶106-132, 149-163.

Further, the only case Defendants rely on to argue that the CVA does not revive claims against enablers is <u>inapposite</u>. *See* Defendants' Brief, p. 9; *A.A. v. Hammondsport Cent. Sch. Dist.*, 527 F. Supp. 3d 501, 509 (W.D.N.Y. 2021). Here, Defendants conflate issues. The *A.A.* court addresses the question of whether the CVA creates its own independent causes of action or, rather,

15

is only a claim-revival statute. *Id.* The court held the latter, finding that the CVA is merely a claim-revival statute. *Id.* However, Plaintiff does not and has not argued to the contrary. Instead, Plaintiff has merely claimed that *the CVA has revived otherwise time-barred claims against <u>enablers</u> as well as perpetrators*. That is a completely different argument that Defendants have failed to address. Accordingly, *A.A.* is an easily distinguishable case, and Defendants' argument is ineffectual.

In sum, Defendants mischaracterize the scope of the CVA, failing to acknowledge that it encompasses the revival of claims based on negligent and/or non-criminal behavior as well as intentional and/or criminal behavior. As a result, Defendants' argument in support of the dismissal of Plaintiff's claims against defendant Meiners fails, and those claims remain viable.

## POINT IV

### PLAINTIFF'S NEGLIGENT HIRING, TRAINING, SUPERVISION AND RETENTION CLAIMS SURVIVE DEFENDANTS' MOTION AS PLAINTIFF IS ENTITLED TO DISCOVERY

In Defendants' Motion, Defendants argue that the allegations relevant to Plaintiff's claims for negligent hiring, retention and supervision are "conclusory" and, therefore, according to Defendants, the claims should be dismissed. *See* Defendants' Brief, p. 10-12. Yet, Plaintiff's allegations in support of those claims satisfy the *Iqbal/Twombly* notice pleading requirement and therefore are sufficient to survive a challenge at the pleadings stage of litigation.

Also, the case Defendants mainly rely on in support of this argument does not stand for the proposition Defendants represent that it does. Specifically, Defendants rely on *C.Q. v. Estate of Rockefeller*, No. 20-CV-2205 (VSB), 2021 U.S. Dist. LEXIS 203563, at *24-25 (S.D.N.Y. Oct. 21, 2021) for the proposition that Plaintiff's allegations in support of her negligent hiring, training, supervision and retention claims against NYC DOE are deficient as a matter of law. *See*

Defendants' Brief, pp. 10-12. However, as Defendants' concede, the *C.Q.* Court did not dismiss the plaintiff's negligent retention and supervision claims in that case.

Defendants attempt to draw a distinction between the facts of *C.Q.* and the instant matter by arguing that "Plaintiff has not pled any facts that, subsequent to the alleged abuse, should have put DOE on notice of the abuse and that would have prevented further abuse." *Id.*, p. 12. Here, Defendants purposefully ignore the fact that Plaintiff has alleged that she informed the Non-Waltzer Defendants of the sexual abuse to which Waltzer was subjecting her and that they not only failed to report such abuse but also exacerbated the situation by sexually harassing her in response. *See* SAC, ¶¶5-9. It is evident that, if those defendants had acted properly, Plaintiff would have been spared further sexual abuse. Because they did not report the sexual abuse, it continued – culminating in Plaintiff's pregnancy and coerced abortion. *See* SAC, ¶¶48-66. Thus, consistent with the Court's holding in *C.Q.*, Plaintiff's negligent training, supervision and retention claims should survive Defendants' motion to dismiss. *See C.Q., supra*, 2021 U.S. Dist. LEXIS 203563, at \*28-29. Concerning Plaintiff's negligent hiring claim specifically, Defendants' Motion is premature and should be denied as such because Plaintiff is entitled to discovery on the subject of NYC DOE's collective knowledge of Waltzer's propensity for sexual assault prior to his hiring.

Finally, Defendants' argument that Plaintiff's negligent supervision and retention claim should be dismissed because, according to Defendants, Plaintiff failed to allege that Defendants' sexual misconduct occurred on NYC DOE's school property also fails because the SAC *does* contain such allegations. *See, e.g.*, SAC, ¶8. Accordingly, Defendants' argument is invalid, and Defendants' motion should be denied in its entirety.

17

## POINT V

**PLAINTIFF'S CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST THE NON-WALTZER DEFENDANTS IS VIABLE AND SURVIVES DEFENDANTS' MOTION TO DISMISS**

In Defendants' Motion, Defendants argue that Plaintiff's claim for intentional infliction of emotional distress ("IIED") "must be dismissed against DOE and the other Non-Waltzer Defendants [because] failure to address Waltzer's alleged sexual assault is not a basis for an IIED claim." Defendant's Brief, p. 14. In support of this argument, Defendants cite to another case where a school employee illegally subjected a student to inappropriate sexual attention. *See SB v. Newark Cent. Sch. Dist.*, No. 6:21-CV-06138 EAW, 2022 U.S. Dist. LEXIS 32033, at \*3-4 (W.D.N.Y. Feb. 23, 2022). However, *SB* is distinguishable because that is where the similarities end between that matter and the instant case.

As an initial matter, Defendants' reading of *SB* is incorrect, as its holding is not categorical but, rather, is fact-specific. *Id.* To wit, the *SB* court analyzed the specific conduct of the school officials involved and concluded that their conduct did not rise to the level of transcending all bounds of decency, as none of the officials appeared to either mimic or condone the misconduct perpetrated by the teaching assistant who targeted the student and engaged in child pornography. *Id.* In fact, "when two teaching assistants entered the room and found Defendant Holland alone in the private room with Plaintiff AB, they reported the incident." *SB, supra*, 2022 U.S. Dist. LEXIS 32033, at \*6. No such facts are present in the instant matter, where none of the Non-Waltzer Defendants reported Waltzer's sexual abuse of Plaintiff. As a result, *SB* is inapposite here.

Moreover, in further contrast to the actions of the school officials in *SB*, the Non-Waltzer Defendants engaged in their own forms of sexual misconduct towards Plaintiff by using the information concerning Waltzer's sexual abuse as an invitation to make sexual advances towards

her rather than save her from continued sexual abuse by reporting Waltzer's criminal behavior. *Id.; see also* SAC, ¶¶48-66. Whether the Non-Waltzer Defendants' creepy, insensitive and vile conduct rose to the level of being "extreme and outrageous" for purposes of satisfying the first prong of the legal standard for an IIED claim is an issue to be resolved by a jury at trial, not a basis for a dismissal on the pleadings. *See, e.g., Howell v. New York Post Co.*, 81 N.Y.2d 115 (1993). Accordingly, Defendants' motion is invalid concerning Plaintiffs' IIED claim and should be denied.

## POINT VI

## PLAINTIFF HAS STANDING TO SEEK DECLARATORY AND INJUNCTIVE RELIEF

Defendants argue that Plaintiff lacks standing to seek declaratory and injunctive relief. *See* Defendants' Brief, pp. 15-17. According to Defendants, "since Plaintiff has graduated from high school she has no likelihood of future harm, and thus, does not have standing to seek any declaratory or injunctive relief." *Id.*, p. 15. In essence, Defendants argue that Plaintiff's claims for declaratory and injunctive relief are moot because Plaintiff is no longer an NYC DOE student. *Id.*

Yet, to the contrary, an exception to the mootness doctrine applies herein. *See, e.g., Knaust v. City of Kingston*, 157 F.3d 86, 88 (2d Cir. 1998) (holding that there is an exception to the mootness doctrine where an issue is capable of repetition yet evades review). Specifically, the issues Plaintiff has raised in the SAC - issues of sexual harassment, violations of Title IX, violations of the Equal Protection Clause and violations of City and State human rights laws – should be adjudicated by this Court, as they are capable of repetition yet will continue to evade this Court's review, if the Court were to determines them to be moot and does not apply this exception.[3]

---

[3] One other major concern that contradicts Defendants' assertion that there is no likelihood of future harm is the fact that, upon information and belief, defendant Waltzer is <u>still</u> employed by the NYC DOE. That

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants'

Motion to Partially Dismiss the Second Amended Complaint, in its entirety.


Dated: June 21, 2022                          Respectfully submitted,

                                              Karl J. Ashanti, Esq.
                                              *Attorneys for Plaintiff*
                                              Musa-Obregon Law, P.C.
                                              55-21 69th St., 2nd Fl.
                                              Maspeth, NY 11378
                                              T. (718) 803-1000

---

means he still has access to students and poses a significant threat to repeat the sexual abuse to which he
subjected Plaintiff. That likelihood of future harm alone justifies the injunctive relief Plaintiff seeks.