UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
JANE DOE,

                                Plaintiff,

            -against-

                                                            21 CV 4332 (FB)(RML)


NEW YORK CITY DEPARTMENT OF EDUCATION,
MARK WALTZER AND JOHN DOES #1 THROUGH #2,

                                Defendants.
-------------------------------------------------------------------------x


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT NEW YORK CITY DEPARTMENT OF EDUCATION'S MOTION FOR SUMMARY <u>JUDGMENT</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………………...……2

PRELIMINARY STATEMENT……………………………………………………………………….5

FACTUAL BACKGROUND…..………………………………………………………………………9

LEGAL STANDARD ……..…………………………………………………………………………...9

ARGUMENT……………………………………………………………………………………...10

    I.      TRIABLE ISSUES OF FACT PRECLUDE SUMMARY JUDGMENT……….10

    II.     PLAINTIFF'S HRL CLAIMS AGAINST NYC DOE ARE TIMELY………….13

          A.  Plaintiff's HRL Claims Against DOE Have Been Tolled Under CPLR § 208(b)…………………………………………………………………13

          B.  Plaintiff's HRL Claims Against DOE Have Been Revived Under CPLR § 214-g…………………………………………………………………16

    III.    RELEVANT CASELAW FAVORS THE RETROACTIVE APPLICATION OF THE AMENDMENT OF THE NYS HRL TO INCLUDE SCHOOLS WITHIN ITS PURVIEW……………………………………………………………….23

          A.  Relevant Caselaw Favors The Retroactive Application of the Amendment of The NYS HRL to Include Schools Within Its Purview……………………………………………………………23

          B.  For Purposes of Receiving Protection Under the NYC HRL, Plaintiff Easily Qualifies As A Member of a Protected Class…………………26

    IV.    DOE'S ARGUMENT CONCERNING PROOF OF DISCRIMINATION IS INVALID…………………………………………………………………...28

    V.     THE INTENT OF THE NEW YORK STATE LEGISLATURE FAVORS DENIAL OF THE SJ MOTION……………………................................................29

    VI.    THE FACT THAT THE AREA OF THE LAW CONCERNING THE CVA IS UNSETTLED PRECLUDES SUMMARY JUDGMENT……………………….32

CONCLUSION………………………………………………………………………………..34

## TABLE OF AUTHORITIES

## CASES

*Alexander v. Eldred*, 63 N.Y.2d 460 (1984) .................................................................... 22

*Ashcroft, supra,* 336 F.3d 128 (2d Cir. 2003) ................................................................... 12

*Black v. TIC Inv. Corp.*, 900 F.2d 112 (7th Cir. 1990) ....................................................... 15

*Bradley v. Richmond Sch. Bd.*, 416 U.S. 696 (1974) .......................................................... 23

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). ......................................................... 10, 12

*Cia. Petrolera Caribe, Inc. v. Arco Caribbean, Inc.*, 754 F.2d 404 (1st Cir. 1985)................. 15

*Clinkscales v. Chevron U.S.A., Inc.*, 831 F.2d 1565 (11th Cir. 1987) ..................................... 15

*Demshick v. Community Hous. Mgt. Corp.*, 34 A.D.3d 518, 824 N.Y.S.2d 166 (2d Dept. 2006) 22

*DiMauro v. Equinox Holdings, Inc.*, 2021 N.Y. Misc. LEXIS 703 (Sup. Crt. N.Y. County, February 22, 2021) ...................................................................................................... 27, 28

*Eastman Kodak Co. v. Henry Bath LLC*, 936 F.3d 86 (2d Cir. 2019) .............................. 10, 12

*Guilbert v. Gardner*, 480 F.3d 140 (2d Cir. 2007) ............................................................... 9

*Jacobson v. Metropolitan Property & Casualty Insurance Co.*, 672 F.3d 171 (2d. Cir. 2012) ..... 9

*James v. Mukasey*, 522 F.3d 250 (2d Cir. 2008)................................................................... 20

*Johnson v. Killian*, 680 F.3d 234 (2d Cir. 2012) .......................................................... 10, 12

*Kuzmich v. 50 Murray St. Acquisition LLC*, 34 N.Y.3d 84 (2019)........................................ 30

*LG 67 Doe v. Resurrection Lutheran Church*, 164 N.Y.S.3d 803 (Sup. Ct., Erie Cty., March 28, 2022)............................................................................................................................ 29, 30

*Litton Indus. v. Lehman Bros. Kuhn Loeb Inc.*, 767 F.Supp. 1220 (S.D.N.Y. 1991), *rev'd on other grounds*, 967 F.2d 742 (2d Cir. 1992). ................................................................ 15

*Martinez-Tolentino v. Buffalo State College*, 277 A.D.2d 899, 715 N.Y.S.2d 554 (4th Dept. 2000)............................................................................................................................... 25

*Matter of Peyton v. N.Y.C. Bd. of Standards & Appeals*, 36 N.Y.3d 271 (2020)...................... 30

*Matter of Rizzo v. New York State Div. of Hous. & Community Renewal*, 6 N.Y.3d 104 (2005) 30

*N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136 (2d. Cir. 1983) ............... 26

*Nick's Garage, Inc. v. Progressive Casualty Insurance Co.*, 875 F.3d 107 (2d Cir. 2017) ......... 10

*People v. Belfrom*, 475 N.Y.S.2d 978 (N.Y.Sup.Ct.1984) .................................................... 20

*People v. Morbelli*, 544 N.Y.S.2d 442 (N.Y.Crim.Ct.1989) ................................................. 20

*People v. Rondon*, 579 N.Y.S.2d 319 (N.Y.Crim.Ct.1992)................................................... 20

*Playboy Enters., Inc. v. Dumas*, 960 F.Supp. 710 (S.D.N.Y. 1997)................................. 14, 15

*See Kwarren v. American Airlines*, 303 A.D.2d 722, 757 N.Y.S.2d 105 (2d Dept. 2003)........... 25

*Terry v. Ashcroft*, 336 F.3d 128 (2d Cir. 2003) ..................................................... 9, 12, 18

*Tesoriero v. Syosset Central School District*, 382 F.Supp. 2d 387 (E.D.N.Y. 2005)............. 23, 25

*Town of Aurora v. Village of E. Aurora*, 32 NY3d 366, 91 N.Y.S.3d 773, 116 N.E.3d 64 (2018) ..................................................................................................................................... 30

*United States v. Colon,* 961 F.2d 41 (2d Cir. 1992)........................................................... 26

## STATUTES

CPLR § 208(b)........................................................................................................... passim

New York City Human Rights Law, Admin. Code § 8-107(4) .......................................... 9, 27, 29

New York City Human Rights Law, Admin. Code § 8-102 ....................................................... 26

New York City Human Rights Law, Admin. Code § 8-107 ................................................. passim

New York Penal Law § 130.05-135.10 .................................................................................. 19

New York Penal Law § 130.35 ............................................................................................... 19

New York Penal Law § 130.55 .......................................................................................... 19, 20

New York Penal Law § 130.60-135.65 ................................................................................... 20

New York Penal Law § 130.65 ............................................................................................... 19

New York Penal Law § 130.91 ............................................................................................... 21

New York Penal Law § 135.20-135.25 ................................................................................... 21

New York Penal Law § 135.50(2) ........................................................................................... 21

New York Penal Law § 263.05 ............................................................................................... 20

New York Penal Law § 263.16 ............................................................................................... 20

New York Penal Law § 135.45(2) ........................................................................................... 21

New York Penal Law, Article 130 ...................................................................................... 7, 21

New York Social Services Law § 413 ..................................................................................... 20

New York Senate Bill No. 2440, N.Y. 242nd Leg. Sess. (2019) ....................................... 14, 31

New York State Child Victims Act (C.P.L.R. § 214-g) ..................................................... passim

New York State Human Rights Law, Executive Law § 296 ................................................ passim

New York State Human Rights Law, Executive Law § 296(4) .......................................... 8, 11, 28

## PRELIMINARY STATEMENT

Plaintiff Jane Doe[1] submits this memorandum of law in opposition to the summary judgment motion (hereinafter, "SJ Motion") or "Defendant's Motion") of Defendant New York City Department of Education (hereinafter, "DOE" or "NYC DOE"). The SJ Motion should be denied in its entirety, as DOE has failed to establish any entitlement to judgment as a matter of law. At a bird's eye view, it is quite apparent there is no caselaw or statute that *compels* the Court to set forth the outcome DOE covets – dismissal by summary judgment. Instead, the issues involved here are ones that are uniquely a matter of discretion, and DOE has not cited any legal authority or offered any argument that <u>requires</u> the Court to adopt DOE's own interpretation of the law in this area, which has yet to be settled by the Second Circuit. Thus, the resolution of Plaintiff's claims against DOE should be decided at trial, by a jury of her peers.

Respectfully, this Court should deny the SJ Motion in its entirety, *inter alia*, because there are <u>triable issues of fact</u> concerning whether: 1) under the New York State Human Rights Law, Executive Law § 296 (hereinafter, "NYS HRL"), DOE effectively or constructively denied Plaintiff the use of its school facilities due to Plaintiff's gender identity, gender expression and/or sex; or 2) under the New York City Human Rights Law, Administrative Code § 8-107 (hereinafter, "NYC HRL"), DOE effectively or constructively refused, denied or withheld from Plaintiff any of the accommodations, advantages, facilities or privileges of its schools, due to Plaintiff's actual or perceived gender and/or sexual orientation. This Court should deny the SJ Motion for the additional reason that the legal issues which underlie it have not been fully resolved by the Second Circuit and, therefore, DOE is seeking to foreclose Plaintiff's opportunity to have her day in court

---

[1] As a victim of sexual assault at the hands of DOE employees, Plaintiff has proceeded in this litigation under the alias of "Jane Doe" in order to maintain anonymity and to protect her confidential identity.

5

based on *unsettled law*, which is unsurprising given that the main legal provision at issue, the Child Victims Act (hereinafter, "CVA"), was passed into law in 2019, merely four (4) years ago.[2] Finally, it is abundantly clear that the intent of the New York legislature in enacting the CVA was to enable victims of child sex abuse, such as Plaintiff, to recover damages for the physical and emotional injuries they have sustained due to child sex abuse and to hold both abusers and their abusers' enablers accountable. As such, the CVA's legislative intent strongly favors the denial of Defendant's Motion, as DOE was an enabler of the abuse Plaintiff suffered before reaching the age of majority, abuse to which DOE's employees subjected her.

Analytically, Defendant's Motion can be distilled into its three main arguments: 1) DOE's legally incorrect assertion that Plaintiff's HRL claims are untimely because, according to DOE, the statute of limitations has expired on Plaintiff's HRL claims and those claims are not revived by the CVA; 2) DOE's erroneous claim that neither the NYS HRL nor the NYC HRL applies to the sexual misconduct Plaintiff alleges DOE employees perpetrated against her; and 3) DOE's legally improper statement that Plaintiff has failed to demonstrate discrimination which is sufficient for her to maintain NYS HRL and NYC HRL claims against DOE. Each of these arguments fails, and, accordingly, DOE should be precluded from prevailing on the SJ Motion, which lacks legal merit.

As an initial matter, DOE's first argument fails as a matter of law because, contrary to DOE's argument, Plaintiff's HRL claims are timely. In an effort to mislead the Court, DOE places all of its focus on CPLR § 214-g and, quite conspicuously, *omits <u>any</u> mention of <u>**CPLR § 208(b)**</u>*, which explicitly allows victims the right to initiate a civil action against their sexual abusers and enabling institutions, until the victim turns fifty-five (55) years old, regardless of whether the

---

[2] https://www.nysenate.gov/legislation/bills/2019/S2440

alleged acts or omissions were negligent or intentional.[3] As there is no dispute that Plaintiff is currently thirty-eight (38) years of age, i.e. <u>not</u> fifty-five (55) years of age or older, the statute of limitations has not expired concerning Plaintiff's HRL claims against DOE, and those claims are timely *right now* - without any need to be revived by the CVA, despite DOE's best effort to hide that fact from this Court.[4] In any event, Plaintiff's claims under both the NYS HRL and the NYC HRL have been revived under the CVA, specifically by CPLR § 214-g, as set forth below.

Furthermore, the NYS HRL and the NYC HRL do apply to the acts of sexual misconduct Plaintiff alleges DOE employees committed against her, DOE's arguments to the contrary notwithstanding. While DOE seeks to convince this Court that acts of sexual misconduct cannot both: a) be rooted in a criminal offense within Article 130 of the Penal Law; and b) also serve as the basis for discriminatory conduct as defined by the NYS HRL or NYC HRL, nothing could be further from the truth. One does not preclude the other. In short, an act of sexual misconduct can both be a criminal offense under Article 130 and be the predicate discriminatory act under either

---

[3] CPLR § 208(b) reads, in pertinent part: "Notwithstanding any provision of law which imposes a period of limitation to the contrary and the provisions of any other law pertaining to the filing of a notice of claim or a notice of intention to file a claim as a condition precedent to commencement of an action or special proceeding, with respect to all civil claims or causes of action brought by any person for physical, psychological or other injury or condition suffered by such person as a result of conduct which would constitute a sexual offense as defined in article one hundred thirty of the penal law committed against such person who was less than eighteen years of age, incest as defined in section 255.27, 255.26 or 255.25 of the penal law committed against such person who was less than eighteen years of age, or the use of such person in a sexual performance as defined in <u>section 263.05 of the penal law</u>, or a predecessor statute that prohibited such conduct at the time of the act, which conduct was committed against such person who was less than eighteen years of age, such action may be commenced, against any party whose intentional or negligent acts or omissions are alleged to have resulted in the commission of said conduct, *on or before the plaintiff or infant plaintiff reaches **the age of fifty-five years**.*" CPLR § 208(b) (emphasis added).

[4] As DOE failed to make <u>any</u> argument concerning CPLR § 208(b) in the SJ Motion, as a matter of law, this Court has the discretion to preclude DOE from doing so in its reply to this opposition. *See, e.g., Playboy Enters., Inc. v. Dumas*, 960 F.Supp. 710, 720 n.7 (S.D.N.Y. 1997); *Litton Indus. v. Lehman Bros. Kuhn Loeb Inc.*, 767 F.Supp. 1220, 1235 (S.D.N.Y. 1991) (same), *rev'd on other grounds*, 967 F.2d 742 (2d Cir. 1992). However, if this Court finds that DOE is not precluded from making an argument concerning CPLR § 208(b) in its reply and declines to disregard any such argument, Plaintiff is entitled to submit a sur-reply on the issue and respectfully requests the opportunity to do so. *See Litton, supra*, 767 F.Supp. at 1235.

the NYS HRL or NYC HRL. Moreover, DOE seems to purposefully and deceptively ignore the end of the portion of CPLR § 214-g, which describes the kinds of criminal offenses which it revives: "…or a *predecessor statute that prohibited such conduct at the time of the act*, which conduct was committed against a child less than eighteen years of age…" CPLR § 214-g (emphasis added). Thus, as set forth below, the acts of sexual misconduct to which DOE employees subjected Plaintiff are varied, but still all count as the predicates for timely claims under CPLR § 208(b) or revived claims under CPLR § 214-g.

Finally, DOE's third argument is easily dispatched, as it relies on an incorrect reading of the NYS HRL and NYC HRL. DOE argues that Plaintiff has not set forth sufficient proof of discrimination, as if this were an employment discrimination suit. By contrast, the plain language of both HRL provisions is such that discrimination is defined by the misconduct itself – not statistical evidence of differential treatment. As the NYS HRL states, in pertinent part: "It shall be an unlawful discriminatory practice **for an educational institution to deny the use of its facilities** to any person…**or to permit the harassment of any student**…by reason of….**sexual orientation, gender identity or expression…or sex**…" NYS HRL § 296(4) (emphasis added). That phrase signifies that any instance where an educational institution denies someone the use of its facilities or allows a student such as Plaintiff to be sexually harassed by teachers on the basis of, *inter alia*, sexual orientation, gender or sex constitutes an actionable, "unlawful discriminatory practice" for purposes of the NYS HRL.

Similarly, the NYC HRL states, in pertinent part: "It shall be an unlawful discriminatory practice for any employee of any place or provider of public accommodation, because of the actual or perceived…gender…(or) sexual orientation…of  any person, directly or indirectly, to refuse, withhold from or deny to such person  any of (its) accommodations, advantages, facilities or

privileges." NYC HRL § 8-107(4). As with the NYS HRL, that phrase signifies that <u>any</u> instance where someone employed by a place of public accommodation denies another person from accessing its facilities on the basis of, *inter alia*, gender or sexual orientation constitutes an actionable, "unlawful discriminatory practice" for purposes of the NYC HRL. Thus, DOE's interpretation of these provisions is flawed, inaccurate and self-serving, and its related argument fails as a result.

In light of the foregoing, the SJ Motion is fatally deficient and should be denied in its entirety.

## **FACTUAL BACKGROUND**

For factual background, Plaintiff relies on the accompanying 56.1 Counterstatement of Facts and the allegations set forth in Plaintiff's Third Amended Complaint (hereinafter, "TAC") and incorporates them by reference as necessary herein. *See* TAC, ECF Document No. 137, a true copy of which is annexed to the Declaration of Karl J. Ashanti ("Ashanti Decl."), dated December 1, 2023, as Exhibit A.

## **LEGAL STANDARD**

The courts of this circuit have consistently held that summary judgment is only appropriate where the moving party demonstrates that no material facts are in dispute and the moving party is entitled to judgment as a matter of law. FRCP 56(a); *see, e.g., Jacobson v. Metropolitan Property & Casualty Insurance Co.*, 672 F.3d 171, 174 (2d. Cir. 2012); *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007). For purposes of evaluation the instant motion for summary judgment,

A court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003) (internal quotation marks omitted); *see also Eastman Kodak Co. v. Henry Bath LLC*,

936 F.3d 86, 93 (2d Cir. 2019); *Nick's Garage, Inc. v. Progressive Casualty Insurance Co.*, 875 F.3d 107, 113 (2d Cir. 2017); *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012). Moreover, the movant bears the burden of "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## ARGUMENT

## POINT I

## TRIABLE ISSUES OF FACT PRECLUDE SUMMARY JUDGMENT

While DOE fails to acknowledge that the Court has discretion in resolving the SJ Motion involved herein, the fact remains that it does, as DOE has failed to proffer any legal authority or argument whereby it is entitled to judgment as a matter of law. *See* SJ motion, generally. Instead, DOE tries to pass off its own interpretation of the CVA and Plaintiff's HRL claims as if it were well-established, mandatory precedent. For instance, DOE incorrectly argues that "there are no factual disputes which might affect the outcome of this case under those laws." DOE's Motion, p. 7. Yet, to the contrary, even a cursory review of the facts involved demonstrates the fallacy of that argument.

Under Executive Law § 296 (NYS HRL), DOE can be held liable to Plaintiff if, at trial, the fact-finder, *i.e.* the jury, were to determine that DOE denied Plaintiff the use of its school facilities due to Plaintiff's gender identity, gender expression and/or sex. Under the New York City Administrative Code § 8-107 (NYC HRL), DOE can be held liable to Plaintiff if, at trial, the jury were to determine that DOE refused, denied or withheld from Plaintiff any of the accommodations, advantages, facilities or privileges of its schools, due to Plaintiff's actual or perceived gender and/or sexual orientation.

In the TAC, Plaintiff specifically alleged these material facts concerning DOE's violation of both the NYS HRL and the NYC HRL. *See* TAC (ECF Document No. 137), ¶¶ 108-111, 113, 116-118, 120. In its answer to the TAC, DOE specifically denied these allegations. *See* DOE's Answer (hereinafter, "DOE's Answer") to Plaintiff's Third Amended Complaint (ECF Document No. 139), ¶¶ 108-111, 113, 116-118, 120.

The fact-finder at trial, in this case, the jury, must decide: 1) whether DOE failed to institute reasonable measures regarding the deterrence, reporting and investigation of the repeated instances of sexual misconduct DOE employees engaged in with Plaintiff; 2) whether any such failure contributed to the commencement and continuation of such sexual misconduct; 3) whether, concerning the NYS HRL, the alleged sexual misconduct of DOE employees effectively or constructively denied Plaintiff the use of its school facilities and/or permitted Plaintiff to be sexually assaulted and/or harassed due to her female gender identity, female gender expression and/or female sex – which, cumulatively, led to her dropping out of Francis Lewis High School (hereinafter, "FLHS"); and 4) concerning the NYC HRL, whether the alleged sexual misconduct of DOE employees effectively or constructively deprived Plaintiff of the use of DOE's school facilities and/or privileges, due to Plaintiff being an actual or perceived member of the female gender. *See* Executive Law § 296 (NYS HRL); New York City Administrative Code § 8-107 (NYC HRL).

As the evidence adduced during discovery has established, DOE: 1) did not have any policies or measures in place to deter sexual assault in its schools while Plaintiff was under the age of eighteen (18) and a DOE student (*see* Ashanti Decl., Excerpts from the Deposition Transcript of Theresa Europe ("Europe Transcript"), dated September 13, 2023, Exhibit B, at page 52, lines 13 through 22); 2) did not have any policies in place, between 1998 and 2002, to address the risks

of sexual assault specifically faced by female students like Plaintiff (*see* Ashanti Decl., Europe Transcript, Exhibit B, at page 64, line 24 through page 65, line 7); and 3) allowed school principals to decide <u>on their own</u> whether and how to disseminate materials concerning the reporting of sexual assault incidents during that same time period (*see* Ashanti Decl., Europe Transcript, Exhibit B, at page 78, lines 6 through 16).

DOE disputes and specifically denies that these facts contributed to the acts of sexual misconduct DOE employees perpetrated against Plaintiff. *See* DOE's Answer, ¶¶ 108-111, 113, 116-118, 120. However, because Plaintiff alleges that they did (*see* TAC, ¶¶ 108-111, 113, 116-118, 120), and DOE bears the burden of "demonstrat[ing] the absence of a genuine issue of material fact," and this Court is legally bound to decide "all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," summary judgment is precluded herein, and the jury must resolve this disputed issue at trial. *Ashcroft, supra,* 336 F.3d at 137; *see also Eastman Kodak Co., supra*, 936 F.3d at 93; *Nick's Garage, supra*, 875 F.3d at 113; *Johnson v. Killian*, 680 F.3d at 236; *see also Celotex Corp., supra*, 477 U.S. at 323.

In short, the fact that: 1) NYC DOE failed to have any safeguards in place for the protection of female students against the predatory sexual behaviors of its employees; and 2) some of those employees, including Douglas Meiners, "John Doe #1" (the custodial engineer who kidnapped Plaintiff under false pretenses) and, of course, defendant Waltzer, exploited that failure to obtain sexual gratification at Plaintiff's expense raises the issue of causation, i.e. the nexus between DOE's institutional deficiencies and the sexual misconduct that deprived Plaintiff of her rights under the NYS HRL and NYC HRL. *See* TAC, generally. A jury must resolve that issue. *See Ashcroft, supra,* 336 F.3d at 137.

In light of the foregoing, as there are triable issues of fact which preclude summary judgment, this Court should deny the SJ Motion in its entirety and allow the fact-finding jury to resolve these issues at trial.

## POINT II

## PLAINTIFF'S HRL CLAIMS AGAINST NYC DOE ARE TIMELY

In the SJ Motion, DOE erroneously argues that Plaintiff's HRL claims are untimely because, according to DOE, the statute of limitations has expired on Plaintiff's HRL claims and those claims are not revived by the CVA. *See* SJ motion, pp. 7-11. Incontrovertible facts fully negate this argument.

### A.  Plaintiff's HRL Claims Against DOE Have Been Tolled Under CPLR § 208(b)

To begin with, DOE fails to account for the New York State legislature's amendment of CPLR § 208, through the creation of CPLR § 208(b), a provision which explicitly grants victims of sexual abuse that occurred before they reached the age of eighteen (18) the right to initiate a civil action against their sexual abusers and enabling institutions, <u>until such victims reach the age of fifty-five (55)</u>. CPLR § 208(b) reads, in pertinent part:

> "Notwithstanding any provision of law which imposes a period of limitation to the contrary and the provisions of any other law pertaining to the filing of a notice of claim or a notice of intention to file a claim as a condition precedent to commencement of an action or special proceeding, with respect to all civil claims or causes of action brought by any person for physical, psychological or other injury or condition suffered by such person as a result of conduct which would constitute a sexual offense as defined in article one hundred thirty of the penal law committed against such person who was less than eighteen years of age, incest as defined in section 255.27, 255.26 or 255.25 of the penal law committed against such person who was less than eighteen years of age, or the use of such person in a sexual performance as defined in section 263.05 of the penal law, or a predecessor statute that prohibited such conduct at the time of the act, which conduct was committed against such person who was less than eighteen years of age, such action may be commenced, against any party whose intentional or negligent acts or omissions are alleged to have resulted in the commission of said conduct, *on or before the plaintiff or infant plaintiff reaches **the age of fifty-five years***." CPLR § 208(b) (emphasis added).

Thus, the HRL claims of the Plaintiff, who, without dispute, is thirty-eight (38) years of age, are still *tolled and remain timely*. *See* Plaintiff's Birth Certificate, Ashanti Decl., Exhibit C; CVA, New York Senate Bill No. 2440, N.Y. 242nd Leg. Sess. (2019) ("This section, as amended, now permits all civil claims or causes of action brought for physical, psychological or other injury or condition suffered as a result of conduct which would constitute a sexual offense against a child against any party whose intentional or negligent acts or omissions are alleged to have resulted in the commission of that conduct up **until the victim reaches 55 years of age**.") (emphasis added).

As CPLR § 208(b) definitively establishes the timeliness of Plaintiff's claims against DOE, it is not at all surprising that DOE completely disregarded the existence of CPLR § 208(b) in the SJ Motion, failing to acknowledge that: 1) most child sex abuse victims come to terms with their abuse at 52 years old on average[5]; and 2) the New York State legislature purposely addressed this fact in promulgating CPLR § 208(b) as part of the CVA. To close the gap concerning victims who are fifty-five years of age or older, the New York State legislature made CPLR § 214-g available as a means of recovery through the revival of claims under certain conditions. *See* Point II(B), *infra*.

Moreover, because DOE failed to make any argument concerning CPLR § 208(b) in the SJ Motion, it should be precluded from doing so in its reply to this opposition. In other words, as a matter of law, it is within the discretion of this Court to disregard any argument DOE may make in its reply brief concerning CPLR § 208(b). *See, e.g., Playboy Enters., Inc. v. Dumas*, 960 F.Supp. 710, 720 n.7 (S.D.N.Y. 1997) ("Arguments made for the first time in a reply brief need not be

---

[5] https://archive.nysba.org/News/NYS_Law_Digest__CPLR_Amendments/#:~:text=CPLR%2020 8%2C%20214%2Dg%20and%203403%3A%20The%20Child%20Victims%20Act&text=11)%2C%20is %20designed%20to%20protect,the%20Penal%20Law%2C%20among%20others.

considered by a court."); *Litton Indus. v. Lehman Bros. Kuhn Loeb Inc.*, 767 F.Supp. 1220, 1235 (S.D.N.Y. 1991) (same), *rev'd on other grounds*, 967 F.2d 742 (2d Cir. 1992).

In *Playboy*, the court described the defendant's omission of the subject argument from defendant's initial motion papers but inclusion of it in a reply as "manipulative" and, as a result, refused to consider the argument in its decision. *Playboy, supra*, 960 F.Supp. at 720 n. 7. Here, there are similar circumstances whereby DOE could have addressed CPLR § 208(b) in its moving papers but chose not to do so, hoping that Plaintiff would fail to raise that provision as an issue within its opposition and further hoping that this Court would never become aware of it. *See* SJ Motion, generally. Here, as in *Playboy*, such manipulative tactics "should not be rewarded," and, in the exercise of its discretion, this Court should follow the court's reasoning in *Playboy* by disregarding any argument DOE makes in relation to CPLR § 208(b). *Playboy, supra*, 960 F.Supp. at 720 n. 7.

However, if this Court finds that DOE is not precluded from making an argument concerning CPLR § 208(b) in its reply and declines to disregard any such argument, Plaintiff is entitled to submit a sur-reply on the issue and respectfully requests a deadline one (1) week following DOE's service of a reply to do so. *See, e.g., Litton Indus. v. Lehman Bros. Kuhn Loeb Inc.*, 767 F.Supp. 1220, 1235 (S.D.N.Y. 1991) ("Where new evidence is presented in a party's reply brief or affidavit in further support of its summary judgment motion, the district court should permit the nonmoving party to respond to the new matters prior to disposition of the motion"); *see also Black v. TIC Inv. Corp.*, 900 F.2d 112, 114 (7th Cir. 1990) (same); *Clinkscales v. Chevron U.S.A., Inc.*, 831 F.2d 1565, 1568 n. 9 (11th Cir. 1987) (same); *Cia. Petrolera Caribe, Inc. v. Arco Caribbean, Inc.*, 754 F.2d 404, 409-10 (1st Cir. 1985) (same).

**B. Plaintiff's HRL Claims Against DOE Have Been Revived Under CPLR § 214-g**

15

While Plaintiff remains steadfast in her position that her NYS and NYC HRL claims are timely under CPLR § 208(b), regardless of whether they are *also* revived under CPLR § 214-g (*see* Point II(a), *supra*), as the language of CPLR § 214-g almost identically mirrors that of CPLR § 208(b), any reasonable analysis of the two provisions will lead to the same conclusion: they both apply to the facts herein and pave the way for Plaintiff to pursue her claims against DOE. In engaging in such an analysis, it becomes clear that both Plaintiff's NYS HRL claims and NYC HRL claims against DOE have been revived under CPLR § 214-g.

Specifically, CPLR § 214-g revives Plaintiff's NYS HRL claims and NYC HRL claims because they are grounded in DOE's policies concerning sexual assault, its lack thereof or the inadequacy thereof, and the extent to which they enabled the sexual misconduct Plaintiff has alleged in TAC. CPLR § 214-g reads, in pertinent part:

> "CPLR 214-g. Certain child sexual abuse cases. Notwithstanding any provision of law which imposes a period of limitation to the contrary and the provisions of any other law pertaining to the filing of a notice of claim or a notice of intention to file a claim as a condition precedent to commencement of an action or special proceeding, ***every civil claim or cause of action brought against any party alleging intentional or negligent acts or omissions*** by a person ***for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense*** as defined in article one hundred thirty of the penal law committed against a child less than eighteen years of age, incest as defined in section 255.27, 255.26 or 255.25 of the penal law committed against a child less than eighteen years of age, or the use of a child in a sexual performance as defined in section 263.05 of the penal law, or a predecessor statute that prohibited such conduct at the time of the act, which conduct was committed against a child less than eighteen years of age, which is barred as of the effective date of this section because the applicable period of limitation has expired, and/or the plaintiff previously failed to file a notice of claim or a notice of intention to file a claim, ***is hereby revived***." CPLR § 214-g.

Accordingly, part of this Court's determination of the applicability of CPLR § 214-g, for purposes of revival, is deciding whether Plaintiff has "suffered" a "physical, psychological, or other injury or condition," "as a result of conduct which would constitute a sexual offense." *Id.* As the operative causes of action against DOE are the NYS HRL claim and the NYC HRL claim, in

order to resolve the issue of revival, this Court must engage in the predicate inquiry of whether the HRL claims in the TAC allege "intentional or negligent acts or omissions" by DOE relating to a "physical, psychological, or other injury or condition" Plaintiff has suffered as the result of conduct that constitutes a sexual offense. *Id.* The indisputable facts of this case establish that they do. *See* TAC, ¶¶ 108-111, 113, 116-118, 120.

DOE invalidly argues that none of defendant Waltzer's acts of sexual misconduct towards Plaintiff counts in the context of evaluating DOE's culpability for the child sex abuse Plaintiff endured. *See* SJ Motion, p. 8. This argument is refuted by the fact that, in accordance with the CVA and both Plaintiff's NYS HRL claim and NYC HRL claim, Plaintiff seeks to hold DOE accountable for its *own* acts and omissions, namely, for failing to have any measures in place to protect female students like Plaintiff from the predatory sexual misconduct of DOE employees, essentially creating a free-for-all atmosphere where principals were not obligated to follow any uniform set of rules relating to sexual assault awareness, prevention or reporting. *See* Ashanti Decl., Europe Transcript, Exhibit B, at page 64, line 24 through page 65, line 7 and page 78, lines 6 through 16.

It was those failures that led to Waltzer's acts of sexual misconduct, because, given the laxness and inattention DOE showed towards the issue of sexual assault, he knew he could abuse Plaintiff repeatedly without any repercussions, and, generally, that is exactly what occurred, as the repeated instances of sexual abuse against Plaintiff while she attended IS 237 and Francis Lewis High School spanned a period of *more than two (2) years, without any DOE employee ever being disciplined*. *See, e.g.,* TAC, ¶¶ 1-15, 60. In fact, the abuse by Waltzer continued *even after Plaintiff reported it to DOE employee Douglas Meiners*, who chose to use his knowledge of that abuse to sexually gratify himself with Plaintiff rather than report it. *See* Ashanti Decl., Excerpts from the

Deposition Transcript of Plaintiff Jane Doe ("Plaintiff's Transcript"), dated July 27, 2023 and July 28, 2023, Exhibit D, at page 130, line 19 through page 132, line 5, page 385, lines 4 through 15.

Specifically, as Plaintiff testified at her deposition:

> Q But the year you returned to
> Francis Lewis High School for your second year
> at Francis Lewis High School, **you started
> trying to disclose your sexual relationship
> with Mark Waltzer to another teacher, right**?
> A **Yes.**
> Q **That was Doug Meiners, right**?
> ----------------------------------------------------------------
> A **Yes**.
> ----------------------------------------------------------------
> Q **Did you ever tell Douglas Meiners
> that you had sexual relations with Mr. Waltzer?**
> A **Yes, I did.**
> Q What, if anything, did Mr. Meiners
> say or do when you told him about your
> relationship with Mr. Waltzer?
> A He was surprised.
> Q Anything else?
> A **He changed**.
> Q How so?
> A **After that that's when the
> incident of him trying to kiss me happened**.

*See* Ashanti Decl., Plaintiff's Transcript, Exhibit D, at page 130, line 19 through page 131, line 2, page 385, lines 4 through 15 (emphasis added).

Meiners, of course, denies that Plaintiff ever informed him of Waltzer's sexual abuse of Plaintiff, creating another triable issue of fact for the jury to decide. *See Terry v. Ashcroft, supra*, 336 F.3d at 137; Ashanti Decl., Excerpts from the Deposition Transcript of Douglas Meiners ("Meiners Transcript"), dated August 24, 2023, Exhibit E, at page 108, line 22 through page 109, line 20.

DOE argues further that the HRL claims cannot be revived under CPLR § 214-g because the sexual misconduct which DOE employees directed towards Plaintiff do not fit within the

auspices of the sexual offenses delineated within that provision. *See* SJ Motion, pp. 9-11. Nothing could be further from the truth.

Contrary to DOE's assertion that conduct which is violative of the NYS HRL and NYC HRL cannot also serve as the predicate conduct for a revival of NYS HRL and NYC HRL claims, the New York State legislature did not delineate, limit or otherwise restrict the causes of action by which CVA victims can recover damages through the revival of claims under CPLR § 214-g, as long as any such cause of action has <u>at least one</u> requisite sexual offense as its underpinning. *See* CPLR § 214-g. That is exactly the case herein, DOE's futile argument to the contrary notwithstanding. To wit, the incontrovertible evidence in the record of this case directly contradicts DOE's erroneous claim that neither the NYS HRL nor the NYC HRL applies to the sexual misconduct Plaintiff alleges DOE employees perpetrated against her. *See* Criminal Offense Chart, Ashanti Decl., Exhibit F. It also demonstrates the nexus between those sexual offenses and relevant criminal statutes. *Id.* As noted in the Criminal Offense Chart, the various offenses by numerous DOE employees implicate several provisions of the New York Penal Law that fall within the scope of the CVA.

Notably, Waltzer not only forcibly raped Plaintiff without her consent but he also forcibly restrained her on the bed where the rape occurred and, in the days, months and year or more thereafter, engaged in multiple acts of statutory rape during the course of their sexual relationship. *Id.* Furthermore, Waltzer coerced Plaintiff into taking intimate, sexually suggestive photographs during his sexual exploits with her, some on a bed in his bedroom, and maintained possession of those photographs. *Id.* Thus, Waltzer committed the crimes of, *inter alia*: Rape in the First Degree (Penal Law § 130.35); Sexual Abuse in the First Degree (Penal Law § 130.65); Sexual Abuse in the Third Degree (Penal Law § 130.55); Unlawful Imprisonment (Penal Law § 130.05-135.10);

Coercion (Penal Law § 130.60-135.65); Use of a Child in a Sexual Performance (Penal Law § 263.05); and Possessing a Sexual Performance by a Child (Penal Law § 263.16).

Plaintiff confided in Meiners that she was having a sexual relationship with Waltzer but Meiners failed to report it, *as required by law*. *See* N.Y. Soc. Serv. Law § 413; TAC, ¶¶ 8, 26; Ashanti Decl., Plaintiff's Transcript, Exhibit D, at page 130, line 19 through page 131, line 2, page 385, lines 4 through 15. Instead of reporting Waltzer's child sex abuse, Meiners used his knowledge of that abuse to seek to have sex with Plaintiff himself. *See* Criminal Offense Chart, Ashanti Decl., Exhibit F. Specifically, he held Plaintiff after gym class, pinned her against the wall of his office, preventing her escape, and then tried to kiss her without her consent. *Id.*

Thus, Meiners committed the crimes of, *inter alia*: Failure to Report Case of Suspected Child Abuse (N.Y. Soc. Serv. Law § 413) and Sexual Abuse in the Third Degree (Penal Law § 130.55). DOE may argue on reply that kissing does not qualify as sexual contact for purposes of this penal law provision, it is incorrect, as the courts have established kissing to be a form of sexual contact. *See, e.g., James v. Mukasey*, 522 F.3d 250, 258 (2d Cir. 2008) (Holding that simple kissing constitutes "sexual contact" under NY law); *see also People v. Rondon*, 579 N.Y.S.2d 319, 320–21 (N.Y.Crim.Ct.1992) ("[T]his court holds that a kiss on the mouth without the insertion of a tongue can be considered a touching of an intimate part, constituting the essential element of sexual abuse."); *People v. Morbelli*, 544 N.Y.S.2d 442, 445–46 (N.Y.Crim.Ct.1989) (contact with the leg); *People v. Belfrom*, 475 N.Y.S.2d 978, 980–81 (N.Y.Sup.Ct.1984) (contact with the navel).

Similarly, DOE has already argued that an attempted sexual offense that would otherwise qualify for the revival of claim pursuant to CPLR § 214-g, if it were a completed act, does not qualify if it is just an attempt. *See* SJ Motion, pp. 10 - 11. That argument lacks merit because there is no such limitation contained within the language of CPLR § 214-g nor has DOE set forth any

legal authority to support its interpretation thereof. Instead, DOE cited decades-old caselaw that do not address this specific issue, as opposed to any <u>CVA-related case</u> that is on point. *Id.*

Plaintiff was also the victim of the criminal acts of a custodial engineer (janitor named in the TAC as "John Doe #1") who saw her walking to IS 237 one morning and lured her into his car by offering her a ride to school. However, instead of taking Plaintiff to school, he took her to a motel for sex. *See* TAC, ¶¶ 28, 35 – 36; Ashanti Decl., Plaintiff's Transcript, Exhibit D, at 34:23 - 35:25, 37:19 - 45:2. While he did not succeed in having sex with Plaintiff, the fact that he lured her into his car under the false pretense of offering her a ride to school and, having deceived her, took her to a motel instead constitutes criminal behavior with underlying *sexual* intent. *Id.*

Thus, John Doe #1 was guilty of the crimes of: Kidnapping - by means of deception (Penal Law § 135.20-135.25); Custodial Interference (Penal Law §§ 135.45(2) and 135.50(2)); and Sexually Motivated Felony (Penal Law § 130.91), in that he committed the first two crimes for the purpose of sexually gratifying himself.

In sum, the NYS HRL and the NYC HRL do apply to the acts of sexual misconduct Plaintiff alleges DOE employees committed against her, DOE's arguments to the contrary notwithstanding. While DOE seeks to convince this Court that acts of sexual misconduct cannot both: a) be rooted in a criminal offense within Article 130 of the Penal Law (or any of the other criminal provisions referenced in CPLR § 214-g); and b) also serve as the basis for discriminatory conduct as defined by the NYS HRL or NYC HRL, that is simply incorrect. One does not preclude the other. In short, an act of sexual misconduct can both be a criminal offense and a predicate discriminatory act under either the NYS HRL or the NYC HRL. Thus, as set forth above, the acts of sexual misconduct to

which DOE employees subjected Plaintiff are varied, but still <u>all</u> count as the predicates for timely

HRL claims under CPLR § 208(b) or revived HRL claims under CPLR § 214-g.[6]

As for causation, *i.e.*, whether the predicate acts caused the deprivations necessary to prove

HRL violations, the live controversy surrounding that issue precludes summary judgment, as it is

<u>the jury</u>'s role to determine the facts that will resolve the issue of <u>causation</u> at trial, as it relates to

both the NYS and NYC HRL claims against DOE. *See, e.g., Demshick v. Community Hous. Mgt.*

*Corp.*, 34 A.D.3d 518, 521, 824 N.Y.S.2d 166, 169 (2d Dept. 2006) ("It is well-settled that where

conflicting evidence is presented that would support various inferences, the issue of proximate

cause is properly a question of fact for the jury to decide.") (*citing Alexander v. Eldred*, 63 N.Y.2d

460, 468 (1984)).

Accordingly, DOE's arguments fail, and the SJ Motion should be denied in its entirety.

<u>**POINT III**</u>

**RELEVANT CASELAW FAVORS THE RETROACTIVE APPLICATION OF THE**
<u>**AMENDMENT OF THE NYS HRL TO INCLUDE SCHOOLS WITHIN ITS PURVIEW**</u>

In the SJ Motion, DOE mistakenly argues that neither the NYS HRL nor the NYC HRL

applies herein. *See* SJ Motion, pp. 12-16. In essence, DOE claims that: 1) the NYS HRL is not

---

[6] To the extent that the Court finds these criminal acts of sexual abuse serve as predicates for timely HRL claims under CPLR § 208(b) or revived HRL claims under CPLR § 214-g, it bears noting that several other DOE employees are guilty of misconduct towards Plaintiff in a manner that contributed to DOE's deprivation of Plaintiff's access to FLHS (as the deluge of sexual advances by DOE employees led her to drop out) and to DOE's enabling of sexual assault and sexual harassment of her as a student under both the NYS HRL and the NYC HRL: 1) John Doe #2 (Aaron), another DOE teacher at FLHS, who stalked Plaintiff at school, on her way home and at her home on multiple occasions (*see* TAC, ¶¶ 29, 59; Ashanti Decl., Plaintiff's Transcript, Exhibit D, at 280:6-21; 281:2-21); and 2) Michael Eisenberg, another DOE teacher at FLHS, who made unwanted sexual advances towards Plaintiff after he learned of Meiners' sexual misconduct towards Plaintiff yet, like Meiners, failed to report that information (*see* TAC, ¶¶ 27, 58); and 3) Roger Sarmuksnis, another DOE teacher at FLHS, about whom Meiners testified and implicated in an incident where he and Meiners took Plaintiff to a park off of school grounds after taking her out of class without permission. *See* Ashanti Decl., Plaintiff's Transcript, Exhibit D, at 373:9 -374:16; Meiners Transcript, Exhibit E, at page 108, line 22 through page 109, line 20.

available to Plaintiff as a viable claim against DOE because, according to DOE, the NYS HRL did not cover teachers or educational institutions until its provisions were amended in July 1, 2003 and should not be applied retroactively to conduct that occurred prior to that date; and 2) the NYC HRL is not available to Plaintiff as a viable claim against DOE because, according to DOE, Plaintiff's only possible qualification as a member of a protected class within the meaning of the NYC HRL is as a victim of sex offenses or stalking, and <u>not</u> any other category (such as a female or heterosexual), and, according to DOE, Plaintiff fails to qualify as a victim or sex offenses or stalking.

As set forth below, DOE erroneously relies on cases that are either inapposite or not required for this Court to follow, as non-mandatory legal authorities, or both. Accordingly, the legal arguments on which DOE relies are invalid, and its motion has no merit.

### A. Relevant Caselaw Favors The Retroactive Application Of The Amendment Of The NYS HRL To Include Schools Within Its Purview

In support of its argument that the NYS HRL should not be retroactively applied to cover DOE's responsibility for the sexual misconduct to which DOE employees subjected Plaintiff, DOE mainly relies on *Tesoriero v. Syosset Central School District*, 382 F.Supp. 2d 387 (E.D.N.Y. 2005). *See* SJ Motion, pp. 13-14. In fact, DOE's entire argument that, according to DOE, the NYS HRL is unavailable to Plaintiff as a means of recovery is dependent on *Tesoriero*'s applicability to the instant case, i.e. on this Court following *Tesoriero* as precedent. However, because *Tesoriero* is distinguishable on several grounds and is also not mandatory legal authority herein, this Court need not follow it as precedent.

Indeed, this Court must not follow *Tesoriero*, and, instead, must follow the *United States Supreme Court* precedent set by *Bradley v. Richmond Sch. Bd.*, which establishes the correct legal standard for a court's evaluation of retroactivity. 416 U.S. 696, 711 (1974) ("We anchor our

holding in this case on the principle that a court is to apply the law *in effect at the time it renders its decision*, *unless doing so would result in manifest injustice* or there is statutory direction or legislative history *to the contrary*.") (emphasis added). Thus, *Tesoriero* notwithstanding, this Court is bound to retroactively apply the 2003 amendment of the NYS HRL. *Id.* That is because there is no "manifest injustice" in the New York State legislature holding DOE accountable for being an enabler of criminal sexual misconduct against Plaintiff - by means of the CVA, to the extent that enabling literally or constructively denied Plaintiff the use of DOE school facilities due to Plaintiff's gender identity, gender expression and/or sex. *Id.*; *see also* NYS HRL § 296(4). Accordingly. Plaintiff's NYS HRL claim against DOE not only applies herein but survives DOE's Motion.

As an initial matter, the passage of the Child Victims Act in 2019 represents a sea change in how the State of New York views and treats child victims of sexual assault, particularly concerning the protections our society affords them. It vaulted the State of New York from being one of the worst states in the nation regarding the restrictiveness of the timeframe within which child sex abuse victims can seek to hold their abusers, and abusers' enablers, liable to being one of the best in that regard.[7] The unmistakably clear and deliberate intent of the legislature was to allow victims of child sex abuse, such as Plaintiff, to recover damages for the physical and emotional injuries they have sustained due to the abuse and, in so doing, to hold <u>all</u> contributors to child sex abuse accountable, whether their underlying conduct was intentional or negligent. *See* Point V, *infra;* CVA, CPLR § 208(b); CVA, CPLR § 214-g.

---

[7] https://www.cnn.com/2019/01/28/us/new-york-child-victims-act/index.html; https://archive.nysba.org/News/NYS_Law_Digest__CPLR_Amendments/#:~:text=CPLR%20208%2C%2021%2Dg%20and%203403%3A%20The%20Child%20Victims%20Act&text=11)%2C%20is%20designed%20to%20protect,the%20Penal%20Law%2C%20among%20others.

*Tesoriero*, which was rendered by EDNY senior judge Denis Reagan Hurley in 2005, pre-dates the CVA by more than a decade. 382 F.Supp. 2d 387, 2005 U.S. Dist. LEXIS 22347 (E.D.N.Y. 2005). Thus, *Tesoriero* is distinguishable based on that fact alone, as it was decided at a time when the CVA was not even imagined, much less contemplated and enacted into law.

In addition to the fact that *Tesoriero* was not decided in the post-CVA world, *i.e.* after the CVA's passage on February 14, 2019, it is further distinguishable based on the fact that it does not involve child sex abuse.[8] Hence, unlike the instant case, the lens through which Judge Hurley evaluated the facts in *Tesoriero* and rendered the opinion did not include any consideration of a child being exposed to criminal sexual misconduct. *Id.* As such, the opinion has no bearing here. These same, important distinguishing factors also apply to negate the relevance of the other cases DOE cites in support of its faulty argument. *See Kwarren v. American Airlines*, 303 A.D.2d 722, 757 N.Y.S.2d 105 (2d Dept. 2003); *Martinez-Tolentino v. Buffalo State College*, 277 A.D.2d 899, 715 N.Y.S.2d 554 (4th Dept. 2000).

By contrast, applicable, mandatory precedent can be found in *Bradley v. Richmond Sch. Bd.*, 416 U.S. 696 (1974). In *Bradley*, the Supreme Court considered the merits of an application for attorneys' fees as part of a class action lawsuit that successfully desegregated the public schools in Richmond, Virginia. The Fourth Circuit Court of Appeals had reversed a lower court's ruling awarding fees to the plaintiff-parents and plaintiff-guardians, and the Supreme Court granted certiorari. The main issue was whether the plaintiff-parents and plaintiff-guardians could recover

---

[8] If this Court were to find that *Tesoriero*'s rationale applies herein, it bears noting that such rationale includes a finding that there is a triable issue of fact as to whether the educational institution at issue had actual notice of the abuser's potential for sexual misconduct. *See Tesoriero*, *supra*, 382 F.Supp. 2d at 398. Based, *inter alia*, on the fact that former DOE employee, Douglas Meiners, categorically denied that Plaintiff reported to him that she had a romantic relationship with defendant Waltzer, the same issue of actual notice by DOE is present here and precludes summary judgment. *Id.*, *see also* Ashanti Decl., Meiners Transcript, Exhibit E, at page 138, line 16 - 25, page 109, line 20.

attorneys' fees where the federal statute entitling prevailing parties to recover such fees became effective while the Fourth Circuit appeal was pending. The defendant school board argued against the retroactive application of the federal statute. *Id.*

The Supreme Court held that, where a relevant statute is silent or ambiguous concerning retroactivity, "a court is to apply the law in effect at the time it renders its decision" unless some "manifest injustice" would result from retroactive application of the law. *Bradley, supra,* 416 U.S. at 711. Notably, the Supreme Court explicitly rejected the argument that a court should not retroactively apply a statute absent an unambiguous statement in such statute requiring retroactivity. *Id.,* at 715 ("Accordingly, we must reject the contention that a change in the law is to be given effect in a pending case only where that is the clear and stated intention of the legislature.")

In accordance with *Bradley,* here, the 2003 amendment of the NYS HRL should be applied retroactively as no right of DOE is being abrogated and cannot claim the absence of notice of the illegality of child sex abuse or surprise at being held accountable for depriving a student of the use of its facilities due to the underlying sexual misconduct of its employees. *Id.,* at 711. As such, there is no manifest injustice in the retroactive application of the NYS HRL to DOE, and Plaintiff's NYS HRL claim against DOE not only applies herein but survives Defendant's Motion. *Id.; see also United States v. Colon,* 961 F.2d 41, 45 (2d Cir. 1992); *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1145 (2d. Cir. 1983).

### B. For Purposes Of Receiving Protection Under The NYC HRL, Plaintiff Easily Qualifies As A Member Of A Protected Class

In the SJ Motion, DOE argues that Plaintiff's NYC HRL claim cannot be maintained because, according to DOE, under NYC HRL § 8-102, the NYC HRL defines "Victims of sex offenses or stalking" as "victim[s] of acts which would constitute violations of article 130 of the

26

penal law." Therefore, DOE's faulty logic states, Plaintiff does not qualify as a member of a protected class under the NYC HRL. SJ Motion, p. 15. In a futile effort to support this argument, DOE erroneously relies on *DiMauro v. Equinox Holdings, Inc.*, 2021 N.Y. Misc. LEXIS 703, at *3 (Sup. Crt. N.Y. County, February 22, 2021).

As an initial matter, as set forth above, a lot of the sexual misconduct to which DOE's employees subjected Plaintiff *do* constitute violations of Article 130. *See* Point II(b), *supra*. That fact alone wholly negates DOE's argument. Yet, DOE's argument is further invalidated by the fact that *DiMauro* is easily distinguishable from the instant case, as it is inapposite.

Unlike the instant matter which involves *public schools* Plaintiff attended, the plaintiff in *DiMauro*, alleged discrimination in the context of a *private gym* called "Blink." 2021 N.Y. Misc. LEXIS 703, at *1 - *3. Moreover, that same plaintiff claimed protected class status under the NYC HRL as a victim of "sexual harassment or assault," which led the presiding trial court to conclude that the NYC HRL was not applicable to that action. *Id.* ("[P]laintiff cannot state a claim for discrimination based on his purported status as a victim of sexual harassment or assault because, in the context of public accommodations such as gyms, sexual harassment or assault victims are not designated as a protected class under either the City Human Rights Law or the State Human Rights Law."). By contrast, with respect to her NYC HRL claim against DOE in this case, Plaintiff claims protected class status *as a heterosexual female*, not as a sexual harassment or assault victim. *See* TAC, ¶¶ 34, 115-121. Because both gender and sexual orientation are explicitly delineated as protected classes within the NYC HRL, DOE's argument here is misplaced and Plaintiff easily qualifies a member of a protected class within the meaning of the NYC HRL. *See* NYC Admin. Code § 8-107(4).

In any event, this Court need not follow *DiMauro*, even though, based on the differences between Plaintiff and the <u>male</u> plaintiff in *DiMauro*, its logic favors Plaintiff's position, as it is not a mandatory legal authority, having emanated from a New York State *trial-level court*, not even an appellate court.

Thus, DOE's arguments concerning the applicability of the NYS HRL and NYC HRL fail, and the SJ Motion should be denied in its entirety.

**POINT IV**

**DOE'S ARGUMENT CONCERNING PROOF OF DISCRIMINATION IS INVALID**

In Defendant's Motion, DOE argues that Plaintiff has not set forth sufficient evidence of discrimination. *See* SJ Motion, p. 15. Specifically, DOE claims that "plaintiff has neither alleged any facts in her TAC nor testified to any that establish that she was treated any differently than any other students based upon her gender." *Id.* This argument is invalid, as DOE demonstrates an incorrect understanding of the NYS and NYC HRL provisions, which define "an unlawful discriminatory practice" (not "discrimination") by the misconduct involved – <u>not</u> by alleged actions or statistical evidence which may support a finding of differential treatment. *See* Executive Law § 296 (NYS HRL); New York City Administrative Code § 8-107 (NYC HRL).

As the NYS HRL states, in pertinent part: "It shall be an unlawful discriminatory practice for an educational institution to deny the use of its facilities to any person…or to permit the harassment of any student…by reason of….sexual orientation, gender identity or expression…or sex…" NYS HRL § 296(4). That captures any instance where an educational institution denies someone the use of its facilities on the basis of, *inter alia*, gender or sex or to enable its employees to harass a student, as DOE enabled its teachers and a custodial engineer to sexually harass (and sexually assault) Plaintiff. *Id.; see also* TAC, ¶¶ 3-15. Such a denial of educational access or

28

enabling of harassment are *per se* actionable, "unlawful discriminatory practice[s]" for purposes of the NYS HRL. *Id.*

Similarly, the NYC HRL states, in pertinent part: "It shall be an unlawful discriminatory practice for any employee of any place or provider of public accommodation, because of the actual or perceived…gender…(or) sexual orientation…of  any person, directly or indirectly, to refuse, withhold from or deny to such person  any of (its) accommodations, advantages, facilities or privileges." NYC HRL § 8-107(4). As with the NYS HRL, that phrase captures <u>any</u> instance where someone employed by a place of public accommodation denies another person from accessing its facilities on the basis of, *inter alia*, gender or sexual orientation.  In such a case, the denial of access constitutes an "unlawful discriminatory practice" for purposes of the NYC HRL.

Accordingly, DOE's strained interpretation of the NYS HRL and NYC HRL should be disregarded, as it is misplaced, its related argument fails, and the SJ Motion should be denied in its entirety.

## **POINT V**

### **THE INTENT OF THE NEW YORK STATE LEGISLATURE FAVORS DENIAL OF THE SJ MOTION**

Another fatal flaw of Defendant's Motion is the fact that it ignores the intent of the New York legislature. *See* SJ Motion, generally. In enacting the CVA, the goal of the legislature was to enable victims of child sex abuse, such as Plaintiff, to recover damages for the physical and emotional injuries they have sustained due to child sex abuse and to hold both abusers and their abusers' enablers accountable. As such, the CVA's legislative intent supports the denial of DOE's motion, as Plaintiff alleges DOE was an enabler of the abuse to which DOE's employees subjected her. *See, e.g., LG 67 Doe v. Resurrection Lutheran Church*, 164 N.Y.S.3d 803 (Sup. Ct., Erie Cty., March 28, 2022).

In *LG*, a sixty-nine (69) year old man sued a church and others over sexual abuse he suffered at the hands of two individuals associated with his Boy Scout troop. The abuse allegedly occurred from 1960 until 1964. The Defendants moved to dismiss the action, claiming that the suit was time-barred by the applicable statute of limitations. *Id.*, at 804. The court found in favor of the plaintiff, denying the defendants' motions on the basis that, because the CVA had revived plaintiff's claims, his claims were timely when he filed them on August 12, 2021 – two (2) days prior to the deadline of the revival period established under the CVA. *Id.*, at 805.

The court reached its conclusion by examining the scope, purpose and intent of the CVA. Most significantly, the court focused on the underlined legislative intent behind the CVA for purposes of interpreting its language, as it pertains to the revival of otherwise time-barred claims. Its guiding principles were two-fold: 1) "In the matters of statutory interpretation, 'legislative intent is the great and controlling principle…Because 'the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof." *Id.*, at 804 (quoting *Matter of Peyton v. N.Y.C. Bd. of Standards & Appeals*, 36 N.Y.3d 271, 279 (2020) (citing *Matter of Rizzo v. New York State Div. of Hous. & Community Renewal*, 6 N.Y.3d 104, 114 (2005) and *Kuzmich v. 50 Murray St. Acquisition LLC*, 34 N.Y.3d 84, 91 (2019)); and 2) "A statute 'must be construed as a whole,' and 'its various sections must be considered together and with reference to each other…' Further, the court may 'inquire into the…purpose of the legislation, which requires examination of the statutory context of the provision as well as its legislative history.'" *Id.* (quoting *Town of Aurora v. Village of E. Aurora*, 32 NY3d 366, 372, 91 N.Y.S.3d 773, 116 N.E.3d 64 (2018)).

Applying these principles to the facts of the case, the court pored over the Legislative Memorandum for the Bill, later passed into law as the CVA, and determined that the explicit

legislative intent of the CVA, which includes both CPLR § 214-g and CPLR § 208(b), was to "finally allow justice for past and future survivors of child sexual abuse." *Id.* (citing *Legislative Mem*, L 2019, ch. 11, McKinney's Session Laws of NY Advance Sheets at A-39).[9]

In other words, the intent of the New York state legislature, through the plain language of the statute, was to revive claims against both the perpetrators and the *enablers* of child sex abuse, such as a church which has covered up sexual abuse committed by its priests or, as in the instant case, an educational institution, like NYC DOE, whose employees fail to report sexual misconduct and/or sexual abuse committed by other employees. *Id.*, TAC, ¶¶ 25-29, 57-60.   Thus, by encompassing negligent acts and omissions, as well as intentional ones, the New York state legislature purposely made the scope of the CVA broad enough to allow victims to hold sexual abuse enablers accountable for their roles in causing child sex abuse and/or in allowing it to continue. This undeniable context strongly favors Plaintiff's position that summary judgment is not appropriate and that Defendant's Motion should be denied as a result.

---

[9] The publicly stated justification of the CVA could not be more clear in its purpose of reviving all child sex abuse claims that would otherwise be time-barred: "Because of [] restrictive statutes of limitations, thousands of survivors are unable to sue or press charges against their abusers, who remain hidden from law enforcement and pose a persistent threat to public safety. This legislation would open the doors of justice to the thousands of survivors of child sexual abuse in New York State by prospectively extending the statute of limitations to age 28 for charging felony sexual offenses, age 25 for charging misdemeanor sexual offenses, and age 55 for bringing civil actions for physical, psychological or other injury suffered as a result of child sexual abuse against any party whose intentional or negligent acts or omissions are alleged to have resulted in the abuse." CVA, New York Senate Bill No. 2440, N.Y. 242nd Leg. Sess. (2019).

**POINT VI**

**THE FACT THAT THE AREA OF THE LAW CONCERNING THE CVA IS UNSETTLED PRECLUDES SUMMARY JUDGMENT**

This Court should deny the SJ Motion for the additional reason that the legal issues which underlie it have not been fully resolved by the Second Circuit and, therefore, DOE is seeking to foreclose Plaintiff's opportunity to have her day in court based on *unsettled law*, which is unsurprising given that the main legal provision at issue, the Child Victims Act (hereinafter, "CVA"), was passed into law in 2019, merely four (4) years ago.[10]

If this Court were to dismiss Plaintiff's claims against DOE, DOE would be able to evade all accountability for contributing to the sexual abuse Plaintiff suffered as a student of IS 237 and FLHS and for causing Plaintiff to be deprived of access to those schools, both literally and constructively, and for permitting her to be sexually assaulted and harassed while she attended them. Taking the allegations in the TAC as true, DOE knew of the sexual abuse Waltzer had perpetrated against Plaintiff, through Douglas Meiners, failed to report that sexual abuse or to take any measures to stop it, and Plaintiff, whose grades deteriorated due to the situation, eventually dropped out of FLHS. *See* TAC, ¶¶ 57-62. Plaintiff testified in detail concerning how the pervasive atmosphere of sexually predatory behavior by DOE employees drove her to leave the school:

> Q Did you ever speak to your
> ---------------------------------------
>   guidance counselor about your grades?
> A I don't remember. No, I don't
>   think so. Francis Lewis had too many students
>   for guidance counselor to take everyone.
> Q **For classes you said you didn't do**
>   **as well in, what would you attribute that to?**
> A **Not attending them**.
> Q **Why didn't you attend them**?
> A I started to have -- **I didn't want**
>   **to see some of the teachers. I did not want to**

---

[10] https://www.nysenate.gov/legislation/bills/2019/S2440

**be in premises. I started acting out early**.

Q So when you said you didn't want
   to see lots of teachers, who specifically are
   you referring to?

A I didn't want to see Douglas [Meiners]. I
   did not want to see Aaron [John Doe #2]. I did not want to
   see lots of teachers that were in school. **So**
   **lots of times I just didn't even want to come**
   **to school anymore**.

-------------------------------------------------------------------------

Q **For the record, why did you drop**
   **out of Francis Lewis**?

A **Everything happening in school was**
   **too much for me and I just couldn't deal with**
   **everything that was happening at that time**.

---------------------------------------------------------

A [Why] did I drop out of high
   school? I didn't feel that I couldn't respect
   my teachers any longer. Douglas betrayed my
   trust. I felt like perhaps Mark betrayed my
   trust. Aaron was insufferable. And **it just**
   **got to the point where I did not want to be on**

**-------------------------------------------------------------**

**premises and I didn't see another options. I**
**didn't think that anybody really cared. _I_**
**_didn't think it was a safe environment for me_**.

*See* Ashanti Decl., Plaintiff's Transcript, Exhibit D, at page 278, line 25 through page 279, line 20, page 290, lines 20 through 24, page 291, line 20 through page 292, line 4 (emphasis added).

It was the constant barrage of sexual advances by DOE employees, which included some criminal sexual offenses (*see* Point II(B), *supra*), and the complete absence of support from DOE that caused Plaintiff to stop attending classes and eventually drove her out of FLHS altogether. *Id.* Thus, this case is a quintessential example of the kind of constructive deprivation of access to school facilities which both the NYS HRL and the NYC HRL were *designed to redress*. *See* NYS HRL, Executive Law § 296; NYC HRL, Administrative Code § 8-107.

Dismissing these claims, particularly where there is a dearth of jurisprudence in this area of the law, would undermine the purpose of NYS HRL and NYC HRL and, in so doing, would have a chilling effect on future child sex abuse victims coming forward to seek justice.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the SJ Motion in its entirety.

Dated: December 1, 2023                    Respectfully submitted,

Karl J. Ashanti, Esq.
*Attorneys for Plaintiff*
Musa-Obregon Law, P.C.
55-21 69th St., 2nd Fl.
Maspeth, NY 11378
T. (718) 803-1000

34