UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------- X

JANE DOE,

                                        *Plaintiffs*,

                    -against-


NEW YORK CITY DEPARTMENT OF EDUCATION,
MARK WALTZER, DOUGLAS MEINERS, MICHAEL
EISENBERG AND JOHN DOES #1 THROUGH #2,

                                        *Defendants*.

-------------------------------------------------------------------------- X

**PLAINTIFF'S LOCAL
RULE 56.1
COUNTERSTATEMENT
OF MATERIAL FACTS &
STATEMENT OF
ADDITIONAL
<u>MATERIAL FACTS</u>**

21-cv-4332 (FB)(RML)

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Civil Rule 56.1, and in opposition to Defendant New York City Department of Education ("DOE")'s motion for summary judgment, Plaintiff Jane Doe, by and through her counsel, Musa-Obregon Law, P.C., submits the following counterstatement of material facts and statement of additional material facts as to which Plaintiff contends that there are genuine issue of material facts to be tried herein:

## <u>COUNTERSTATMENT OF MATERIAL FACTS</u>

1.      Admitted.

2.      Admitted.

3.      Admitted.

4.      Admitted that the claims were all dismissed. Disputed that said dismissal was on the merits for all such claims, as opposed to procedural or jurisdictional grounds (ECF No. 64).

5.      Disputed as material fact, as allegations at issue concern non-operative complaint (ECF No. 64 & ECF No. 137).

6.      Disputed as material fact (ECF No. 64).

7.      Admitted.

8.      Admitted.

9.      Admitted.

10.      Admitted.

11.    Admitted.

12.    Admitted.

13.    Admitted, except disputed that Meiners was the only person Plaintiff ever informed of the relationship (Declaration of Karl J. Ashanti ("Ashanti Decl."), Exhibit G, Yasmin Cacho Affidavit, dated July 13, 2022).

14.    Admitted, except disputed that Meiners was the only person Plaintiff ever informed of the relationship (Ashanti Decl., Exhibit G, Yasmin Cacho Affidavit).

15.    Admitted.

16.    Admitted.

17.    Admitted.

18.    Admitted.

19.    Disputed as Plaintiff specifically testified that she was scared (Ashanti Decl., Plaintiff's Transcript, Exhibit D, at page 39, lines 11 through 23, page 43, line 25 through page 44, line 2).

20.    Admitted.

21.    Admitted.

22.    Disputed. Cited testimony does not demonstrate that Plaintiff testified that Eisenberg did not make any sexual advances towards her (Ashanti Decl., Plaintiff's Transcript, Exhibit D, P. 406, L. 23 – P. 407, L.12).

23.    Admitted.

24.    Disputed. Cited testimony does not demonstrate that Plaintiff testified that John Doe #2 ("Aaron") did not make any sexual advances towards her (Ashanti Decl., Plaintiff's Transcript, Exhibit D, P. 279, L. 230 – P. 285,

L.23).

25.    Admitted.

26.    Admitted.

27.    Admitted.

28.    Admitted.

29.    Disputed. Cited testimony does not demonstrate that Plaintiff purports that she was discriminated against at her schools solely on the basis of her sex and not gender identity (Ashanti Decl., Plaintiff's Transcript, Exhibit D, P. 448, L. 15 – P. 449, L. 17).

## STATEMENT OF ADDITIONAL MATERIAL FACTS

30.    DOE failed to provide Plaintiff with any resources or information concerning formal complaint procedures, mental health support and services or educational assistance (*see* TAC, ¶ 12).

31.    DOE did not have any policies or measures in place to deter sexual assault in its schools while Plaintiff was under the age of eighteen (18) and a DOE student (*see* Ashanti Decl., Excerpts from the Deposition Transcript of Theresa Europe ("Europe Transcript"), dated September 13, 2023, Exhibit B, at page 52, lines 13 through 22).

32.    DOE did not have any policies in place, between 1998 and 2002, to address the risks of sexual assault specifically faced by female students like Plaintiff (*see* Ashanti Decl., Europe Transcript, Exhibit B, at page 64, line 24 through page 65, line 7).

33.    DOE allowed school principals to decide on their own whether and how to

disseminate materials concerning the reporting of sexual assault incidents during that same time period (*see* Ashanti Decl., Europe Transcript, Exhibit B, at page 78, lines 6 through 16).

34.    Plaintiff is thirty-eight (38) years of age (*see* Plaintiff's Birth Certificate, Ashanti Decl., Exhibit C).

35.    Most child sex abuse victims come to terms with their abuse at 52 years old on average.[1]

36.    Waltzer's sexual abuse of Plaintiff continued even after Plaintiff reported it to DOE employee Douglas Meiners, who chose to use his knowledge of that abuse to sexually gratify himself with Plaintiff rather than report it. (*See* Ashanti Decl., Excerpts from the Deposition Transcript of Plaintiff Jane Doe ("Plaintiff's Transcript"), dated July 27, 2023 and July 28, 2023, Exhibit D, at page 130, line 19 through page 132, line 5, page 385, lines 4 through 15).

37.    Meiners denies that Plaintiff ever informed him of Waltzer's sexual abuse of Plaintiff (*see* Ashanti Decl., Excerpts from the Deposition Transcript of Douglas Meiners ("Meiners Transcript"), dated August 24, 2023, Exhibit E, at page 108, line 22 through page 109, line 20).

38.    Waltzer not only forcibly raped Plaintiff without her consent but he also forcibly restrained her on the bed where the rape occurred and, in the days, months and year or more thereafter, engaged in multiple acts of statutory rape during the course of their sexual relationship. Furthermore, Waltzer

---

[1]https://archive.nysba.org/News/NYS_Law_Digest__CPLR_Amendments/#:~:text=CPLR%20208%2C%20214%2Dg%20and%203403%3A%20The%20Child%20Victims%20Act&text=11)%2C%20is%20designed%20to%20protect,the%20Penal%20Law%2C%20among%20others.

coerced Plaintiff into taking intimate, sexually suggestive photographs during his sexual exploits with her, some on a bed in his bedroom, and maintained possession of those photographs (*see* TAC, ¶¶ 47 – 53; Ashanti Decl., Plaintiff's Transcript, Exhibit D, at page 110, line 4 through page 111, line 2).

39.    Plaintiff confided in Meiners that she was having a sexual relationship with Waltzer but Meiners failed to report it *(see* TAC, ¶¶ 8, 26; Ashanti Decl., Plaintiff's Transcript, Exhibit D, at page 130, line 19 through page 131, line 2, page 385, lines 4 through 15).

40.    Instead of reporting Waltzer's child sex abuse, Meiners used his knowledge of that abuse to seek to have sex with Plaintiff himself. *See* Criminal Offense Chart, Ashanti Decl., Exhibit F. Specifically, he held Plaintiff after gym class, pinned her against the wall of his office, preventing her escape, and then tried to kiss her without her consent (*see* Ashanti Decl., Plaintiff's Transcript, Exhibit D, at 355:4 -356:18).

41.    Plaintiff was also the victim of the criminal acts of a custodial engineer (janitor named in the TAC as "John Doe #1") who saw her walking to IS 237 one morning and lured her into his car by offering her a ride to school. However, instead of taking Plaintiff to school, he took her to a motel for sex (*see* TAC, ¶¶ 28, 35 – 36; Ashanti Decl., Plaintiff's Transcript, Exhibit D, at 34:23 - 35:25, 37:19 - 45:2).

42.    John Doe #2 (Aaron), DOE teacher at FLHS, stalked Plaintiff at school, on her way home and at her home on multiple occasions (*see* TAC, ¶¶ 29, 59; Ashanti Decl., Plaintiff's Transcript, Exhibit D, at 280:6-21; 281:2-

21).

43.     Michael Eisenberg, DOE teacher at FLHS, made unwanted sexual advances towards Plaintiff after he learned of Meiners' sexual misconduct towards Plaintiff yet, like Meiners, failed to report that information (*see* TAC, ¶¶ 27, 58).

44.     Roger Sarmuksnis is a DOE teacher at FLHS, about whom Meiners testified and implicated in an incident where he and Meiners took Plaintiff to a park off of school grounds after taking her out of class without permission (*see* Ashanti Decl., Plaintiff's Transcript, Exhibit D, at 373:9 - 374:16; Meiners Transcript, Exhibit E, at page 108, line 22 through page 109, line 20).

45.     The passage of the Child Victims Act ("CVA") in 2019 represents a sea change in how the State of New York views and treats child victims of sexual assault, particularly concerning the protections our society affords them. The CVA vaulted the State of New York from being one of the worst states in the nation regarding the restrictiveness of the timeframe within which child sex abuse victims can seek to hold their abusers, and abusers' enablers, liable to being one of the best in that regard (*see* CVA, CPLR § 208(b); CVA, CPLR § 214-g).[2]

46.     With the passage of the CVA, the intent of the New York State legislature was to allow victims of child sex abuse, such as Plaintiff, to recover

---

[2] https://www.cnn.com/2019/01/28/us/new-york-child-victims-act/index.html; https://archive.nysba.org/News/NYS_Law_Digest__CPLR_Amendments/#:~:text=CPLR%20208%2C%2020214%2Dg%20and%203403%3A%20The%20Child%20Victims%20Act&text=11)%2C%20is%20designed%20to%20protect,the%20Penal%20Law%2C%20among%20others.

damages for the physical and emotional injuries they have sustained due to the abuse and, in so doing, to hold _all_ contributors to child sex abuse accountable, whether their underlying conduct was intentional or negligent (_see_ CVA, CPLR § 208(b); CVA, CPLR § 214-g).

47.    Plaintiff claims protected class status as a heterosexual female, not as a sexual harassment or assault victim (_see_ TAC, ¶¶ 34, 115-121).

48.    Both gender and sexual orientation are explicitly delineated as protected classes within the NYC HRL (_see_ NYC Admin. Code § 8-107(4)).

49.    The NYS and NYC HRL provisions define "an unlawful discriminatory practice" (not "discrimination") by the misconduct involved – not by alleged actions or statistical evidence which may support a finding of differential treatment (_see_ Executive Law § 296 (NYS HRL); New York City Administrative Code § 8-107 (NYC HRL)).

50.    A denial of educational access and enabling of harassment are _per se_ actionable, "unlawful discriminatory practice[s]" for purposes of the NYS HRL (_Id._).

51.    The denial of access to the accommodations or facilities of a school constitutes an "unlawful discriminatory practice" for purposes of the NYC HRL (_Id._).

52.    In enacting the CVA, the goal of the New York State legislature was to enable victims of child sex abuse to recover damages for the physical and emotional injuries they have sustained due to child sex abuse and to hold both abusers and their abusers' enablers accountable (_see_ CVA, CPLR § 208(b); CVA, CPLR § 214-g).

Dated: December 1, 2023
       New York, New York

            Respectfully submitted,

            Karl J. Ashanti, Esq.
            *Attorneys for Plaintiff*
            Musa-Obregon Law, P.C.
            55-21 69th St., 2nd Fl.
            Maspeth, NY 11378
            T. (718) 803-1000