UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
JANE DOE,

                        Plaintiff,

                      -against-

NEW YORK CITY DEPARTMENT OF EDUCATION
and MARK WALTZER,

                        Defendants.
------------------------------------------------------------------------x

**THIRD AMENDED COMPLAINT AND JURY DEMAND**

21 CV 4332 (FB)(RML)

## PRELIMINARY STATEMENT

1.     This lawsuit challenges the systemic failure of the New York City Department of Education ("NYC DOE") to protect the safety and address the needs of New York City public schools students ("NYC Students") who have been sexually assaulted by or otherwise have been subjected to the criminal sexual misconduct of NYC DOE teachers and other NYC DOE staff and who have consequently experienced life-altering psychological and emotional trauma, as a result of such sexual assaults and acts of criminal sexual misconduct.[1] It also challenges the inadequacy of the responses of the NYC DOE's administration to complaints by NYC Students of having been sexually assaulted or otherwise subjected to sexual misconduct by NYC DOE employees, or of

---

[1] Plaintiff is a survivor of gender-based child sexual abuse and was also a minor at the time of the incidents complained of; therefore, this Complaint refers to her as "Jane Doe" to preserve her privacy, as is the legal and moral right of all victims of child sexual abuse.

having been placed in danger of being sexually assaulted or otherwise subjected to sexual misconduct by NYC DOE employees. By responding to particularly vulnerable victims of sexual misconduct by NYC DOE employees with indifference and inaction, the NYC DOE has deprived female NYC students, such as Plaintiff, of equal access to educational opportunity, including certain educational resources and special education resources.

2.      Plaintiff Jane Doe suffered gender-based violence over a three-year period of adolescence while attending New York City public schools operated by Defendant NYC DOE.[2] The sexual abuse inflicted upon Plaintiff adversely impacted her academic performance and, as a result, post-academic occupational opportunities.

3.      During the 1998-1999 school year ("SY"), while Plaintiff was attending the Rachel Carson Intermediate School ("IS-237"), Defendant John Doe #1, an NYC DOE school custodian, kidnapped Plaintiff by means of deception and attempted to have sex with her. The incident led to Plaintiff being physically assaulted on school grounds by a jealous classmate, while NYC DOE teachers and other NYC DOE personnel observed without intervening to end the assault or render aid to Plaintiff following the assault.

4.      During the 1999-2000 SY, while Plaintiff was attending Francis Lewis High School, Plaintiff was groomed for sexual assault by Defendant Mark Waltzer, an NYC DOE teacher and Plaintiff's Social Studies teacher at the time. Waltzer befriended Plaintiff to gain her trust. After Defendant Waltzer gained Plaintiff's trust, he lured Plaintiff to his private apartment and, without Plaintiff's consent, had sexual intercourse with Plaintiff by forcible compulsion.

---

[2] In this Complaint, the term "gender-based violence" will be used as an umbrella term to mean sexual assault and/or other sexual misconduct. Generally, it is a term that refers to a wide variety of harms inflicted on the basis of gender. See Series: What Does That Mean? Gender-based Violence (June 4, 2021) by Meghan Ott, available at https://www.womenforwomen.org/blogs/series-what-does-mean-gender-based-violence.

5.      Immediately after that forcible rape, defendant Waltzer sought and achieved cover for his crime by convincing Plaintiff that she was his "girlfriend."

6.      In addition to the fact that Defendant Waltzer forcibly raped Plaintiff on that occasion, Plaintiff was fifteen (15) years of age and legally unable to consent to sexual activity of any kind with an adult.

7.      Thus, while Plaintiff soon consented to other subsequent sexual encounters with Defendant Waltzer, those subsequent sexual encounters were acts of statutory rape. Defendant Waltzer continued his initial, inappropriate sexual relationship with Plaintiff for more than a year, repeatedly committing the crime of statutory rape in the 3rd degree, a class E felony, as Defendant Waltzer was over twenty-one (21) years of age and Plaintiff was under seventeen (17) years of age, after initial committing the crime of rape in the 1st degree, a class B felony.

8.      During the 2000-2001 SY, Plaintiff disclosed her relationship with Defendant Waltzer to fellow Francis Lewis High School teacher Douglas Meiners. Rather than report the sexual abuse that was occurring, Defendant Meiners instead preyed upon Plaintiff's vulnerability *by attempting to have sex with her himself*. Plaintiff reported Defendant Meiners' sexual misconduct to Defendant Eisenberg, another NYC DOE school teacher, *who then also made sexual advances towards Plaintiff*.

9.      During the same school year, Defendant John Doe #2 separately made stalked Plaintiff and unwanted sexual advances towards her. Plaintiff is unaware of whether John Doe #2 knew of the sexual abuse and other sexual misconduct Defendants Waltzer, Meiners and Eisenberg had subjected Plaintiff to at the time Defendant John Doe #2 stalked and targeted Plaintiff for sex.

10.     Defendant John Doe # 1's sexual misconduct towards Plaintiff, the initial forcible rape and repeated subsequent statutory rapes of the Plaintiff by Defendant Waltzer, the failure by Defendant

3

Meiners to report that sexual abuse, Defendant Meiners' sexual misconduct towards Plaintiff, Defendant Eisenberg's failure to report that sexual misconduct by Defendant Eisenberg and John Doe #2's stalking and sexual pursuit of Plaintiff triggered intense despair and anguish within her that has lasted to the present day.

11.     All of the aforementioned tragic incidents of sexual assault, other sexual misconduct and the failure to protect Plaintiff occurred on or near school grounds and/or were perpetrated by then-employees of Defendant NYC DOE ("NYC DOE" or "DOE"). After Plaintiff, a victim of gender-based violence, reported the aforementioned sexual abuse to multiple NYC DOE employees, school officials should have taken steps to protect Plaintiff's physical and emotional well-being, to evaluate Plaintiff to determine her physical and psychological needs and to provide the academic and mental health assistance necessary for Plaintiff to continue to receive an appropriate education.

12.     Instead, DOE's employees ignored Plaintiff's pleas for help. Having failed to make any report of Defendant Waltzer's inappropriate and criminal relationship with Plaintiff, DOE's employees failed to initiate any form of investigation and to document the sexual assault. Having identified Plaintiff as a victim of sexual assault and the prey of Defendant Waltzer, Defendant Meiners became an additional sexual predator, subjecting Plaintiff to further gender-based violence, just as Defendant Eisenberg did after learning of Defendant Meiners' preying upon Plaintiff. They failed to provide Plaintiff with any resources or information concerning formal complaint procedures, mental health support and services or educational assistance. As result of the forcible rape, additional sexual assaults and the aforementioned failures in reporting and support, Plaintiff experienced and continues to experience trauma-related emotional conditions that have inhibited her life activities.

13.     The failure to adequately respond to the gender-based violence and resulting trauma Plaintiff suffered stemmed from DOE's inadequate personnel training on gender-based violence, the understaffing of the Title IX coordinator position, the inadequate notice to families of their rights under Title IX and the failure to employ trauma-sensitive evaluations and processes. Together, these deficiencies have caused a systemic culture of indifference to gender-based violence and the trauma it causes.

14.     Plaintiff's experiences with this culture of indifference, which enabled Defendant Waltzer to operate with impunity, are not an isolated anomaly. They are symptomatic of DOE' pervasive and systemic failure to take appropriate and legally mandated actions to protect students from gender-based violence and to respond appropriately when students have been subjected to gender-based violence.

15.     Plaintiff brings this action pursuant to the New York State Human Rights Law ("NYSHRL"), N.Y.S. Executive Law Article 15 § 290, *et seq.* and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101, *et seq.* to obtain redress for the violations of her rights under these laws and to ensure that current and future NYC DOE students receive the safety, protection and services they need to support their efforts to learn and to assist them in the healing process, in those instances where they have been subjected to the gender-based violence Plaintiff endured.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction of this case under 28 U.S.C. § 1331, in that the claims arise, *inter alia*, under federal law, under 28 U.S.C. § 1343(a), in that the claims arise under laws providing for the protection of civil rights and under 42 U.S.C. § 1983.

17. This Court has subject matter jurisdiction of this case under 28 U.S.C. §1332, as there is complete diversity of the citizenship of the parties. Plaintiff is a citizen of the State of Hawaii, and the defendants are citizens of the State of New York. The amount in controversy far exceeds $75,000.

18. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 in that this case involves claims brought the laws of the City and State of New York.

19. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the Eastern District of New York in that Plaintiff's claims arose in this District, many of the Defendants' actions and omissions complained of occurred in this District and DOE administer public schools in this District.

20. If successful, Plaintiff is entitled to costs and attorneys' fees under 42 U.S.C. § 1988(b).

## PARTIES

21. Plaintiff Jane Doe is a thirty-eight year old woman who is a citizen and resident of Hawaii. As a child, Plaintiff attended IS-237 in Queens and Francis Lewis High School, which is also in Queens. Plaintiff suffered gender-based violence both at IS-237 and Francis Lewis High School, between the ages of thirteen (13) and sixteen (16).

22. Defendant NYC DOE is a department within the New York City government that manages the New York City School District, which is the largest school district in the United States and maintains its principal place of business at 52 Chambers Street, New York, New York. NYC DOE is responsible for administering New York City's 1,866 public schools, which operate in all five (5) boroughs of New York City and are attended by approximately 1.1 million New York City schoolchildren.

23.   Defendant NYC DOE issues regulations called "Chancellor's Regulations," which concern a variety of school administration and operation matters, including other sexual misconduct and reporting policies. All NYC DOE schools are bound by these regulations.

24.   Defendant NYC DOE receives billions of dollars in federal funds each year, including $5.7 billion dollars for the 2020-2021 school year, making it a program in receipt of federal funds within the meaning of Title IX.[3]

25.   Defendant Mark Waltzer is a former NYC DOE public school teacher and former dean of students at Francis Lewis High School. Defendant Waltzer taught Social Studies to Plaintiff and her 10th grade classmates at Francis Lewis High School during the 1999-2000 SY. Defendant Waltzer subjected Plaintiff to gender-based violence from 1999 through 2001, grooming her for the inappropriate sexual relationship he engaged in with Plaintiff in 2000 when she was fifteen (15) years of age. Upon information and belief, Defendant Waltzer resides in Queens.

26.   Douglas Meiners is a present or former NYC DOE public school teacher at Francis Lewis High School, where, upon information and belief, he teaches and/or taught physical education and fencing. Defendant Meiners subjected Plaintiff to gender-based violence during the 2000-2001 SY, at which time he learned of the inappropriate sexual relationship Defendant Waltzer engaged in with Plaintiff yet failed to report that information to NYC DOE authorities, instead using that information to make unwanted sexual advances towards Plaintiff, still then a teenage minor. Upon information and belief, Meiners currently resides in Michigan.

27.   Michael Eisenberg is a former NYC DOE public school teacher at Francis Lewis High School, where, upon information and belief, he taught physical education and was coach of the girls' varsity basketball team. Eisenberg taught Plaintiff physical education for one semester.

---

[3] See "Funding Our Schools" at the NYC DOE website, https://www.schools.nyc.gov/about-us/funding/funding-our-schools.

Eisenberg subjected Plaintiff to gender-based violence during the 2000-2001 SY, at which time he learned of Meiners' sexual misconduct towrds Plaintiff yet failed to report that information to NYC DOE authorities, instead using that information to make unwanted sexual advances towards Plaintiff, still then a teenage minor. Upon information and belief, Eisenberg is now deceased.

28.     Defendant John Doe #1 is a present or former NYC DOE school custodian at IS-237 in Queens, who subjected Plaintiff to gender-based violence when he kidnapped her by means of deception and sought to sex with her during the 1998-1999 SY when she was approximately fourteen (14) years of age.

29.     Defendant John Doe #2 is a present or former NYC DOE public school teacher at Francis Lewis High School in Queens, who subjected Plaintiff to gender-based violence when he stalked her and targeted her for sex while she attended the school.

## STATUTORY FRAMEWORK

### *New York State Human Rights Law*

30.     The NYSHRL prohibits, *inter alia*, discrimination in an educational context with respect to age, race, creed, color, national origin, sexual orientation, gender identity or expression, military status, sex, marital status, or disability.

31.     These prohibitions are based on the recognition that "the opportunity to obtain education, the use of places of public accommodation and the ownership, use and occupancy of housing accommodations and commercial space without discrimination because of age, race, creed, color, national origin, sexual orientation, gender identity or expression, military status, sex, marital status, or disability, as specified in section two hundred ninety six of this article, is hereby recognized as and declared to be a civil right." NYSHRL, N.Y.S. Executive Law Article 15 § 290, *et seq.*

*New York City Human Rights Law*

32.     The NYCHRL prohibits prejudice, intolerance, bigotry, discrimination, other sexual misconduct and bias-related violence. NYCHRL, N.Y.C. Admin. Code § 8-101, *et seq.*

33.     The NYCHRL also prohibits the withholding or denial of "the full and equal enjoyment, on equal terms and conditions, of any [public] accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation" based on "any person's actual or perceived race, creed, color, national origin, age, gender, disability, marital status, partnership status, sexual orientation, uniformed service or immigration or citizenship status, directly or indirectly." NYCHRL, N.Y.C. Admin. Code § 8-107(4)(a).

## **STATEMENT OF FACTS**

34.     Plaintiff Jane Doe is a thirty-eight year old woman who attended NYC DOE public schools for junior high school and high school. Specifically, Plaintiff attended IS-237 for junior high school and Francis Lewis High School. Both schools are located in Queens.

*Sexual Misconduct Towards Plaintiff Jane Doe at IS-237 during the 1998-1999 SY*

35.     During the 1998-1999 SY, while Plaintiff was attending IS-237, Defendant John Doe #1 ("Custodian"), then a custodian at the school, targeted Plaintiff for sex by means of deceiving her and luring her to a motel. This gender-based sexual misconduct constituted both kidnapping in the second degree and unlawful imprisonment in the second degree and culminated in a violent incident which many IS-237 students, faculty and staff witnessed firsthand.

36.     As Plaintiff was walking from her home to IS-237 one school day morning, the Custodian pulled alongside Plaintiff in a Black Mustang sedan and lured her into his car by offering her a ride to school. Plaintiff, who had recently turned fourteen (14) years of age, accepted the offer. Rather than driving to IS-237, the Custodian took a detour to a <u>motel</u>, engaging Plaintiff in

conversation along the way in an attempt to gain her trust and revealing neither his true motive of sex nor the true destination. After arriving at the motel and coercing her into entering a motel room, the Custodian made sexual advances towards Plaintiff but eventually relented when Plaintiff repeatedly refused to take her clothes off. Thereafter, the Custodian finally dropped Plaintiff off at the school, at which time, upon information and belief, several of Plaintiff's classmates observed her exiting his vehicle. One of Plaintiff's classmates expressed anger and jealousy and stated that she intended to fight Plaintiff after school for stealing her "boyfriend."

37.     News of the fight, which was planned by the classmate only and which Plaintiff had hoped to avoid, spread quickly throughout the school, amongst teachers as well as students. Despite this, no IS-237 teacher or school official sought to preclude the fight from happening.

38.     Instead, Plaintiff's classmate, whose sisters were members of the gang "Mara Salvatrucha," found Plaintiff after school that day and, alongside her sisters, physically assaulted Plaintiff on or near school grounds in full view of IS-237 teachers and other NYC DOE personnel from the school.

39.     Notwithstanding this gang assault against Plaintiff, none of the IS-237 teachers or staff intervened to protect Plaintiff from harm, to end the assault or even to render aid to Plaintiff following the assault. Plaintiff's older brother, Sean Guterman, observed the assault while it was still in progress, immediately removed Plaintiff from it and then assisted her in getting home.

40.     Having been badly beaten and humiliated, and with DOE failing to offer any form or counseling or other assistance, Plaintiff did not return to school for the rest of the semester, declined to attend her junior high school graduation and received a diploma by mail.

*Sexual Abuse of Plaintiff at the hands of Defendant Mark Waltzer*

41.    During the 1999-2000 SY, while Plaintiff was attending Francis Lewis High School ("Francis Lewis HS"), Plaintiff's Social Studies teacher was Defendant Mark Waltzer. Throughout the school year, Defendant Waltzer paid a lot of attention to Plaintiff and would often engage her in conversation outside of the classroom in common areas around the school.

42.    Plaintiff found Defendant Waltzer to be very nice and friendly, which was especially appealing to Plaintiff, as she was growing up without a father in the home.

43.    By the spring of 2000, Plaintiff was under the impression that she and Defendant Waltzer had developed a special rapport. Plaintiff viewed Defendant Waltzer as a trusted friend and father figure.

44.    Notwithstanding the fact that Defendant Waltzer knew or should have known that developing a friendship with a student that went beyond teacher-student was wildly inappropriate, towards the end of that school year, Defendant Waltzer approached Plaintiff and gave her his *personal phone number and personal address*, urging her to contact him anytime. Because Plaintiff considered Defendant Waltzer to be her friend, she took his contact information.

45.    A couple of weeks later, shortly after the end of the 1999-2000 SY, Plaintiff experienced trouble at home when she and her mother got into an argument, prompting Plaintiff to leave the home and not return for a period of time while she stayed at the home of a friend from school. After temporarily moving in with her school friend, Plaintiff called Defendant Waltzer to try to talk to him about the difficulty she was having with her mother, but Defendant Waltzer did not answer the phone at that time. As Defendant Waltzer had given Plaintiff the address of the apartment building where he lived, 188-04 64th Avenue, Fresh Meadows, N.Y. 11365, Plaintiff

walked to that address and used the intercom system to alert Defendant Waltzer of her presence. Defendant Waltzer told Plaintiff to meet him at Starbucks across the street.

46.    At Starbucks, Plaintiff and Defendant Waltzer discussed Plaintiff's home life over coffee, and he later invited her to his apartment for dinner. Plaintiff accepted the invitation.

47.    The moment Plaintiff entered Defendant Waltzer's apartment, he made a sexual advance towards Plaintiff. Defendant Waltzer kissed Plaintiff without consent, brought her to his bedroom, removed her clothing, placed her on his bed, forcibly held down both of her arms as pressed his body weight on top of hers and then inserted his erect penis into her vagina, despite her pleas of "No. No. No.", imploring him to stop. Immediately prior to this encounter, Plaintiff had been a fifteen (15) year-old virgin.

48.    Plaintiff spent that night at Defendant Waltzer's apartment. Over the next few days, Waltzer convinced Plaintiff she was his girlfriend, telling her that he loved her and that he had broken up with his prior girlfriend.

49.    Defendant Waltzer also told Plaintiff not to tell anyone about the encounter because they would both get in trouble.

50.    Thereafter, Defendant Waltzer maintained this inappropriate and criminal sexual relationship with Plaintiff throughout most of the remainder of her time at Francis Lewis High School.

51.    Defendant Waltzer never bothered to use any form of protection against pregnancy and sexually transmitted diseases while having unlawful sex with Plaintiff. Accordingly, within a year after the forcible rape, Plaintiff learned that she had become pregnant.

52.    After Plaintiff informed Defendant Waltzer of her pregnancy, Defendant Waltzer insisted that Plaintiff have an abortion, forcefully and consistently urging Plaintiff to let him take her to an

abortion clinic. Scared and unsure of how she would be able to raise a child, being one herself, Plaintiff agreed to the abortion.

53.     Soon thereafter, upon information and belief, Defendant Waltzer took Plaintiff to a storefront abortion clinic on Austin Street in Forest Hills, Queens, where she obtained an abortion for which Defendant Waltzer paid.

54.     Following the abortion, Defendant Waltzer stopped sexually assaulting Plaintiff but had already inflicted indelible and permanent damage on Plaintiff's psyche, due not only to the sexual abuse itself but also the abortion he coerced her into getting. Plaintiff felt used and worthless. Defendant Waltzer's callous treatment of Plaintiff was particularly outrageous and galling as Defendant Waltzer was the dean of students at Francis Lewis HS and knew or should have known about the psychological damage a sexual relationship between an NYC DOE teacher and his or her student could inflict on the student.

55.     Defendant Waltzer's termination of their seemingly romantic relationship, shortly after the abortion, only heightened and exacerbated Plaintiff's feelings of low self-esteem.

56.     Shockingly, Defendant Waltzer remained in contact with Plaintiff during the following two school years and beyond, maintaining such contact well into Plaintiff's adulthood and culminating in his visit to Plaintiff in Hawaii, where Plaintiff had moved to start a new life far away from the trauma she had suffered due to her experiences while attending NYC DOE schools. This visit occurred in 2020.

***Sexual misconduct of Meiners, Eisenberg and John Doe #2***

57.     During the 2000-2001 SY, Plaintiff confided in Douglas Meiners concerning the sexual abuse Defendant Waltzer had subjected her to. Yet, instead of reporting that gender-based

13

violence, as was his mandated duty under the Chancellor's Regulations, Defendant Meiners sought to further the sexual abuse by making his own unwanted sexual advances towards Plaintiff.

58.     When Plaintiff turned to yet another NYC DOE teacher for assistance, Michael Eisenberg, he also engaged in sexual misconduct towards Plaintiff. Specifically, Plaintiff informed Eisenberg about Meiners' unwanted sexual advances towards her. Eisenberg did not report that gender-based violence. Instead, he subjected Plaintiff to more gender-based violence by seeking to have a romantic relationship with her, who was still only <u>fifteen (15) years old</u>.

59.     During the same school year, Defendant John Doe #2, another Francis Lewis HS teacher, made additional unwanted sexual advances towards Plaintiff and continually stalked her – following her both on and off school grounds, even going so far as to call her home telephone.

60.     <u>None</u> of the teachers who sexually abused Plaintiff or attempted to sexually abuse her received any form of discipline from DOE.

### *The Aftermath of the Gender-Based Violence*

61.     Plaintiff did not graduate from Francis Lewis HS.

62.     Plaintiff left the school at the end of the 2001-2002 SY and never returned. Before Plaintiff left Francis Lewis HS, the gender-based violence Plaintiff experienced caused her grades to deteriorate.

63.     Because of the horrendous trauma, abuse and betrayal of trust Plaintiff endured during her time at IS-237 and Francis Lewis HS, Plaintiff experienced an emotional downward spiral in her late teens that has never ceased, as it continues to date.

64.     Ever since leaving Francis Lewis HS, Plaintiff has had tremendous difficulty in relationships with men. She suffered through a failed marriage. She has been unable to trust those in positions of authority. She has had problems with physical and emotional intimacy. She has

been very promiscuous at times while maintaining a detached and emotionless connection to sex. She has found great difficulty in trying to trust people in her life, even those who are closest to her such as her siblings and former husband during the course of their marriage.

65.     Plaintiff has tried to run away from the emotional pain caused by her traumatic experiences at NYC DOE schools, including getting married at age nineteen (19) and moving to Hawaii soon thereafter.

66.     Unfortunately, because the emotional pain Plaintiff sought to run away from was internal, she carried it with her to Hawaii, where her marriage produced a daughter but was otherwise a failure, as Plaintiff had erected an emotional wall her husband was unable to penetrate. The wall was created by the emotional trauma NYC DOE employees inflicted upon Plaintiff. That emotional trauma caused Plaintiff's low self-esteem and anger towards men.

67.     Further, Plaintiff experienced tremendous guilt over the abortion Defendant Waltzer convinced her to have, believing that she did not deserve to be happy.

### *Underreporting of Gender-Based Violence Incidents*

68.     New York State requires all schools to report violent or disruptive incidents as well as incidents of discrimination and harassment under the School Safety and the Educational Climate ("SSEC") data collection program. Certain forcible sex offenses are included within the reporting. For example, during the 2017-2018 school year, NYC schools reported nearly 3,400 sexual assaults, or 18.9 per day.[4]

---

[4] To access SSEC data cited here, see School Safety and the Educational Climate: Data Reporting, NYSED Information and Reporting Services (Feb. 23, 2018):
http://www.p12.nysed.gov/irs/school_safoty/school_safety_data_reporting.html (hereinafter "SSEC Data Reporting").

69.     The NYC DOE also collects and reports information from each school district on the number of incidents of sexual misconduct that were investigated and verified by the school district.[5] Disparities between NYC DOE reports and reporting from the rest of the state suggest that NYC DOE's numbers do not capture the full extent of gender-based violence occurring in NYC DOE schools.

70.     There are approximately 1.1 million students enrolled in NYC DOE schools, and approximately 1.6 million enrolled in New York state schools outside of New York City.[6] During the 2016-2017 school year, the NYC DOE reported only 590 material incidents of sexual misconduct while the rest of New York State reported 1,739 such incidents.[7] Similarly, during the 2015-2016 school year, NYC DOE reported 503 incidents of sexual misconduct in the NYC DOE schools, while the state reported 1,664 such incidents.[8]

71.     This disparity is startling: New York City's population is roughly 43.44% of the state's overall population, but accounted for only 25.33% of the state's gender discrimination and sexual misconduct reports during the 2016-2017 school year and 23.21% during the 2015-2016 school year.[9] These numbers suggest rampant underreporting indicative of a systemic failure to recognize, respond to, and prevent criminal sexual assault and other sexual misconduct.

72.     These disparities caught the attention of the New York Attorney General. The Attorney General's Office launched an investigation in response to reporting from the 2013- 2014 school

---

[5] Upon information and belief, the NYC DOE does not collect information concerning the number of other sexual misconduct incidents that were reported but never investigated by the school.
[6] See DOE Data at a Glance, NYC Dep't of Educ. (2018), https://www.schools.nyc.gov/about-us/reports/doe-data-at-a-glance; Public School Enrolllment, NYSED (April 4, 2019),http://www.p12.nysed.gov/irslstatistics/enroll-n- staff/home.html.
[7] SSEC Data Reporting, supra, note 74.
[8] Id.
[9] See QuickFacts: New York: New York City, New York, U.S. Census Bureau (July l, 2018), https://www.ccnsus.gov/quickfacts/fact/table/ny,newyorkcitynewyork,US/PST045218.

year, during which seventy percent of NYC DOE schools reported *zero* instances in which a student was subjected to bullying or sexual misconduct and ninety-eight percent of schools reported fewer than ten such incidents within the year.[10]

73.    In August 2016, the Attorney General's Office released a report, in the form of a letter, documenting its investigation and resulting concerns.[11] The letter observed that reporting levels "suggest both significant underreporting" of material incidents of sexual misconduct and gender discrimination by schools in New York City and "some confusion or uncertainty as to how to classify those incidents that are reported."[12]

### *NYC DOE's Culture of Indifference to Gender-Based Violence*

74.    This underreporting is part of a broader NYC DOE school culture of indifference to gender-based violence that affects both staff and students.

75.    Girls for Gender Equity ("GGE"), a community-based research and advocacy organization, conducted two research studies involving a total of over 1,300 NYC DOE students.[13] The study found that NYC DOE schools have a culture that has normalized sexual misconduct and other gender-based violence.[14]

76.    One in three students interviewed by GGE reported experiencing some form of sexual misconduct in school.[15] Sixty-four percent of students said that sexual misconduct occurred at

---

[10] New York State Educ. Dep't and New York Office of the Att'y General, Letter to District Superintendents on Dignity for All Students Act: Results of Statewide School District Survey and Guidance on Implementation 3 (Aug. 31, 2016), available http://www.p I 2.nysed.gov/dignityact/documents/SED-AGLttrandGuidance8-3 l- l 6.pdf (hereinafter "New York Att'y General Letter on DASA").

[11] See, generally, id.

[12] Id., at 4.

[13] Participatory Action Research, Girls for Gender Equity (2018), https://www.ggenyc.org/programs/community-organizing/participatory-action-research/(hereinafter *"Participatory Action Research").*

[14] The Schools Girls Deserve 23 (2017), Girls for Gender Equity, available at https://www.ggenyc.org/wp-content/uploads/2017/11/GGE_school_girls_deserveDRAFT6FINALWEB.pdf.

[15] Id., at 23.

their schools, over thirty percent reported that pressure to participate in sexual activity occurred at their school, and approximately ten percent reported that forced sexual activity occurred at their school.[16]

77.     The study also found that students who report their harassment to NYC DOE officials do not receive adequate support.[17]

### NYC DOE's Unlawful Policies, Patterns and Practices

78.     Every school district receiving federal funding is required to designate at least one Title IX coordinator who is responsible for training faculty, staff, and students on rights and obligations under Title IX. The Office for Civil Rights has stated that "it may be good practice" for larger school districts to designate multiple Title IX coordinators, such as one for each school or school campus.[18]

79.     The NYC DOE has only one Title IX Coordinator for the *entire* school district of 1.1 million students and 300,000 staff. This *one* individual is responsible for responding to and investigating NYC public schools' reported 2,600 other sexual misconduct incidents per year, or 14.4 other sexual misconduct incidents per school day.

80.     By way of comparison, other cities with smaller school districts have more than one Title IX coordinator. The Los Angeles Unified School District has one Title IX Coordinator for 694,096 students as well as one Title IX manager at each school.[19] The Chicago Public Schools District has two Title IX Coordinators for 361,314 students.[20]

---

[16] Participatory Action Research, supra, note 89.
[17] Id.
[18] 2015 Guidance on Title IX Coordinators, supra, note 5, at 1, 3.
[19] See Title IX – Sex Based Nondiscrimination Statute, L.A. Unified School District, https://achieve.lausd.net/Page/3654; L.A. Unified Fingertip Facts 2018-2019, L.A. Unified School District (2018); Title IX Policy/Complaint Procedures, L.A. Unified School District Policy Bulletin 7 (Feb. 14, 2018).
[20] State & Large School District Title IX Gender Equity Coordinators, Methods of Administration Coordinators & Other State & District Level Gender Equity Experts 13, Feminist Majority Foundation, Education Equality

81.     In stark contrast to the NYC DOE's staffing of the Title IX coordinator position, Harvard University employs 50 Title IX Coordinators for its 36,000 students and more than 12,000 staff.[21]

82.     According to federal regulations, the Title IX coordinator should be a full-time position and must not have any other job responsibilities that may create a conflict of interest.[22] Nevertheless, the Title IX Coordinator is serving as the Diversity Unit Chief, a position in the NYC DOE's Office of General Counsel. With multiple roles, the Title IX Coordinator has less time to devote to training and support in the Title IX capacity. This position creates a conflict of interest by placing the Title IX Coordinator in a position to *both investigate* Title IX complaints against the NYC DOE *and defend* the NYC DOE against Title IX claims.

83.     The Dignity for All Students Act ("DASA") requires every school in New York to designate a DASA coordinator to respond to, *inter alia*, incidents of bias-based harassment or discrimination.[23] In accordance with its DASA obligations, the NYC DOE designates one DASA Liaison in each school to handle student reports of harassment and discrimination.[24]

84.     However, DASA Liaisons lack the qualifications, training, and authority required of Title IX Coordinators.

85.     DOE does not provide clear notice to students and families of the role of the DASA Liaison in reporting and responding to harassment and discrimination. As a result, according to the NYC Comptroller, "many students were unable to identify their school's DASA coordinator when

---

Program, (Feb. 6, 2019), available at http://www.feminist.org/educationlpdfs/State-TitleIX-Coordinators.pdf; CPS Stats and Facts, Chicago Public Schools (Apr. 1, 2019), https://cps.edu/Abont_CPS/At-a-glance/Pages/Stats_and_facts.aspx.
[21] See FY18 Annual Report 4 (2018), Harvard Office for Dispute Resolution, Title IX Office, available at https://titleix.harvard.edu/files/titleix/filesltitle_ix_odr_2018_annual_report_final_12_1_2l_8_for_web.pdf; Harvard at a Glance, Harvard University, https://www.harvard.edu/about-harvard/harvard-glance.
[22] 2015 Guidance on Title IX Coordinators, supra, note 5, at 3.
[23] N.Y. Educ. L. Art. 2 § 13.
[24] Respect for All: Fostering Anti-Bullying Practices, NYC Dep't of Educ. (2019), https://www.schools.nyc.gov/school-life/policies-for-all/respect-for-all (last visited Apr. 22, 2019).

surveyed."[25] In addition, according to the Comptroller's Office, "numerous accounts from schools and advocates" indicated that the "DASA coordinator is not consistently implemented in all schools."[26]

86. Also, a June 2018 report by the New York City Comptroller's Office found that NYC DOE did not provide students and families with information about resources available in the event of sexual assault or sexual misconduct.[27]

87. Because of these failures on the part of the NYC DOE to properly disseminate information, Plaintiff did not know how to appropriately report the sexual assaults and other sexual misconduct NYC DOE directed towards her while she attended IS-237 and Francis Lewis HS.

### The Failure to Train NYC DOE Personnel

88. Defendant NYC DOE does not provide adequate training, resources or support for their employees on how to identify gender-based violence, how to properly investigate complaints, how to properly document and report incidents, how to devise interim measures to protect victims of gender-based violence, and how to prevent further incidents of gender-based violence.

89. School personnel also do not receive adequate training on the impact of gender-based violence, or its effect on a student's ability to learn.

90. Upon information and belief, NYC DOE teachers are currently required to participate in mandatory training on sexual misconduct, but that training is limited to preventing sexual misconduct amongst co-workers. A separate training includes a module on intervening in peer-to-peer sexual misconduct, but not teacher-student sexual misconduct.

---

[25] New York City Comptroller, supra, note 84, at 10.
[26] Id.
[27] New York City Comptroller, supra, note 84, at 10-11.

91.     DASA liaisons at each school receive training on sexual misconduct and gender discrimination, but trainings are typically limited to newsletters or optional webinars.[28]

92.     The 2016 Attorney General report has characterized NYC DOE staff training on sexual misconduct and gender discrimination as "sparse and inadequate."[29]

93.     The 2018 New York City Comptroller's report found that the underreporting likely signifies "a lack of adequate training about the reporting process and the relevance of documenting the types of problems most common in particular school communities."[30]

94.     The NYC Comptroller's Report found that the NYC DOE does not provide schools with funding to support training, materials, or resources for the DASA liaison.[31]

95.     As a result of DOE's failure to train, support, and supervise its employees, Plaintiff's complaints of sexual assault and other sexual misconduct were ignored and went unreported, in violation of her rights.

## CAUSES OF ACTION

## SEXUAL ASSAULT

96.     Plaintiff incorporates and reiterates each and every paragraph above as thoughfully set forth herein.

97.     Defendant Waltzer's sexual misconduct towards Plaintiff constitutes, *inter alia*, rape in the first degree and rape in the third degree.

98.     Defendant Waltzer's intentional acts and omissions resulted in the conduct of his towards Plaintiff that constitutes, *inter alia*, rape in the first degree and rape in the third degree.

---

[28] Id.
[29] New York Att'y General Letter on DASA, supra, note 81, at 7.
[30] New York City Comptroller, supra, note 84, at 11.
[31] Id., at 11-12.

99.     The negligent acts and omissions of DOE resulted in the conduct of Defendant Waltzer towards Plaintiff that constitutes, *inter alia*, rape in the first degree and rape in the third degree.

100.    By virtue of the above, Defendant Waltzer and DOE violated Plaintiff's right to be free of sexual assault, and said violations are actionable under CPLR 213-C.

101.    By virtue of the above, Plaintiff has suffered actual damages including, but not limited to, medical expenses associated with mental health treatment, inconvenience, insult, mental distress, embarrassment, humiliation, physical assault, anxiety, emotional pain and suffering, a denial of access to educational benefit, and other economic or non-economic damages.

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

102.    Plaintiff incorporates and reiterates each and every paragraph above as thoughfully set forth herein.

103.    Defendant Waltzer engaged in extreme and outrageous conduct towards Plaintiff to her detriment.

104.    Defendant Waltzer, through his extreme and outrageous conduct towards Plaintiff, demonstrated an intent to cause, or disregard of a substantial probability of causing, severe emotional distress in the Plaintiff.

105.    The extreme and outrageous conduct of Defendant Waltzer towards Plaintiff directly caused her severe emotional distress.

106.    By virtue of the above, Plaintiff has suffered actual damages including, but not limited to, medical expenses associated with mental health treatment, inconvenience, insult, mental distress, embarrassment, humiliation, physical assault, anxiety, emotional pain and suffering, a denial of access to educational benefit, and other economic or non-economic damages.

22

## VIOLATION OF NEW YORK STATE HUMAN RIGHTS LAW

107.    Plaintiff incorporates and reiterates each and every paragraph above as though fully set forth herein.

108.    The schools Plaintiff attended, IS-237 and Francis Lewis HS, constitute "places of public accommodation" within the meaning of the New York State Human Rights Law. NYSHRL, N.Y.S. Executive Law Article 15 § 291(2).

109.    DOE failed to take reasonable steps to provide appropriate notice and training on, investigation of and response to reported sexual assaults and other sexual misconduct.

110.    That failure constitutes a breach of DOE's duty to Plaintiff, under the NYSHRL, to provide Plaintiff with the "the opportunity to obtain education [and] the use of places of public accommodation without discrimination because of…..gender identity." Id.

111.    DOE's breach of its duty to Plaintiff constitutes a violation of Plaintiff's rights under the NYSHRL.

112.    Defendant Waltzer, as well as Meiners, Eisenberg and John Doe #1 and John Doe #2, subjected Plaintiff to sexual assault and/or other sexual misconduct, respectively.

113.    The abuse Plaintiff suffered at the hands of Defendant Waltzer, Meiners, Eisenberg and John Doe #1 and John Doe #2 constitutes a deprivation of Plaintiff's right, under the NYSHRL, to have the opportunity to obtain education and the use of places of public accommodation without discrimination because of gender identity.

114.    Such acts, conduct and behavior caused Plaintiff to suffer actual damages including, but not limited to, emotional pain and suffering, sexual assault, humiliation, embarrassment, anxiety, mental distress, inconvenience, insult, a denial of equal access to educational benefit, medical expenses associated with mental health treatment, and other economic and non-economic damages.

23

## <u>VIOLATION OF NEW YORK CITY HUMAN RIGHTS LAW</u>

115.     Plaintiff incorporates and reiterates each and every paragraph above as though fully set forth herein.

116.     The schools Plaintiff attended, IS-237 and Francis Lewis HS, constitute "place or provider of public accommodation" within the meaning of the New York City Human Rights Law. NYCHRL, N.Y.C. Admin. Code § 8-101.

117.     DOE failed to take reasonable steps to provide appropriate notice and training on, investigation of and response to reported sexual assaults and other sexual misconduct.

118.     DOE failed to take appropriate measures to safeguard the health and well-being of Plaintiff in school.

119.     Defendant Waltzer, along with Meiners, Eisenberg and John Doe #1 and John Doe #2, subjected Plaintiff to sexual assault and/or other sexual misconduct, respectively.

120.      These failures by DOE and the abuse Plaintiff suffered at the hands of Defendant Waltzer, Meiners, Eisenberg and John Doe #1 and John Doe #2 constitute a deprivation of Plaintiff's right, under the NYCHRL, to be free from discrimination because of her gender and to have "the full and equal enjoyment, on equal terms and conditions, of any [public] accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation." NYCHRL, N.Y.C. Admin. Code § 8-107(4)(a).

121.     Such acts, conduct and behavior caused Plaintiff to suffer actual damages including, but not limited to, emotional pain and suffering, sexual assault, humiliation, embarrassment, anxiety, mental distress, inconvenience, insult, a denial of equal access to educational benefit, medical expenses associated with mental health treatment, and other economic and non-economic damages.

## JURY DEMAND

122.    Plaintiff hereby demands a trial by jury on all issues pursuant to the Seventh Amendment to the U.S. Constitution and CPLR § 4102(a).

## REQUEST FOR RELIEF

WHEREOF, Plaintiff respectfully requests that this Court:

1.    Declare the acts and omissions complained of herein to be unlawful and in violation of Plaintiff's rights under the New York State Human Rights Law, the New York City Human Rights Law and CPLR § 213-C.

2.    Declare the acts and omissions complained of herein to have violated Plaintiff's common law right to be free of the intentional infliction of emotional distress.

3.    Award Plaintiff damages in an amount to be determined at trial.

4.    Award Plaintiffs reasonable attorneys' fees and costs.

5.    Grant any other and further relief that this Court may deem just, equitable and proper.

6.    Retain jurisdiction over this matter until Defendants demonstrate full compliance with the Court's order.

Dated: October 6, 2023                  Respectfully submitted,

Karl J. Ashanti, Esq.
*Attorneys for Plaintiff*
Musa-Obregon Law, P.C.
55-21 69th St., 2nd Fl.
Maspeth, NY 11378
T. (718) 803-1000