UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------x
JANE DOE,

                       Plaintiff,

     -against-

NEW YORK CITY DEPARTMENT OF
EDUCATION and MARK WALTZER,

                 Defendants.
-----------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 1:21-cv-04332 (FB) (RML)

*Appearances:*
*For the Plaintiff*:
KARL J. ASHANTI
Musa-Obregon Law, P.C.
55-21 69th St., 2nd Fl.
Maspeth, NY 11378

*For the Defendant the New York City*
*Department of Education*:
JACQUELYN DAINOW
JOHN DOODY
Assistant Corporation Counsels for
the City of New York
100 Church St.
New York, NY 10007

**BLOCK, Senior District Judge:**

Plaintiff Jane Doe ("Plaintiff") brought this federal question action for alleged sexual abuse and harassment that she suffered as a minor at the hands of employees of Defendant New York City Department of Education ("NYC DOE"). On March 20, 2023, the Court granted NYC DOE, Defendant Mark Waltzer, and the now-dismissed non-party Defendants' motion to dismiss in part. *See Doe v. New York City Dep't of Educ.*, No. 21-CV-4332, 2023 WL 2574741, at *6 (E.D.N.Y. Mar. 20, 2023) ("Motion to Dismiss Order"), *appeal dismissed* (Sept. 20, 2023). On October

6, 2023, Plaintiff filed her Third Amended Complaint ("TAC") — the now-operative complaint — raising claims for: (i) sexual assault for rape in the first and third degree against Waltzer, and against NYC DOE for their negligent acts and omissions; (ii) intentional infliction of emotional distress ("IIED") against Waltzer; (iii) violation of New York State Human Rights Law ("NYSHRL") against NYC DOE and Waltzer; and (iv) violation of New York City Human Rights Law ("NYCHRL") against NYC DOE and Waltzer. NYC DOE now moves for summary judgment on the claims against it.

For the following reasons, NYC DOE's motion for summary judgment is GRANTED in part and DENIED in part.

## I. ISSUES

The predominant issue for the Court is whether Plaintiff's HRL claims are revived by the Child Victim's Act, N.Y. C.P.L.R. § 214-g, and whether those claims survive summary judgment. Based on the Court's analysis, HRL claims are revived by the Child Victim's Act, but Plaintiff's NYSHRL claim does not survive because no claim was available under the then-applicable statute. Plaintiff's NYCHRL claim survives summary judgment and will proceed to trial.

The remaining Defendant, Waltzer, has not moved for summary judgment on Plaintiff's claims against him — *i.e.*, Plaintiff's sexual assault and IIED claims,

and Plaintiff's HRL claims alleged against Waltzer.  As such, the Court need not address the undisputed question that the CVA revives Plaintiff's sexual assault and IIED claims,[1] which are both premised on Waltzer's alleged forcible and statutory rape of Plaintiff.

## II.   BACKGROUND

The following facts are taken from the pleadings, the parties' Rule 56.1 statements, and the supporting documentation.  The facts are undisputed unless otherwise noted.  The Court construes all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in that party's favor.  *See LaSalle Bank Nat. Ass'n v. Nomura Asset Cap. Corp.*, 424 F.3d 195, 205 (2d Cir. 2005).  Summary judgement is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

---

[1] Nor is there any merit to doing so, as there is no question that the CVA revives sexual assault and statutory rape claims, *e.g.*, *Doe*, No. 21-CV-4332, 2023 WL 2574741, at *4 ("The CVA revives claims based on [] conduct committed against a minor which would constitute an offense under Article 130 of the New York State Penal Law, which includes rape, [and] statutory rape."), or IIED claims premised on that conduct as discussed *infra*.  *See Shapiro v. Syracuse Univ.*, 173 N.Y.S.3d 769, 773-74 (4th Dep't 2022) (CVA revives negligence claims that "arise from sexual abuse").

3

Plaintiff alleges that she was repeatedly sexually abused and harassed by multiple NYC DOE employees while she attended middle school and high school, culminating in her dropping out of high school after the 2001-2002 school year.

First, Plaintiff alleges that, when she was in middle school, a custodial janitor — John Doe #1 — offered to give her a ride while she was walking to school. Instead of taking her to school, the janitor took Plaintiff to a motel. At the motel, he took Plaintiff into a room and made verbal sexual advances towards her. After she refused his advances, the janitor took her back to her school.

Next, while Plaintiff was a student at Francis Lewis High School ("FLHS") in Queens, New York, between 1998 and 2001, she alleges that she was sexually abused by Defendant Waltzer, who was a social studies teacher and hall dean at the time. Plaintiff claims that Waltzer forcibly raped her at his home when she was fifteen or sixteen years old. Plaintiff and Waltzer continued to have sexual intercourse for a year or more thereafter — during which time, Plaintiff maintains she was under the age of consent and hence statutorily raped — until Plaintiff became pregnant and had an abortion.

Plaintiff alleges that she informed her physical education teacher, Douglas Meiners, that she and Waltzer were having sexual intercourse. Meiners did not report the relationship, but instead tried to kiss her after class. In describing the

4

incident in her deposition, Plaintiff alleged that Meiners "pinned" her against the wall in his office, and tried to kiss her, but she avoided it by ducking under his arms and ran out of the room.  Ashanti Decl., Ex. D, at 356:2-5.

Plaintiff alleges that when she went back to Meiners' office afterwards to talk about the incident, she instead found Michael Eisenberg, another physical education teacher who shared Meiners' office.  Eisenberg told Plaintiff that Meiners had told him about trying to kiss Plaintiff, and that Meiners was in love with her but could not do anything about it because he was married.  Eisenberg went on to say that he (Eisenberg) was not married and would "marry [her] on the spot." *Id.* at 399:18.

Lastly, Plaintiff alleges that she was "stalked" by her high-school Spanish teacher, John Doe #2 (aka "Aaron").  Plaintiff alleges that "Aaron" would follow her at school, take the same bus as her, and frequently call her house.  He told Plaintiff that he wanted to be her "boyfriend."

Plaintiff alleges that the abuse and harassment she suffered from the teachers at FLHS caused her grades to deteriorate and inflicted long-term emotional and psychological trauma.  She dropped out of high school at the end of the 2001-2002 school year because, according to her deposition, it was not a "safe" environment for her. *Id.* at 292:4.

5

## III.   DISCUSSION

### A. Plaintiff's Sexual Assault Claim Against NYC DOE

As a preliminary matter, the Court notes that the TAC raises a claim against NYC DOE for negligence regarding Waltzer's alleged sexual assault, despite the Court's dismissal of the sexual assault claim against NYC DOE in the Court's Motion to Dismiss Order.  Although the parties did not discuss this issue in their memoranda, Defendant's Rule 56 motion to dismiss the Complaint against NYC DOE in its entirety, and the dispute between the parties in their Rule 56.1 statements over the significance of the Court's prior decision, puts this issue before the Court for resolution.

The law of the case doctrine makes the Court's disposition of Plaintiff's sexual assault claim against NYC DOE binding on future proceedings in this case. *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002) ("[W]hen a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case.").  The mere "filing of an Amended Complaint does not entitle Plaintiff" to relitigate her claims "absent new factual allegations." *Weslowski v. Zugibe*, 96 F. Supp. 3d 308, 316 (S.D.N.Y.) (applying law of the case doctrine), *aff'd*, 626 F. App'x 20 (2d Cir. 2015).  As the factual allegations concerning Plaintiff's claim against NYC DOE for Waltzer's sexual assault are unchanged, so too is the Court's disposition.  *See* Motion to Dismiss Order at 14-

15.

## B.   The Child Victims Act ("CVA")

NYC DOE first argues that the CVA does not revive Plaintiff's claims under the NYCHRL and NYSHRL.[2]  It is incorrect.

Enacted in 2019 as "an extreme exercise of legislative power" that "seeks to remedy an injustice," *see In re Child Victims Act Cases Removed From State Ct.*, No. CV 23-5029(GRB), 2023 WL 5123396, at *2 (E.D.N.Y. Aug. 10, 2023) (cleaned up), the CVA provides, in relevant part:

> Notwithstanding any provision of law which imposes a period of limitation to the contrary and the provisions of any other law pertaining to the filing of a notice of claim or a notice of intention to file a claim as a condition precedent to commencement of an action or special proceeding, every civil claim or cause of action brought against any party alleging intentional or negligent acts or omissions by a person for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense as defined in article one hundred thirty of the penal law committed against a child less than eighteen years of age . . . which is barred as of the effective date of this section because the applicable period of limitation has expired, and/or the plaintiff previously failed

---

[2] Plaintiffs spill — and waste — much ink arguing that another provision of the CVA, C.L.P.R. § 208(b), revives past claims.  It does not; this provision only extends the statute of limitations prospectively.  Plaintiff's claims are instead brought properly pursuant to the revival provision of the CVA, § 214-g.  *See Jones v. Cattaraugus-Little Valley Cent. Sch. Dist.*, No. 19-CV-707S, 2022 WL 2124608, at *3 (W.D.N.Y. June 13, 2022) (noting that N.Y. C.P.L.R. 214-g "reopened the state's statute of limitations," while "newly created C.P.L.R. 208 (b), extended the infancy tolling of the statute of limitations for certain child sex abuse crimes from age 18 to age 55").

to file a notice of claim or a notice of intention to file a claim, is
hereby revived. . ."

N.Y. C.P.L.R. § 214-g.

While neither the Second Circuit nor the New York Court of Appeals has yet

spoken on whether the CVA revives NYSHRL and NYCHRL claims, *see Coe v.*

*Regan*, No. 19-CV-05327 (ENV) (VMS), 2022 WL 467053, at *5 (E.D.N.Y. Feb.

3, 2022) ("assuming without deciding that CVA even applies to gender

discrimination claims"), *aff'd sub nom. Kane v. Mount Pleasant Cent. Sch. Dist.*,

80 F.4th 101 (2d Cir. 2023), the Court believes that the plain language of the CVA

embraces these civil claims.  The CVA revives "every civil claim or cause of

action," language that definitively encompasses the NYSHRL and NYCHRL.  *See*

*Segal v. New York Mil. Acad.*, No. 21-CV-6872 (VB), 2023 WL 5211220, at *6

(S.D.N.Y. Aug. 14, 2023) (the CVA revives NYSHRL claims); *Crawford v.*

*Ratner*, No. 952052/2023, slip op. at 6-9 (N.Y. Sup. Ct., N.Y. Cnty. Dec. 20, 2023)

(the nearly identical language in the Adult Survivors Act ("ASA") revives

NYCHRL claims).

Moreover, the text makes clear that the CVA revives not only tort claims

based on sexual assault but also all civil claims that "arise out of conduct that

constitutes a sexual offense under the penal law."  *See Wilkie v. Vill. of Hempstead*,

No. 22-CV-00920 (JMA) (JMW), 2023 WL 5952056, at *8 (E.D.N.Y. June 20,

2023) (Wicks, M.J.) (the ASA revives false arrest and imprisonment claims that arise from conduct that constitutes a sexual offense under N.Y. Penal L. § 130), *report and recommendation adopted*, 2:22-CV-00920-NJC-JMW (E.D.N.Y. July 10, 2023); *Shapiro*, 173 N.Y.S.3d at 773-74 (CVA revives negligence claims because the claims "arise from sexual abuse"). *But see Rapp v. Fowler*, No. 20-CV-9586 (LAK), 2022 WL 1997176, at *3 (S.D.N.Y. June 6, 2022) ("As common law assault is not a sexual offense, incest or the use of a child in a sexual performance, all as defined in the Penal Law, the Child Victims Act did not revive such claims."). The CVA revives civil claims brought against a party alleging an "injury or condition suffered as a result of conduct which would constitute" a Penal Code § 130 offense. N.Y. C.P.L.R. § 214-g. And the CVA revives claims against a party for "*omissions*," which are not "explicitly criminalized in Section 130 of the penal law." *Crawford*, No. 952052/2023, slip op. at 8. Therefore, while conduct that gives rise to injury must be a sexual offense, the civil claim itself need not be synonymous with § 130.

NYC DOE contends that the CVA does not revive NYSHRL and NYCHRL claims because they are "anti-discrimination/anti-harassment legislation as opposed to legislation defining criminal sexual offenses." Def's Mem. L. in. Supp. Summ. J. 10. But NYC DOE's proffered construction cannot be correct because,

in New York, *civil* tort claims based on rape have distinct elements from the *crime* of rape.  Even a civil claim for assault or battery based on rape is not, strictly speaking, a sexual offense defined in the Penal Law.  *See Nicholson v. Luce*, 866 N.Y.S.2d 52, 53 (1st Dep't 2008) (civil claims for "sexual assault may be framed as a claim for either assault or battery").  As these torts "cover all types of 'qualitatively different' situations" and do not necessarily involve sexual misconduct, "the crime of rape, as compared with assault and battery, entails other or additional elements."  *United Nat. Ins. Co. v. Waterfront New York Realty Corp.*, 994 F.2d 105, 108 (2d Cir. 1993).  Thus, a narrow reading of the CVA requiring the civil claim to be synonymous with the Penal Code would produce an absurd result by excluding claims at the very heart of the statute.  That the New York State Legislature specifically chose the words "every civil claim" only buttresses this broad reading.

In sum, the appropriate CVA revival test is whether the civil claim *arises* from sexual misconduct criminalized under Penal Code § 130 against a child under eighteen.  Just as the civil claim of battery is not necessarily the crime of rape, gender discrimination itself is not a violation of the penal law and does not necessarily involve sexual abuse; here, however the NYSHRL and NYCHRL discrimination claims *do* arise from "conduct which would constitute a sexual

10

offense" and are thus revived by the CVA.  *Segal*, 2023 WL 5211220, at *6

(quoting N.Y. C.P.L.R. § 214-g).

While the Second Circuit — as well as this Court — has held the CVA does

not revive *federal* claims under § 1983 and Title IX, this analysis is easily

distinguishable from that of *state and City* claims. *See Kane v. Mount Pleasant*

*Cent. Sch. Dist.*, 80 F.4th 101, 108 (2d Cir. 2023) (CVA did not revive § 1983 or

Title IX claims); *Doe*, No. 21-CV-4332, 2023 WL 2574741, at *3.  As the *Kane*

court itself acknowledged, "our holding does not impact a plaintiff's ability to

utilize Section 214-g to attempt to revive his or her *state law claims*," including the

NYSHRL, which could proceed in state court.  *Kane*, 80 F.4th at 111, n.3

(emphasis in original).

The reasoning behind this distinction is instructive.  For § 1983 and Title IX

claims — neither of which supplies its own statute of limitations — federal courts

are duty-bound to follow Supreme Court precedent.  Previously, federal courts

determined the statute of limitations by analogizing § 1983 claims to various

common-law actions, which often created divergent statute of limitations for the

wide swath of § 1983 claims.  *See Wilson v. Garcia*, 471 U.S. 261, 272-73 (1985).

Concerned by the lack of uniformity and predictability, the Supreme Court

jettisoned a claim-by-claim approach and held that the state personal injury statute

11

of limitations applies, which in New York is the three-year residual personal injury statute of limitations. *Id.* at 274-75; *Owens v. Okure*, 488 U.S. 235, 249-50 (1989) (courts should borrow from the residual statute for personal injury actions where state law provides multiple statutes of limitations for personal injury actions). In so holding, the Court proscribed federal courts from analyzing the particular facts or legal theory of each claim to determine the relevant statute of limitations. *Kane*, 80 F.4th at 109.

As the Second Circuit explained in *Kane*, were the CVA to revive some, but not all, § 1983 or Title IX claims — only those arising from sexual misconduct — courts would have to engage in precisely the fact- and-theory-specific statute-of-limitations analysis the Supreme Court forbade. *Id.* at 109. By contrast, for the state and City claims, the Court must undertake a different analysis, following state decisional law and the statutory language, among other resources. *See, e.g.*, *Pentech Int'l, Inc. v. Wall St. Clearing Co.*, 983 F.2d 441, 445-46 (2d Cir. 1993). Because the CVA's language covers "all claims," and the few state courts that have considered the matter have held that the CVA and its near-identical twin, the ASA, revive both state and City claims, *see Crawford*, No. 952052/2023, slip op. at 6-9 (ASA revives NYCHRL claims), this Court holds that the CVA revives NYSHRL and NYCHRL claims arising from sexual misconduct under § 130 of the

12

Penal Code.

### C. Plaintiff Cannot Bring an NYSHRL Claim.

Turning to Plaintiff's specific claims, however, her NYSHRL claims fails

because the CVA only revives previously lapsed claims, *see Holloway v. Holy See*,

537 F. Supp. 3d 502, 505 (S.D.N.Y. 2021) ("the CVA itself does not create a cause

of action, nor does it regulate conduct"), and the relevant provisions of the

NYSHRL did not include sex or gender as a protected class at the time when the

underlying conduct occurred.  *See* N.Y. Exec. Law § 296(4) (effective Nov. 16,

2002, to Jan. 15, 2003) ("It shall be an unlawful discriminatory practice for an

education corporation . . . to deny the use of its facilities to any person . . . by

reason of his race, color, religion, disability, national origin, age or marital

status.").  As contemporary caselaw explains, the statute "d[id] not prohibit

discrimination based on sex."  *Hayut v. State Univ. of New York*, 217 F. Supp. 2d

280, 291 (N.D.N.Y. 2002) (discussing § 296(4)), *aff'd in part, vacated in part on

other grounds, remanded*, 352 F.3d 733 (2d Cir. 2003).

In fact, it was only in amendments effective on January 16, 2003, and July 1,

2003, that the New York State Legislature added "sexual orientation" and "sex,"

respectively, as protected categories.  *See* 2002 Sess. Law News of N.Y. Ch. 2 (A.

1971) (McKinney's); 2003 Sess. Law News of N.Y. Ch. 106 (S. 5679)

(McKinney's).  These amendments do not evince legislative intent to apply

retroactively and thus do not overcome the presumption against retroactive

legislation.[3]  *See Tesoriero v. Syosset Cent. Sch. Dist.*, 382 F. Supp. 2d 387, 400

(E.D.N.Y. 2005) (2003 amendments to NYSHRL do not apply retroactively);

*CFCU Cmty. Credit Union v. Hayward*, 552 F.3d 253, 262 (2d Cir. 2009)

("[R]etroactive operation is not favored by [New York] courts and statutes will not

be given such construction unless the language expressly or by necessary

implication requires it." (citing *Majewski v. Broadalbin-Perth Cent. Sch. Dist.*, 91

N.Y.2d 577, 584 (N.Y. 1998))).  Accordingly, because the NYSHRL provision in

force at the time of the underlying conduct did not prohibit that conduct, Plaintiff's

NYSHRL claim against NYCDOE is dismissed.[4]

### D. Plaintiff Can Bring an NYCHRL Claim.

However, Plaintiff has created an issue of material fact for her NYCHRL

claim.  That claim does not face the same retroactivity problem as her NYSHRL

claim because City law prohibited gender discrimination in public

---

[3] Plaintiff argues that the Court should apply the current NYSHRL standard because, under *Bradley v. Richmond School Board*, "a court is to apply the law in effect at the time it renders its decision."  416 U.S. 696, 711 (1974).  But as the Supreme Court explained in *Landgraf v. USI Film Products*, the language cited in *Bradley* applied to "a statute authorizing the award of attorney's fees to successful civil rights plaintiffs . . . in a case that was pending on appeal at the time the statute was enacted."  511 U.S. 244, 264 (1994).

[4] As it fails for the same reasons, Plaintiff's NYSHRL claim against Waltzer is also dismissed.

accommodations such as schools at the time.  *See* Administrative Code of the City
of New York, § 8-107(4) (1998) (it is "an unlawful discriminatory practice for any
person, being the . . . agent or employee of any place or provider of public
accommodation because of . . . gender . . . directly or indirectly, to refuse, withhold
from or deny to such person any of the accommodations, advantages, facilities or
privileges thereof…").

NYC DOE argues that the NYCHRL does not apply because the law's
public accommodations provisions do not encompass "victims of sex offenses or
stalking" as a protected category.  Def's Mem. L. in. Supp. Summ. J. 12.  This
argument proves too clever by half: as was clearly established at the time of the
alleged sexual abuse,[5] gender discrimination[6] in the educational context

---

[5] At the time, New York courts generally applied similar standards for claims
under Title IX and the NYCHRL.  *See Weinstock v. Columbia Univ.*, 224 F.3d 33,
42, n.1 (2d Cir. 2000) ("[I]dentical standards apply to employment discrimination
claims brought under Title VII, Title IX, New York Executive Law § 296, and the
Administrative Code of the City of New York.").

[6] It is of no moment that the NYCHRL speaks of "gender," rather than "sex,"
discrimination.  Courts at the time of the alleged misconduct against Plaintiff
understood gender discrimination to encompass sexual harassment and abuse.  *See,
e.g.*, *Karibian v. Columbia Univ.*, 930 F. Supp. 134, 145 (S.D.N.Y. 1996) ("It is
established law that sexual harassment is a form of gender discrimination.").
Moreover, when the New York City Council amended the Human Rights Law's
protected categories from "sex" to "gender" in 1991, it did so to broaden, rather
than narrow, the law's protections.  *See* New York City, Committee on General
Welfare, The Council Report of the Governmental Affairs Division, Proposed Int.
No. 24 (Apr. 24, 2002) ("Central to the 1991 changes to the law was the expansion

encompasses situations in which "a teacher sexually harasses and abuses a student." *Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 75 (1992) (Title IX context) (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986)); *see also Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999) ("'sexual harassment' is 'discrimination' in the school context under Title IX"). A teacher's sexual assault of a student easily clears this bar. Thus, the alleged misconduct against Plaintiff is "gender discrimination" under the NYCHRL, which the CVA has revived.

Moreover, Plaintiff has proffered evidence that she was denied access to a public accommodation. Plaintiff's schools were public accommodations as described in § 8-107(4), and Plaintiff has set forth facts showing that she suffered sexual abuse from their "agents or employees." *See Novio v. New York Acad. of Art*, 286 F. Supp. 3d 566, 583 n.9 (S.D.N.Y. 2017) (applying NYCHRL in the educational setting). Under current NYCHRL caselaw, Plaintiff need only show that she was treated "less well" than other students on account of her gender to show that she was deprived of a public accommodation. *See id.* at 583 ("Under [§ 8–107(4)(a)], a plaintiff need not demonstrate that the treatment was 'severe or

---

of the breadth of unlawful discriminatory practices as well as the scope of protected classes of individuals.").

pervasive' ... [but] need only show that she has been treated 'less well' than other [students] because of a protected characteristic.").  Arguably, the standard in place at the time could have relied on the more restrictive "severe or pervasive" test from federal caselaw.  *See Williams v. New York City Hous. Auth.*, 872 N.Y.S.2d 27, 36-39 (1st Dep't 2009) (discussing the prior "view of the City HRL as simply mimicking its federal and State counterparts" in application of the federal "severe or pervasive" test for actionable sexual harassment; and adopting the "less well" test for HRL liability).  But this question is academic for the purposes of this motion; sexual assault by a teacher of a student certainly constitutes "severe or pervasive" treatment on account of gender.  Accordingly, there are disputed material facts that preclude summary judgment.

## IV.   CONCLUSION

For the foregoing reasons, NYC DOE's motion for summary judgment is GRANTED on Plaintiff's claims under NYSHRL; accordingly, those claims are DISMISSED.  Plaintiff's claim against NYC DOE for negligence for Defendant Waltzer's alleged sexual assault of Plaintiff is DISMISSED based on the Court's prior judgment.  NYC DOE's motion for summary judgment on Plaintiff's claims under NYC HRL is DENIED.

Trial will be held on Plaintiff's sexual assault and IIED claims against

Waltzer, and on Plaintiff's NYCHRL claim against Waltzer and NYC DOE.

**SO ORDERED.**


                                                  /S/ Frederic Block
                                                 FREDERIC BLOCK
                                                 Senior United States District Judge

Brooklyn, New York
January 12, 2023


18