UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------x
JANE DOE,

            Plaintiff,                      **MEMORANDUM AND ORDER**
                                              Case No. 1:21-cv-04332 (FB) (RML)

  -against-

MARK WALTZER,

            Defendant.
------------------------------------------------x

*Appearances*:
*For the Plaintiff*:                           *For the Defendant*:
SAMI EL CHERIF                                 ANDREW B. STOLL
KARL J. ASHANTI                                Stoll, Glickman & Bellina, LLP
S. MICHAEL MUSA-OBREGON                        300 Cadman Plaza West, 12th Fl.
Musa-Obregon Law, P.C.                         Brooklyn, NY 11201
55-21 69th St., 2nd Fl.
Maspeth, NY 11378

**BLOCK, Senior District Judge:**

      Following a jury verdict and $150 million damages award in favor of Plaintiff Jane Doe ("Plaintiff"), Defendant Mark Waltzer ("Defendant") filed this Rule 59(a) motion for a new trial. For the following reasons, Defendant's motion is GRANTED.

## I.    BACKGROUND

      Plaintiff sued Defendant for sexual assault by relying on New York's Child Victims Act, N.Y. C.P.L.R. § 214-g (the "CVA"), which revived civil claims predicated on N.Y. Penal Code violations. In her Third Amended Complaint

("TAC"), Plaintiff posited two theories of liability against Defendant, her high-school social studies teacher: (1) she alleged that Defendant forcibly raped her (the "Forcible Rape Claim") at his home in the summer 2000, when Plaintiff was fifteen years old; (2) she claimed that after Defendant forcibly raped her, Plaintiff "continued his initial, inappropriate sexual relationship with Plaintiff for more than a year, repeatedly committing the crime of statutory rape in the 3rd degree" (the "Statutory Rape Claim").[1]  Compl. ¶¶ 4-7.

Plaintiff tried her claims for forcible and statutory rape.  The jury ultimately found that Plaintiff had proved that Defendant had "non-consensual, forcible sexual intercourse" with her but did not reach the statutory-rape question.  It awarded Plaintiff $100 million in compensatory damages and $50 million in punitive damages.  *See* ECF No. 190.

The Court finds that the size of the damage award is alone sufficient to require a new trial on both liability and damages.  Where an award is this excessive, it is inherently indicative of the jury's passion or prejudice and warrants retrial.  Additionally, the size of the damages award indicates that the jury may

---

[1] Plaintiff's additional claims were dismissed before trial.  *See Doe v. New York City Dep't of Educ.*, No. 21-CV-4332, 2023 WL 2574741, at *6 (E.D.N.Y. Mar. 20, 2023), *appeal dismissed* (Sept. 20, 2023) (the "Motion to Dismiss Decision"); *Doe v. New York City Dep't of Educ.*, 669 F. Supp. 3d 160, 169 (E.D.N.Y. 2024) (the "Summary Judgment Decision").  Plaintiff and the Department of Education settled for $925,000.

have credited Plaintiff's unsubstantiated allegations of statutory rape. Consequently, the Court can have little confidence in the entirety of the jury verdict. Finally, any new trial, even if limited to damages, would necessarily implicate Defendant's liability.

## II. DISCUSSION

### A. Legal Standard

Under Rule 59, the Court has significant discretion in deciding whether to grant a motion for a new trial. *See Amato v. City of Saratoga Springs*, 170 F.3d 311, 314 (2d Cir. 1999). The Court may do so where it "is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *ABKCO Music, Inc. v. Sagan*, 50 F.4th 309, 324 (2d Cir. 2022), *cert. denied*, 144 S. Ct. 77 (2023). Grounds for a new trial include where the "verdict appears to be against the weight of the evidence" or where the verdict's damages-award is "excessive." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 165 (2d Cir. 1998) (cleaned up). The Court may order a new trial on its motion "on all or some of the issues." *See Frank Sloup & Crabs Unlimited, LLC v. Loeffler*, 745 F. Supp. 2d 115, 132 (E.D.N.Y. 2010) (citing Fed. R. Civ. P. 59). It may also grant a "timely motion for a new trial for a reason not stated in the motion." Fed. R. Civ. P. 59.

### B.   The Excessiveness of the Jury Verdict

The Court finds that the jury's $100 million compensatory-damages verdict is plainly excessive under New York law.[2]  In reviewing a damages award on a state-law claim, "[t]he role of the district court is to determine whether the jury's verdict is within the confines set by state law." *See Stampf v. Long Island R.R. Co.*, 761 F.3d 192, 204 (2d Cir. 2014) (citing *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 435 (1996)).  Under New York law, a court "shall determine that an award is excessive or inadequate if it deviates materially from what would be reasonable compensation." *Id.* (citing N.Y. C.P.L.R. § 5501(c)); *see also Patterson v. Balsamico*, 440 F.3d 104, 119 (2d Cir. 2006) (noting that the New York standard requires "a more exacting review" of awards than the federal standard).  To determine whether a jury award is excessive within the meaning of § 5501(c), New York courts compare it with awards in similar cases, bearing in mind the unique facts and circumstances of each case. *See Stampf*, 761 F.3d at 204.

The Court finds that the award deviates materially from reasonable compensation under New York law and is thus plainly excessive.  Even assuming that Plaintiff was a minor when the forcible rape occurred, the $100 million in

---

2 This case is before the Court because Plaintiff originally brought federal claims under 42 U.S.C. § 1983 and Title IX, 20 U.S.C. § 1681 *et seq.* that the Court dismissed.  *See* Motion to Dismiss Decision.  However, the Court retained supplemental jurisdiction over the state claims.

compensatory damages is substantially higher than other sexual misconduct cases, including those where the plaintiff was significantly younger. Based on the Court's research, the jury's award in this case is the highest given so far under the CVA, with the second-highest award set at exactly half of the compensatory damages that the jury awarded Plaintiff. *See Chambers v. King*, 811253/2021 (N.Y. Sup. Ct. Erie Cnty. May 1, 2023) (plaintiff awarded $50 million in compensatory damages for being sexually assaulted for approximately four years, beginning at the age of 12).

CVA cases continue in a downward departure from there, confirming that Plaintiff's $100 compensatory-damages million award deviates materially from what would be reasonable compensation for her injury under New York law. *See, e.g.*, *Stanley v. Rogers*, E2020005078 (N.Y. Sup. Ct. Monroe Cnty. May 10, 2023) ($45 million in compensatory damages to plaintiff who was sexually assaulted at the age of approximately 16); *LG 54 Doe v. Thore*, 803256/2020 (N.Y. Sup. Ct. Erie Cnty. Sept. 26, 2022) ($15 million in compensatory damages to plaintiff who was sexually assaulted by a pastor at the ages of 12 and 13); *LG 40 Doe v. Eberhardt*, 805762/2020 (N.Y. Sup. Ct. Erie Cnty. Mar. 30, 2022) ($15 million compensatory award to plaintiff who was sexually assaulted by his scout master between the ages of 9 and 12).

Similarly, in non-CVA sexual-assault cases in New York, the largest compensatory awards typically do not exceed several million dollars. *See, e.g.*, *Carroll v. Trump*, 683 F. Supp. 3d 302, 328 (S.D.N.Y. 2023) ($2 million award falls within reasonable range of amounts awarded to plaintiffs in sexual assault and rape cases in New York); *Doe v. HRH Prince Abdulaziz Bin Fahd Alsaud, Saudi Oger Ltd.*, No. 13 CIV. 571, 2017 WL 4541426, at *4 (S.D.N.Y. Oct. 10, 2017) (collecting cases); *A.B. v. Staropoli*, No. 08 CIV. 4585 (LMS), 2013 WL 12441525, at *7 (S.D.N.Y. Dec. 11, 2013) (award of $600,000 in compensatory damages to minor plaintiff who experienced repeated sexual abuse over an almost two-year period by her former soccer coach).

In sum, because the compensatory-damages award is higher than the reasonable range of compensation by many multiples, the Court finds the award "excessive" under New York law.[3] Moreover, as the $50 million punitive-damages award is tethered to a "baseline [of] the jury's excessive" compensatory-damages award, it is also excessive. *Qorrolli v. Metro. Dental Assocs., D.D.S. -*

---

[3] The size of the award appears to have shocked Plaintiff's counsel, Mr. Musa-Obregon, who told *Law360* that he anticipated winning a few million dollars in damages and "[wasn't] expecting that much." https://www.law.com/newyorklawjournal/2024/03/29/federal-jury-awards-record-nine-figure-verdict-to-child-victims-act-plaintiff/; *see also Slade v. Whitco Corp.*, 811 F. Supp. 71, 75 n.1 (N.D.N.Y.), *aff'd*, 999 F.2d 537 (2d Cir. 1993) (citing Plaintiff's counsel's expectations for the award under federal standard). He also stated that the award is the largest in New York under the CVA.

*225 Broadway, P.C.*, No. 18CV6836 (DLC), 2022 WL 17689836, at *11 (S.D.N.Y. Dec. 15, 2022).

### C.  A New Trial on All Issues is Warranted

Having determined that the verdict is excessive under New York law, the Court may either: (1) condition a denial of a motion for a new trial on the plaintiff's accepting damages in a reduced amount under the practice of remittitur; (2) order a new trial limited to damages; or (3) order a new trial on both liability and damages.  *See Tingley Sys., Inc. v. Norse Sys., Inc.*, 49 F.3d 93, 96 (2d Cir. 1995) (citing *Phelan v. Loc. 305 of United Ass'n of Journeymen, & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada*, 973 F.2d 1050, 1064 (2d Cir. 1992)).  The Court determines whether to order a new trial or remittitur "by reference to federal standards developed under Rule 59."  *Stampf*, 761 F.3d at 204 (quoting *Gasperini*, 518 U.S. at 435).

Remittitur is not possible under the circumstances.  Where, as here, a damages award "is so far in excess of a rational award," a new trial — either limited to damages, or on both damages and liability — is warranted.  *Frank Sloup & Crabs Unlimited, LLC v. Loeffler*, 745 F. Supp. 2d 115, 146 (E.D.N.Y. 2010) ($1.8 million in compensatory damages made remittitur impossible).  Because of the grossly excessive damages award, "any remittitur ordered by the court [would]

7

be 'totally out of proportion to the damages allowed[,]' [r]emittitur is thus inappropriate, and the court must hold a new trial." *Cole v. Foxmar, Inc.*, No. 2:18-CV-00220, 2022 WL 842881, at *18 (D. Vt. Mar. 22, 2022) (quoting *Ramirez v. N.Y.C. Off-Track Betting*, 112 F.3d 38, 41 (2d Cir. 1997)). Additionally, as the jury's decision on punitive damages was so "interwoven with the issue of compensatory damages," the punitive-damages award "was likely tainted by the grossly erroneous calculation of compensatory damages" and also cannot stand. *Loeffler*, 745 F. Supp. 2d at 147.

Facing the choice between offering a new trial solely on damages or on both liability and damages, the Court finds that a new trial on all issues is warranted for several reasons.

### i. *The Excessiveness of the Jury Award Evinces Passion or Prejudice*

The size of the damages award alone warrants a new trial on both liability and damages. As the Second Circuit has recognized, "the size of a jury's verdict may be so excessive as to be 'inherently indicative of passion or prejudice' and to require a new trial." *Ramirez*, 112 F.3d at 41 (quoting *Auster Oil & Gas, Inc. v. Stream*, 835 F.2d 597, 603 (5th Cir. 1988)). As discussed above, the compensatory-damages award is many times the usual range for CVA cases and double the highest case on record. The "excessiveness of these awards reflects a

jury motivated by passion or prejudice, or both" and leaves the Court with "no confidence in the integrity of the jury's verdict on liability." *Sharkey v. J.P. Morgan Chase & Co.*, No. 10CV3824 (DLC), 2018 WL 1229831, at *12 (S.D.N.Y. Mar. 5, 2018). In short, the damages award is "so disproportionate to an award of reasonable damages that a new trial is required." *Qorrolli*, 2022 WL 17689836, at *11 (ordering new trial where compensatory damages were "several times greater than a reasonable amount").

### ii. The Jury Likely Credited Plaintiff's Unsubstantiated Allegations as to Her Age

The Court is further convinced that passion or prejudice motivated the jury because the size of the award indicates that the jury may have credited Plaintiff's unsubstantiated allegations that she was a minor, against the weight of evidence. Plaintiff's allegations that she was fifteen when Defendant first had sex with her may have inflamed the jury because "sex crimes involving children . . . [have] the sort of 'strong emotional or inflammatory impact' that . . . [might] arouse the jury's passions to a point where they would act irrationally in reaching a verdict.'" *Myers v. Collins*, No. 920CV465BKSDJS, 2023 WL 6122715, at *2 (N.D.N.Y. Sept. 19, 2023) (quoting *United States v. Monsalvatge*, 850 F.3d 483, 495 (2d Cir. 2017)). Courts should be wary of the "emotional overlay . . . when the nature of the [allegations] entails sexual misconduct involving children." FREDERIC BLOCK, A

9

SECOND CHANCE: A FEDERAL JUDGE DECIDES WHO DESERVES IT 183 (2024) (quoting *May v. Shinn*, 37 F.4th 552, 556 (9th Cir. 2022), *cert. denied sub nom. May v. Thornell*, 143 S. Ct. 789 (2023) (Block, J., concurring) (discussing sexual misconduct involving children in the sentencing context)).

      Here, while the jury did not make an explicit finding as to Plaintiff's age when the forcible rape occurred, "the jury's excessive damages award . . . can only be explained" by the jury crediting Plaintiff's testimony that she was a minor when Defendant forcibly raped her and subsequently statutorily raped her for a year and a half.[4] *Qorrolli*, 2022 WL 17689836, at *11; *see also Slade*, 811 F. Supp. at 76 (inferring from the size of jury award that the jury credited unsubstantiated testimony). And unlike the Forcible-Rape claim, which relied almost entirely on the jury's credibility determination of conflicting testimony, key objective evidence at trial corroborated Defendant's testimony that Plaintiff was above the age of consent during the relevant period. If the jury did believe these

---

[4] While a single instance of rape of a person at any age is reprehensible, a larger damages award is usually warranted where the plaintiff is a minor and suffers a repeated pattern of abuse. *See, e.g.*, *Doe v. Warren & Baram Mgmt. LLC*, No. 20-CV-9522 (ER) (VF), 2024 WL 2941222, at *9 (S.D.N.Y. May 3, 2024), *report and recommendation adopted sub nom. Doe v. Baram*, No. 20-CV-9522 (ER), 2024 WL 3342602 (S.D.N.Y. July 9, 2024) (In cases "where the awards exceeded $1,000,000, the plaintiffs had suffered multiple sexual assaults, not a single rape.").

uncorroborated allegations, the Court can have little confidence in the entirety of the jury determination.

Critically, Plaintiff and Defendant offered conflicting testimony as to when they first had sex, consensual or not. According to Plaintiff, the forcible rape occurred in the summer 2000, when she was fifteen, after which point they continued to have a sexual relationship for approximately a year and a half, thus ending in about late 2001. Tr. 283. She testified unequivocally that the sexual relationship never extended into 2002, except for one instance after midnight on January 1, 2002. Tr. 303-04. Defendant, however, maintains that they first had consensual sex in summer 2002 — when Plaintiff was seventeen — and their relationship continued for about six months, ending after New Year's Eve on December 31, 2002. Tr. 964-65. Several key pieces of evidence support Defendant's timeline and undermine Plaintiff's testimony.

First, evidence of the model year and purchase date of Defendant's silver Toyota Camry lends credence to Defendant's timeline. Both Defendant and his ex-wife testified that Defendant bought a 2002 Camry in the summer 2002. See Tr. 743, 892. Several pictures depict Plaintiff with the car, Tr. 920, and Plaintiff testified that Defendant often spoke about and drove her in the Camry, Tr. 316-17. Both parties further testified that Defendant drove Plaintiff to get an abortion in a

11

silver Toyota Camry.  Tr. 319, 952.  Plaintiff's sister testified that Defendant drove a car that matched the Camry's description on a New Year's Eve outing.[5]  Tr. 663-64.  If Defendant did purchase the 2002 Camry in the summer 2002, this evidence supports Defendant's timeline and contention that Plaintiff was 17.[6]

Second, the December 19, 2001, release date of the *Lord of the Rings: The Fellowship of the Ring* movie further supports Defendant's testimony.  Tr. 309-10 (parties stipulating as to the release date).  During the New Year's Eve outing, it is uncontroverted that Plaintiff, her sister, her sister's boyfriend, and Defendant watched the movie together at Defendant's apartment.  Tr. 663-64.  Defendant produced the physical DVD, dated 2002, that they watched the night.  Tr. 959-60.  Because the movie was still in theaters in 2001 and came out on DVD only in 2002, it is likely that this outing occurred on December 31, 2002, consistent with Defendant's timeline.  Additionally, several photos of Plaintiff and Defendant show Lord of the Rings figures in the background.  Tr. 964.  Because those figures' release coincided with the movie, their presence in pictures showing

---

[5] The parties dispute in what year the New Year's Eve outing transpired: Plaintiff claims it was December 31, 2001, while Defendant maintains it was December 31, 2002.  Compare Tr. 188 with Tr. 953.

[6] During summation, Plaintiff's counsel argued that a 2002 Toyota Camry became available for purchase in 2001.  Tr. 1143.  Regardless, the testimony that Defendant bought the car in 2002 and other evidence, such as the release date of the *Lord of Rings* movie, support Defendant's timeline.

Plaintiff and Defendant together further buttresses Defendant's testimony that the at-issue events transpired in 2002.

Finally, other evidence favors Defendant's timeline. While not present at trial, Matthew Lee, a friend of Plaintiff's, stated in a deposition that Plaintiff told him that she was seventeen when she first had a sexual relationship with Defendant. Tr. 572. Defendant also produced an original roll of photographs in which photographs from June and July 2002 — such as from a wedding Defendant attended and a vacation Defendant took with his children — precede photographs depicting Plaintiff and Defendant together. Tr. 888-92. Because the photographs on the original film roll were arrayed in chronological order, the sequencing of the photographs of Defendant and Plaintiff *after* photographs from the summer 2002 suggests an ongoing relationship in 2002. Tr. 886-87.

While none of these pieces of evidence may alone be dispositive, the trial judge "is free to weigh the evidence himself and need not view it in the light most favorable to the verdict winner."[7] *Song v. Ives Lab'ys, Inc.*, 957 F.2d 1041, 1047 (2d Cir. 1992). Together, the objective evidence is far more consistent with

---

[7] For instance, the Court does not place great weight on Plaintiff's sister's trial testimony that Plaintiff was sixteen when the New Year's Eve outing occurred because she stated in an earlier affidavit that Plaintiff was "approximately 17" at the time of the outing. Tr. 662-63.

Defendant's timeline of events and his argument that Plaintiff was above the age of consent. If true, Defendant did not commit statutory rape.

To be sure, the Court is properly cautious about intruding on the jury's crucial fact-finding function. But "there comes a point where this Court should not be ignorant as judges of what we know as men [and women]." *Pierce v. City of New York*, 293 F. Supp. 3d 306, 316 (E.D.N.Y. 2017), *aff'd*, 805 F. App'x 70 (2d Cir. 2020) (Cogan, J.) (quoting *Watts v. Indiana*, 338 U.S. 49, 52 (1949) (Frankfurter, J.)). Simply, the weight of the evidence does not support Plaintiff's contention that she was fifteen when Defendant first had sex with her, whether consensual or not. And because the size of the damages award is justifiable *only if* the jury believed that Defendant sexually assaulted a minor for a year and a half, the Court concludes that the jury probably credited Plaintiff's unsubstantiated allegations. Given the highly inflammatory nature of the allegations, "the prejudice that infected one aspect of the verdict may have affected the remainder of the verdict as well." *Sharkey*, 2018 WL 1229831, at *12. Accordingly, the entire matter must be retried.

### iii. A New Trial Must Necessarily Consider Liability

Finally, as a practical matter, a new trial limited to damages would necessarily reconsider liability. "Emotional distress damages necessarily include

14

consideration of the objective circumstances of the legal violation that created the emotional injury. *See Sharkey*, 2018 WL 1229831, at *12 (citing *Patrolmen's Benevolent Ass'n. of City of New York v. City of New York*, 310 F.3d 43, 55 (2d Cir. 2002)). Here, "when the issues are inextricably intertwined, such that a proper determination of the amount of damages requires an evaluation of the same evidence that gave rise to liability, any retrial must be on all issues." *Id.* at *7 (citing *Caskey v. Village of Wayland*, 375 F.2d 1004, 1009-1010 (2d Cir. 1967)) ("Partial new trials should not be resorted to 'unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice.'"). Because there is no way to fairly try the Plaintiff's damages divorced from issues of liability, the new trial must consider all issues.

### III.   CONCLUSION

For the foregoing reasons, Defendant's Rule 59 motion is granted without remittitur. The Court orders a new trial on both liability and damages.

**SO ORDERED.**

    /S/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
September 17, 2024